# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SKILLZ PLATFORM INC.,
a Delaware corporation,

                        Plaintiff,

                 -against-

PAPAYA GAMING, LTD., a foreign
corporation; and PAPAYA GAMING, INC., a
Delaware corporation,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

1:24-cv-01646-DLC

 

## MEMORANDUM OF LAW IN SUPPORT OF PAPAYA GAMING, LTD.'S AND PAPAYA GAMING, INC.'S MOTION TO DISMISS THE COMPLAINT

Anthony J. Dreyer
One Manhattan West
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
New York, New York 10001
Tel: (212) 735-3000
Anthony.Dreyer@skadden.com

David B. Leland (*pro hac vice*)
Margaret E. Krawiec (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 371-7000
David.Leland@skadden.com
Margaret.Krawiec@skadden.com

*Attorneys for Defendants Papaya
Gaming, Ltd. and Papaya Gaming, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 3

    A.    Skillz's Platform for Third-Party, Head-to-Head Mobile Games ......................... 3

    B.    Papaya Develops Multiplayer, Competitive Mobile Games .................................. 4

    C.    Papaya's Marketing of Its Skill-Based Games ...................................................... 5

    D.    Skillz's Claims Against Papaya ............................................................................. 6

ARGUMENT ................................................................................................................... 7

I.      LEGAL STANDARD FOR MOTION TO DISMISS ...................................................... 7

II.     THE COMPLAINT FAILS TO STATE VIABLE CLAIMS UNDER EITHER
       THE LANHAM ACT OR NEW YORK GENERAL BUSINESS LAW ......................... 8

    A.    Skillz Does Not Sufficiently Allege Any Deceptive Statement or Conduct ........... 9

          1.    Skillz Challenges Statements That Papaya Never Made ......................... 10

          2.    Skillz Lacks Any Plausible Basis to Assert That Alleged Bot
               Usage Renders Papaya Games Necessarily Unfair or Not Skill-
               Based ...................................................................................................... 10

               (a)    Contrary to Skillz's Bald Assumption, Alleged Usage of
                      Bots And Skill-Based Gaming Are Not Inconsistent ................... 12

               (b)    Unreliable and Anonymous Online "Reviews" Do Not and
                      Cannot Demonstrate That Papaya Games Are Unfair or Not
                      Skill-Based ................................................................................. 13

               (c)    Negative Reviews of Skillz Further Demonstrate the
                      Impropriety of the Complaint's Reliance on Such
                      Unsubstantiated Online Sources ................................................. 15

    B.    Skillz Fails to Plausibly Plead Injury or Damage From Papaya's Alleged
       Deceptive Conduct, and Relies Solely on Its Subjective, Unsupported
       Belief ...................................................................................................................... 19

C.     Skillz Has Failed to Plausibly Plead That the Alleged False Statements Were Material to Consumers' Decisions to Play Papaya Games ........................23

CONCLUSION........................................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Achtman v. Kirby, McInerney & Squire, LLP,*
464 F.3d 328 (2d Cir. 2006)..................................................................................8, 12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................................8

*Avalos v. IAC/Interactivecorp.,*
No. 13–CV–8351, 2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014)...................................19

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007).................................................................................................8

*Business Casual Holdings, LLC v. YouTube, LLC,*
No. 21-cv-3610, 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022)........................................4

*Casper Sleep, Inc. v. Nectar Brand LLC,*
No. 18 Civ. 4459, 2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020) ..................................20

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002)..........................................................................................6

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH,*
843 F.3d 48 (2d Cir. 2016)...........................................................................................23

*City of New York v. Smokes-Spirits.Com, Inc.,*
12 N.Y.3d 616 (2009) ..................................................................................................20

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.,*
173 F.3d 725 (9th Cir. 1999).......................................................................................11

*Cuoco v. Moritsugu,*
222 F.3d 99 (2d Cir. 2000)...........................................................................................24

*Davis v. Avvo, Inc.,*
345 F. Supp. 3d 534 (S.D.N.Y. 2018) .........................................................................19

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,*
747 F.3d 145 (2d Cir. 2014).....................................................................................8, 22

*Labick v. Consolidated Edison Co. of N.Y.,*
No. 07 Civ. 6846, 2008 WL 11517821 (S.D.N.Y. Mar. 10, 2008)....................................8

iii

*Mazella v. Coca-Cola Co.*,
    548 F. Supp. 3d 349 (S.D.N.Y. 2021) ...........................................................9

*McNeilab, Inc. v. American Home Products Corp.*,
    848 F.2d 34 (2d Cir. 1988)...........................................................................20

*Michelo v. Natural Collegiate Student Loan Trust 2007-2*,
    419 F. Supp. 3d 668 (S.D.N.Y. 2019) ..........................................................20

*In re MF Global Holdings Ltd. Investment Litigation*,
    998 F. Supp. 2d. 157 (S.D.N.Y. 2014) ...........................................................6

*North American Olive Oil Associate v. D'Avolio Inc.*,
    457 F. Supp. 3d 207 (E.D.N.Y. 2020) ..........................................................12

*Petrosino v. Stearn's Products, Inc.*,
    No. 16-CV-7735, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) .................8, 9

*Roberto Coin, Inc. v. Goldstein*,
    No. 18-CV-4045, 2021 WL 4502470 (E.D.N.Y. Sept. 30, 2021)...................11

*Seller v. Citimortgage, Inc.*,
    118 A.D.3d 511 (1st Dep't 2014).................................................................11

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)...........................................................................9

*Turbon International, Inc. v. Hewlett-Packard Co.*,
    769 F. Supp. 2d 262 (S.D.N.Y. 2011) ............................................................9

*Unlimited Cellular, Inc. v. Red Points Solutions SL*,
    677 F. Supp. 3d 186 (S.D.N.Y. 2023) ......................................................8, 10

## STATUTES

New York General Business Law § 349 ........................................................Passim

15 U.S.C. § 1125(a) ...............................................................................................8

## OTHER AUTHORITIES

Bruce Weber, *What Deep Blue Learned in Chess School*, N.Y. Times, May 18, 1997,
    https://www.nytimes.com/1997/05/18/nyregion/what-deep-blue-learned-in-chess-
    school.html....................................................................................................12

Jaderberg et al., *Human-level performance in 3D multiplayer games with population-
    based reinforcement learning*, 364 Science 859 (2019).................................12

iv

Yan et al., *Solitaire: Man Versus Machine*, Advances in Neural Information Processing Systems 17 (2004) ................................................................................................12

Gerald Tesauro, *Programming Backgammon Using Self-Teaching Neural Nets*, 134 J. Artificial Intelligence 181 (2002) ..............................................................................12

Defendants Papaya Gaming, Ltd. and Papaya Gaming, Inc. (together, "**Papaya**") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Skillz Platform Inc.'s ("**Skillz**") Complaint (ECF No. 1, cited as "**Compl.**") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint's allegations are intended to mask the fact that Skillz's actual claims are built on a house of cards: in order to tarnish a successful gaming company with accusations of false advertising and consumer deception, Skillz challenges either statements that Papaya did not make, or statements that Skillz unreasonably twists to make them appear actionable. But that cannot form the basis for plausible claims under the Lanham Act or New York General Business Law ("**GBL**") § 349. Indeed, the Complaint itself undercuts the central premise of those claims — namely, that Papaya deceives users regarding the use of "bots" — by acknowledging that "Papaya *does not actually deny or refute customers' accusations that it deploys bots*." (Compl. ¶ 72 (emphasis added).) Unsurprisingly, then, the Complaint also cannot point to any facts demonstrating that consumers actually understood any particular statement Papaya made to mean that every tournament participant was a human opponent. This, however, is not the only fatal flaw warranting dismissal of the Complaint:

Equally bereft is Skillz's contention that Papaya cannot market its games as "fair" and "skill-based" if — as Skillz alleges, and Papaya must accept at the pleading stage — bots are utilized. Skillz theorizes that use of computerized opponents in Papaya's skill-based games necessarily converts those games into "games of chance" (*id.* ¶ 1), but that is a non-sequitur. As anyone who has played computer chess or a variety of other skill-based games knows, simulated opponents routinely emulate human skill levels. And whether an opponent's score is the result of a bot or human gameplay, what is required to win is the same: enough skill to beat that score.

Skillz is unable to plead any facts countering that basic proposition, and instead relies on anonymous, unsubstantiated "customer reviews" that speculate about losing Papaya games due to bots rather the reviewers' own performances. (*Id.* ¶ 72.) But those "reviews" are not competent support for Skillz's conclusory allegations, and prove nothing anyway. Where players are matched with equally skilled players in tournaments with more than two players, each player *should* lose more frequently than they win. Indeed, in evenly matched contests with ten players, each individual would be expected to finish in first only 10% of the time. That is not an "unfair" outcome; it is a function of Papaya's match-making efforts and the application of skill operating as they should.

Skillz knows this as well as anyone, and its suggestion that computerized opponents would introduce "randomness" and "an element of chance" that renders Papaya's games something other than skill-based (*id.* ¶ 96) is thoroughly disingenuous. When describing its *own* games, Skillz asserts that they are "skill-based even when the games have random elements associated with them" (*id.* ¶ 22), yet it claims that "all" of Papaya's games "are *not* skill-based" because they too allegedly have "random events bearing on the result" (*id.* ¶ 6 (emphasis added)). Such a double standard obviously cannot stand.

Skillz cannot have it both ways: it cannot rely on anonymous customer reviews for their truth when — as shown below in Part II.A.2.c — Skillz itself routinely is accused of similar unfair play and bot use by users of Skillz's platform (which Skillz asserts only features human opponents) who claim to have lost games on the platform. Presumably Skillz rejects such accusations out-of-hand, because if they can be the basis of a claim, Skillz would be liable for the very same conduct of which it accuses Papaya.

Also fatal to the Complaint is its failures with respect to pleading Skillz's injury or damages. The Complaint baldly asserts that players allegedly deceived by Papaya would have instead played third-party games offered on Skillz's platform. (*Id.* ¶¶ 116, 133.) That allegation is both unsupported and contradicted by other allegations recognizing the appeal of features of Papaya's games that are not available on Skillz's platform, including that many players prefer Papaya's multiplayer tournaments over head-to-head games, and have other incentives not to switch platforms. (*Id.* ¶¶ 48, 52-53.) Skillz conveniently ignores these features when it fails to plausibly allege that Papaya materially misled any consumer, relying once again on the aforementioned reviews that are neither admissible nor point to any specific Papaya statements that led the reviewers to choose Papaya over Skillz (or any other gaming option).

Each of the foregoing reasons alone warrants dismissal. Collectively, they reveal the Complaint for what it is: an attempt to smear a successful gaming company by a purported competitor with a faltering platform and languishing market share, *not* a serious attempt at stating an actionable claim. This Court therefore should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND

Allegations set forth in the Complaint are presented herein and, where well-pled, accepted as true solely for purposes of the current motion.

### A.     Skillz's Platform for Third-Party, Head-to-Head Mobile Games

Skillz offers a business-to-business mobile gaming platform that hosts head-to-head games developed by third parties, allowing users to play each other for cash prizes.[1] (Compl. ¶¶ 20-22.) Skillz purports to offer "hundreds of games" on its platform, such as Solitaire Cube, 21

---

[1]     As a business-to-business service, Skillz's platform ostensibly earns revenue from the developers that its platform supports, rather than from individual players who spend money on Skillz-platform games. (*See* Compl. ¶¶ 20-22.)

Blitz, Blackout Bingo, and Bubble Cube 2, none of which is developed by Skillz itself. (*Id.* ¶¶ 27, 30.) Algorithms are used to "match players based on ability level and game history," including in bracketed head-to-head tournaments. (*Id.* ¶¶ 28, 34.) Skillz claims that games on its platform are inherently fair and "skill-based even when the games have random elements associated with them." (*Id.* ¶ 22.)

Skillz further alleges that its platform does not "use, operate, or enable computers or artificial competitors, i.e., 'bots' to play its cash games." (*Id.* ¶ 36.) Notably, however, Skillz's online Developer Documentation — directed at game developers who seek to host games on the Skillz platform — expressly sets forth parameters for developers "utilizing bots in gameplay" and permits "integrating bots into your gameplay experience" both for "play-and-compare" and "real-time" game modes.[2] For example, bots are permitted "to deliver consistent experiences" and/or for a certain number of "tournaments a player goes through after a new install." *Id.*

### B. Papaya Develops Multiplayer, Competitive Mobile Games

Papaya offers and (unlike Skillz) develops mobile app-based games with "similar objectives [and] game play" to the games hosted on the Skillz platform, offering competitive matchups for players to win cash prizes and/or in-game rewards. (Compl. ¶¶ 3, 41, 48, 60-63 fn. 12-15.) Similar to games on the Skillz platform, Papaya games typically are based on traditional games such as Solitaire, Bingo, and Blackjack. (*Id.* ¶¶ 3, 41-42.)

A key distinction between Papaya and Skillz is that Papaya's games go beyond head-to-head matchups and offer much larger games with tournament-style play, typically consisting of

---

[2]     *See Skillz Random and Fairness*, https://docs.skillz.com/docs/randomness (last visited May 2, 2024). Materials on Skillz's webpage are proper subjects of judicial notice and therefore properly considered on motion to dismiss, as they are publicly available on the internet and their authenticity cannot be fairly contested. *See Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610, 2022 WL 837596, at *1 n.2 (S.D.N.Y. Mar. 21, 2022).

between five and twenty opponents per match. (*Id.* ¶¶ 51-52.)  Papaya matches players based on relative skill level, and populates each tournament with similarly skilled players. (*Id.* ¶ 56.) Because Papaya's tournaments involve more players, cash prizes are larger than for games hosted by Skillz — a prospect that "is enticing to many users" and resulted in "some users of Skillz hav[ing] migrated over to Papaya." (*Id.* ¶¶ 53, 55.)  In addition, Skillz alleges that "a typical user would not switch back and forth between Skillz and Papaya" because of the allure of "in-game rewards, accolades, and other accomplishments" that can be earned. (*Id.* ¶ 48.)

Papaya was founded in 2016, and since that time has experienced significant growth, now with a team of over 270 employees, over 20 million total game downloads, and over one million daily users of its games worldwide. (*Id.* ¶¶ 40, 43.)  Three of Papaya's games currently rank among the most popular games in the Apple App Store. (*See id.* ¶ 43.)

**C.     <u>Papaya's Marketing of Its Skill-Based Games</u>**

"Papaya advertises to the public that all of its games are fair and skill-based." (*Id.* ¶ 58.) In the Complaint, Skillz points to select statements in Papaya FAQs, informational guides, and other written materials providing users with information about Papaya gameplay, matchmaking (via algorithm), and functionality that reflect the fairness and skill-based messaging. (*Id.* ¶¶ 58-69.)  For example, Papaya has informed players that (i) its games "match players against others with a similar skill level . . . [and] [t]he matchmaking becomes more accurate the more you play, as the algorithm learns your skill better" (*id.* ¶ 65); (ii) skill-matched players "get the exact same card deck" (*id.* ¶ 61); (iii) games are "available to all players over the age of 18" (*id.* ¶ 69); and (iv) "the outcome of our Tournaments is based on the skill of the players, rather than luck or

chance" (*id.* ¶ 59).  Papaya's publicly available Terms of Use state, *inter alia*, that Papaya cannot

"guarantee that use of our Services will generate you any profits."[3]

### D.     Skillz's Claims Against Papaya

The crux of the Complaint is that Papaya's presentation of its games as "totally fair and

skill-based" through its advertising statements is necessarily false because Papaya allegedly uses

computerized opponents, or "bots."  (Compl. ¶ 1.)  Skillz baldly claims that the "use of bots

transforms what might otherwise be legal games of human skill into illegal games of chance or

gambling in which Papaya's unwitting participants have little to no influence on the outcome of

any game."  (*Id.*)  Skillz further contends that Papaya may not promote its games as skill-based,

because that term may only apply to games where outcomes are "based on the skill of the player,

with no random events bearing on the result."  (*Id.* ¶ 6.)  Skillz also theorizes that Papaya's

statement that tournaments in one of its games "are available to all players over the age of 18"

constitutes a false representation that the tournaments "may be played by only real humans."  (*Id.*

¶ 69.)  These allegations form the identical basis of the two causes of action asserted against

Papaya: (1) false advertising under the Lanham Act (*id.* ¶¶ 99-116); and (2) violation of New

York GBL § 349 (*id.* ¶¶ 117-133).

The purported factual support for Skillz's claims is an assortment of anonymous online

"customer reviews" of Papaya games and unsubstantiated social media posts, which Skillz

claims "express suspicion and frustration that Papaya is using bots," and that "customers are

---

[3]     *See Papaya Gaming - Terms of Use: Effective as of December 27, 2023*,
https://www.papaya.com/december2023-terms-of-use (last visited May 2, 2024).  Papaya's Terms of
Use are referred to and incorporated into the Complaint (*see* ¶ 77), and therefore are properly
considered in this Rule 12 motion.  *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d.
157, 167 n.4 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.
2002)) ("In evaluating a motion to dismiss, the Court may consider any documents cited and relied
upon or incorporated by reference in the complaint as the factual sources of the pleadings.").

clearly unhappy because they believe Papaya unfairly and deceptively deploys bots" and/or that customers have "lost money playing games on the platform." (*Id.* ¶¶ 72, 92, *see generally id.* ¶¶ 73-92.)  For example, unknown user "Niedhoffer" is alleged to have posted on the Apple App store that: "there are times when I have my best round ever . . . and yet there will be three other people that . . . all have times better than [mine]" (*id.* ¶ 73); unknown user "honesty19149" is alleged to have posted on the Apple App store that "it [is] impossible to win consistently" (*id.* ¶ 75); and Twitter/X user "@Sian_Brimms" allegedly posted "after you start getting good at the game, they consistently match you with other players who outperform you" (*id.* ¶ 88).

Crucially, however, Skillz concedes that "Papaya **does not actually deny or refute customers' accusations that it deploys bots**." (*Id.* ¶ 72 (emphasis added).)

Skillz's theory as to how it has been harmed by the alleged deception is that — notwithstanding its acknowledgment of the independently appealing features of Papaya's games that attract customers — "Papaya's gain is Skillz's loss" and that the two companies necessarily compete for customers in a "zero-sum game." (*Id.* ¶ 49.)  The necessary basis for Skillz's claim, therefore, is that users explicitly choose to play Papaya's games over those on Skillz's platform because they are deceived by Papaya's statements regarding the fairness and skill-basis for its games.  The Complaint, however, points to no user that has actually expressed that sentiment, nor does it provide any factual underpinning — plausible or otherwise — for the claim that Skillz has "lost market share, revenue, and profits." (*Id.* ¶ 7.)

## ARGUMENT

## I.     LEGAL STANDARD FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a pleading if it "fail[s] to state a claim upon which relief can be granted," and the Court "must grant a [Rule] 12(b)(6) motion to dismiss if the plaintiff fails to allege 'enough facts to state a claim to relief that is

plausible on its face.'" *Labick v. Consol. Edison Co. of N.Y.*, No. 07 Civ. 6846, 2008 WL 11517821, at *1 (S.D.N.Y. Mar. 10, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Allegations in a pleading that are "conclusory" are "not entitled to be assumed true." *Id.* at 681; *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (second alteration in original) (citation omitted). Moreover, "[a]lthough factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (citation omitted).

## II. THE COMPLAINT FAILS TO STATE VIABLE CLAIMS UNDER EITHER THE LANHAM ACT OR NEW YORK GENERAL BUSINESS LAW

A claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), requires plausible allegations of: "(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 200 (S.D.N.Y. 2023) (citation omitted). A viable New York GBL § 349 claim requires plausible allegations that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) (citation omitted).

Skillz's claims under the federal and state laws are functionally identical and based on the same theory of alleged deception by Papaya about the nature of its games and claimed use of "bots." As such, the claims under both statutes fail for largely the same reasons. The Complaint does not and cannot plausibly allege: (1) any false or misleading statement or conduct; (2) that any such statement or conduct injured or damaged Skillz; or (3) that any such statement or conduct was material to any consumer's decision to play Papaya games.

### A. Skillz Does Not Sufficiently Allege Any Deceptive Statement or Conduct

A plaintiff asserting false advertising under the Lanham Act must allege facts supporting a reasonable inference that a statement "is literally false, i.e., false on its face" or "is nevertheless likely to mislead or confuse consumers." *Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 262, 268 (S.D.N.Y. 2011) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). Similarly, GBL § 349 requires a plausible allegation of a "materially misleading" or "deceptive" act or practice that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 356 (S.D.N.Y. 2021) (citation omitted); *Petrosino*, 2018 WL 1614349, at *7 (citation omitted). The Complaint in this case does neither.

Skillz's legal theory is that Papaya has misrepresented that its games are fair and skill-based, specifically by deceiving users concerning the alleged presence of computerized opponents or "bots." (*See, e.g.,* Compl. ¶ 106 ("Papaya's representations are false and misleading because Papaya deploys bots in its games.").) But the Complaint fails to plausibly plead such deceptive activity for at least two independent reasons: (1) Papaya does not represent that its games never include computerized opponents; and (2) the alleged use of bots would not render Papaya's games unfair or not skill-based.

### 1. *Skillz Challenges Statements That Papaya Never Made*

First, and most fundamentally, the Complaint fails to point to any statement by Papaya that bots are never used or that guaranteed that all players are live humans.  Instead, the Complaint concedes the opposite, explicitly recognizing that Papaya has *not* denied or refuted that it deployed bots.  (Compl. ¶ 72.)   In short, Skillz's claims are based on a false premise that Papaya has made statements about "bots," yet it fails to identify such statements.  This fatal flaw requires that the Lanham Act and GBL § 349 claim be dismissed.  *See, e.g.*, *Unlimited Cellular*, 677 F. Supp. 3d at 200 (Lanham Act false advertising claim requires, in the first instance, "a false or misleading statement" (citation omitted)).

Skillz thus is forced to turn to other alleged statements by Papaya that Skillz self-servingly suggests should be construed as a promise by Papaya to never use bots.  The inferential leaps from Papaya's actual statements to Skillz's interpretations, however, are neither warranted nor reasonable.  Statements that Papaya games are, for example, "available to all players over the age of 18," provide players with "the same exact card deck," and "match players against others with a similar skill level" (*see supra* at 5-6) say nothing about potential use of computerized opponents, let alone "publicly represent[ ] that [Papaya] tournaments may be played only by real humans."  (Compl. ¶ 69.)  Each statement would be just as true if Papaya did, as the Complaint alleges, deploy bots.

### 2. *Skillz Lacks Any Plausible Basis to Assert That Alleged Bot Usage Renders Papaya Games Necessarily Unfair or Not Skill-Based*

Even if Skillz could reasonably allege that consumers interpreted Papaya's statements to mean that its games never incorporate computerized opponents, there is no support for Skillz's contention that use of bots would render false or misleading Papaya's statements that its games are fair and skill-based (which they are).  In that regard, Skillz's argument that use of bots

necessarily would convert Papaya's games into "illegal games of chance" rather than fundamentally based on players' skill (Compl. ¶ 1) is conclusory and entitled to no weight.[4]

Skillz baldly alleges that bots introduce "randomness" and "an element of chance," and that Papaya users are "less likely" to influence the outcome of a game. (*Id.* ¶ 96.) But Skillz does not and cannot explain why that must be the case, let alone why alleged computerized opponents inject randomness that would result in players "hav[ing] little to no influence on the outcome of any game." (*Id.* ¶ 1.) Indeed, the contention presents as disingenuous given how Skillz characterizes the interplay of skill and chance when describing games on its own platform that have similar gameplay and rules. Elsewhere in the Complaint, Skillz acknowledges that games may be "skill-based even when the games have random elements associated with them." (*Id.* ¶ 22.) And as discussed *supra*, Skillz's Developer Documentation permits bots in games hosted on Skillz's platform. Skillz surely would not suggest that games on its own platform deny players any influence on outcomes or constitute illegal gambling.

That Skillz would take such a categorical position regarding Papaya's games may be revealing as to its apparent motivations for filing this lawsuit, but Skillz's desire to subvert Papaya's success does not render its allegations any less conclusory. *See Achtman*, 464 F.3d at

---

[4]    Skillz also claims that the alleged use of bots renders Papaya's games "a gambling platform, in contravention" of New York criminal law. (Compl. ¶¶ 94-98.) Skillz's allegations are patently false as a legal matter. But at all events, these allegations do not form any basis for the claims that Skillz alleges in the Complaint. Skillz does not (and could not) concoct claims based on alleged "illegal gambling" as Lanham Act or § 349 violations. *See Coastal Abstract Serv., Inc. v. First Am. Title. Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (explaining that "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction," statements concerning the legality or illegality of conduct, or that "purport to interpret the meaning of a statute or regulation," are opinions not actionable under the Lanham Act); *see also Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045, 2021 WL 4502470, at *11 n.8 (E.D.N.Y. Sept. 30, 2021) (quoting same); *Seller v. Citimortgage, Inc.*, 118 A.D.3d 511, 512 (1st Dep't 2014) *(*rejecting attempt to re-characterize claims under statutes that do not confer a private right of action as "deceptive practices" under Section 349 as an "impermissible 'end run' around the absence of a private right of action" in the underlying statute). Skillz's gambling allegations are therefore irrelevant to the causes of action actually asserted in the Complaint.

337; *N. Am. Olive Oil Assoc. v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 223 (E.D.N.Y. 2020) (dismissing false advertising claim where "the complaint provide[d] no allegation," other than "conclusory statement[s]," to support the plaintiff's "contention that the [allegedly false] statement is, in fact, false.")

> (a)     Contrary to Skillz's Bald Assumption, Alleged Usage
> of Bots And Skill-Based Gaming Are Not Inconsistent

Skillz's suggestion that computerized opponents necessarily prevent "fair" or "skill-based" gaming defies common experience and common sense. It is well-recognized by anyone who has played chess programs or other competitive games against computer opponents that such competitions can indeed be fair and skill-based. These everyday experiences are confirmed by a body of research among experts in the field of artificial intelligence and game-playing, recognizing that computer opponents can be programmed to compete at various skill levels in a variety of board, card, or video games.[5]

Whether or not some elements of "chance" inhere in the use of bots, as Skillz alleges, in no way changes the fact that skill remains a dominant factor in Papaya's games, which is the only relevant inquiry. Indeed, Skillz itself acknowledges that a contest properly characterized as one of skill may contain some elements of chance. (*See* Compl. ¶ 22.)

---

[5]   *See, e.g.*, Bruce Weber, *What Deep Blue Learned in Chess School*, N.Y. Times, May 18, 1997, https://www.nytimes.com/1997/05/18/nyregion/what-deep-blue-learned-in-chess-school.html (describing supercomputer's ability to calculate chess moves, evaluate positioning, and "to understand complexities of chess"); Jaderberg et al., *Human-level performance in 3D multiplayer games with population-based reinforcement learning*, 364 Science 859 (2019) (study detailing successes in training AI to play a multiplayer first-person shooter, Quake III Arena, while exhibiting "human-like behaviours such as navigating, following, and defending"); Yan et al., *Solitaire: Man Versus Machine*, Advances in Neural Information Processing Systems 17 (2004) (detailing the development of a heuristic and algorithm for playing Klondike solitaire, and comparing the result and speed of multiple implementations to a human expert player); Gerald Tesauro, *Programming Backgammon Using Self-Teaching Neural Nets*, 134 J. Artificial Intelligence 181 (2002) (detailing self-teaching backgammon AI performance compared to that of expert players).

(b)     Unreliable and Anonymous Online "Reviews" Do Not and Cannot
        Demonstrate That Papaya Games Are Unfair or Not Skill-Based

Skillz's attempt to rely on unsubstantiated (and inadmissible) customer "reviews" of

Papaya games cannot save the claims, as the reviews do nothing to support — and even undercut

— the suggestion that Papaya's games are not skill-based.  Even if the reviews were accepted at

face value and the hearsay and speculation therein were allowed, some of them express belief

that Papaya games are skill-based, regardless of whether bots are used.  (*See, e.g., id.* ¶ 75

(stating that Papaya's Solitaire Cash game "is certainly skill based").)  Others reflect, at most,

individuals' frustration concerning their having lost more than they apparently expected to. (*See,

e.g., id.* ¶¶ 73 ("[T]here are times when I have my best round ever . . .  and yet there will be three

other people that . . . all have times better than [mine]"); 75 ("[I]t [is] impossible to win

consistently"); 88 ("[A]fter you start getting good at the game, they consistently match you with

other players who outperform you.").)[6]

Customer frustration about not winning more often, however, does not evidence

misconduct or deception.  Skill should know this well, given the negative reviews it also faces

from users who lost money on Skillz's platform (discussed *infra*).  To the contrary, if players

were winning at an inordinately high rate, it would suggest that Papaya's match-making

algorithms were not functioning as intended, and that players were routinely being matched with

far less skillful players.

As the Complaint acknowledges, Papaya markets its ability to match players based on

relative skill level (which Papaya actually does).  (*Id.* ¶ 56.)  Papaya games typically include

---

[6]     Further casting doubts on their accuracy and/or relevance, many of the cited reviews were written or
        posted long before the filing of the Complaint, or the date of the posting is unclear.  (*See, e.g., id.* ¶¶
        75 (dated "1y" or "2y" ago); 85 (no year information provided); 87 (same).)

between five and twenty opponents (*id.* ¶ 52); thus, the majority of entrants do not win — and if the match-making is functioning perfectly, an evenly-matched player would win somewhere between 5% and 20% of the games, depending on the number of opponents in any particular event. Notably, however, if a skilled user first signs up for Papaya's games, that skilled player could reasonably be expected to win more early on, since the Papaya algorithm is determining his or her skill level based on results, and the player has not yet been elevated to a skill level more befitting his or her actual capabilities. Accordingly, "win[ning] a little bit in the beginning" followed by a lower win rate due to more difficult pairings (*id.* ¶ 87) is fully consistent with a skill-based matchmaking system. Indeed, this is why Papaya's Terms of Use make clear that Papaya cannot "guarantee that use of our Services will generate you any profits."

For much the same reasons, it is implausible for Skillz to allege that Papaya has misled consumers by stating that it does not have a "vested interest in" or "profit on the outcome of a Tournament that [Papaya] provide[s]." (*Id.* ¶ 4.) Users understand that Papaya is a business (just like Skillz), with a profit motive. Skillz's allegations further show that consumers understand that Papaya does, indeed, make money from hosting tournaments as part of its legitimate business model. (*See id.* ¶ 75 ("[T]hey take a percentage of each game played"); *id.* ("[T]his game is definitely a business in every sense of the word . . . they are in the business to make money.").) The Complaint is devoid of factual allegations indicating that consumers fail to understand the nature of Papaya's business, or that any misunderstanding was or would be material to their decision to play Papaya games.

It is therefore pure speculation and nonsensical for the Complaint to attribute player frustrations about not winning more often to Papaya's games not being "skill-based" or "fair," or

to suggest that players fail to understand that Papaya does generate income based on its business model.  The allegations regarding the online reviews cannot save Skillz's claims.

(c)      Negative Reviews of Skillz Further
Demonstrate the Impropriety of the Complaint's
<u>Reliance on Such Unsubstantiated Online Sources</u>

Skillz knows better than to blindly credit anonymous online "reviews," let alone accept the accusations therein as true or relevant.  That is because *Skillz faces the very same accusations* from frustrated users of the games on Skillz's platform.[7]  As but a few examples (with key language highlighted):

- A Samsung Store review of the Skillz game Blackout Bingo states that the game "100% feels like a scam" and "**the longer you play the harder the bots get**."[8]



kayl\*\*
★☆☆☆☆ | 2023.06.06
This game 100% feels like a scam. They send you checks in the mail according to the cash out page, and the longer you play the harder the bots get and you can no longer make any money, only lose money. Save yourself and go to a casino or something instead. This is not a good app unless you have money to waste and get nothing back.

---

[7]    These reviews are derived from the same sources as the purported reviews Skillz integrates into its Complaint.  Moreover, as discussed in footnote 2, *supra*, these reviews are subjects to judicial notice.

[8]    *"Blackout Bingo – Real Cash Prizes Smash Hit" Reviews*, Galaxy Store, https://galaxystore.samsung.com/geardetail/com.bigrunstudios.blackoutblitz (emphasis added).

- Another reviewer of Blackout Bingo states that "when you first start playing you will win pretty often," but eventually will begin "**playing bots and not real people** . . . so they don't ever lose money."[9]

---

dark**

★☆☆☆☆ | 2022.03.20

Literally rigged. Of course when they say you can win real money you expect a certain level of BS but this game takes the cake. First, the promo code for free money on your first deposit doesn't work. Always says invalid. Second the game is literally rigged. I've been playing win real money games for years and for the most part they are legit. This one is not. So when you first start playing you will win pretty often. I decided to deposit $5 and try the money games. That's when I found out the promo code was bogus and a lie. First 3 games I played were $0.60 to enter and you could win $1.00. I won those. Then I tried a $1.00 game to win $3.00. I won that. Obviously there is some luck involved but I was feeling good. That's when you will notice you are now playing bots and not real people. I have lost 7 games in a row and now have only $0.40 left. This game is a complete scam. You either play bots or people who are connected to them so they dont ever lose money. Don't bother. SCAM!!!!!!

---

9    *Id.* (emphasis added).

- An Apple App Store review of Solitaire Cube states that the reviewer "**could see that I'm playing with bots**" because competitors were "[w]inning with ridiculously high scores in a short amount of time," and "sometimes you can't watch the video replay" that displays how other players performed in the game.[10]



---

[10]   *"Solitaire Cube" Ratings and Reviews*, Apple App Store (Feb. 2, 2024) (emphasis added).

- Many have observed that Skillz's "match replay" feature was unavailable after a fairly high proportion of matches were lost in a suspicious manner.[11]



CardSharkJG, 10/06/2020

**Not to be trusted.**
I've had just about every kind of problem you can possibly think of with these Con Artists. That's exactly what they are. They lie about how fair the platform is but in reality they have over 30 different way to rip you off. Player support is no support at all. They treat you like you've stolen something from them after they rip you off. They respond to every single message with pre written generic responses. Which is only possible if they're already aware of the problem. Lost matches with no replay. You just have to take their word for it. I caught them cheating and stealing from me so many times until I was given $300 to be quiet. Skillz as a whole seem to me to be very unethical and I would rather my whole family starve to death than work for such a shadily crooked group of people. Every single person there should be incarcerated. And I have proof of everything I have stated and would testify under oath against them. SHAME ON YOU SKILLZ. I KNOW YOUR PARENTS TAUGHT YOU ALL TO BE BETTER THAN THE CROOKS THAT YOU ALL ARE. YOU DESERVE TO BE SUED IF NOT PLENTY YEARS OF JAIL TIME FOR ALL THE FALSE ADVERTISEMENT AND MISINFORMATION. THE WAY LEVEL OF UNETHICAL BEHAVIOR LETS ME KNOW THAT YOU ALL ARE MORE CORRUPT THAN POLICE AND POLITICIANS.



Amyyyyyyyyyyyyyyyyyy E, 02/10/2023

**Be prepared to lose money**
The game itself is fun. The way they match is unfair and you are set up to lose. Most of the time a replay is available to verify that there is no cheating taking place, however like 25-30% of the time it is not and all signs point to cheating. If you are curious about how cheating occurs, google it. It is apparently a widespread issue and as soon as anyone brings in it in the chat, they are immediately shushed and told to report it. Once reported you are never told the findings and they keep your money either way. To top it all off, they recently made some changes in their withdrawal policies, it would appear. I have always cashed out and within 2 days the money was back in my bank account. Now, I was informed after questioning it, they are sending paper checks and it will take weeks or months to receive them. They told me this occurs when the winnings are higher than the deposits, which I can assure you was not the care in my instance. User beware!

---
[11]   *"21 Blitz – Blackjack for Cash" Ratings and Reviews*, Apple App Store (Oct. 6, 2020 and Feb. 10, 2023), https://apps.apple.com/us/app/21-blitz-blackjack-for-cash/id1330011201?see-all=reviews.

- One online source created a YouTube video purporting to expose "why Skillz and the apps they produce are extremely corrupt," even observing that players have implausible score histories that would require "play[ing] the game nearly non-stop" and "win[ning] 80%+ of the time or more."[12]



Either Skillz must concede that anonymous purported complaints like these cannot form the basis for claims against a gaming company such as Skillz or Papaya, or Skillz must concede that it is engaging in the exact same conduct (generating the same types of consumer responses) that it alleges against Papaya and therefore is not harmed by the conduct alleged, or is itself liable under the Lanham Act and GBL § 349.

**B.      Skillz Fails to Plausibly Plead Injury or Damage From Papaya's Alleged Deceptive Conduct, and Relies Solely on Its Subjective, Unsupported Belief**

A claim of false advertising under the Lanham Act requires an allegation of harm to the plaintiff; however, a "mere subjective belief" by the plaintiff "that he is injured or likely to be damaged" is insufficient.  *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 543 (S.D.N.Y. 2018).  The plaintiff must actually allege "injury to a commercial interest in sales or business reputation . . . flowing directly from the deception [and] occur[ing] when deception of consumers causes them to withhold trade from the plaintiff."  *Avalos v. IAC/Interactivecorp.*, No. 13–CV–8351, 2014

---

[12]   The Adaptive Traveler, *Skillz Solitaire Cube Is Rigged!!*, YouTube (Sept. 3, 2022), https://www.youtube.com/watch?v=1FlpvHRC5sc.

WL 5493242, at *4 (S.D.N.Y. Oct. 30, 2014) (citation omitted); *see also Casper Sleep Inc. v. Nectar Brand LLC*, No. 18 Civ. 4459, 2020 WL 5659581, at *7 (S.D.N.Y. Sept. 23, 2020) (explaining that plaintiff must "plead facts demonstrating that there are consumers who would have purchased its [products or services], but did not because [of the defendant's conduct]"). Even if parties compete in a particular market, that fact is not sufficient to establish damage to the plaintiff where (as in this case) the allegedly false statements do not make reference to the plaintiff. *See, e.g., McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (where allegedly false advertising "ma[kes] no direct reference to any competitor's product," plaintiff must show "some indication of actual injury and causation").

Similarly, New York GBL § 349 claims require allegations of an injury to the plaintiff that is "causally connected to the alleged deceptive practice." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 707 (S.D.N.Y. 2019); *see also City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623 (2009) (a Section 349 plaintiff must "plead that [plaintiff has] suffered actual injury caused by a materially misleading or deceptive act or practice.").

Skillz theorizes that it has been injured by Papaya's alleged deception concerning the fairness and skill-based nature of its games, in the form of "lost customers (including prospective customers" and "lost market share, revenue, and profits."[13] (Compl. ¶¶ 7, 116, 133).) More specifically, Skillz claims that Papaya's statements have enticed "prospective users who may

---

[13] Certain allegations in the Complaint impermissibly seek to expand the scope of Skillz's claims by suggesting that Skillz has been damaged by Papaya's alleged use of bots independent of any alleged false advertising pertaining to bot usage. (*See, e.g., id.* ¶ 7 ("As a result of Papaya's false and misleading statements *and* use of bots, Skillz has lost customers…") (emphasis added).) To be clear, the Complaint asserts claims for false advertising and consumer deception; as the above-cited legal authorities make clear, any purported injury or damage to Skillz must arise from that alleged deceptive activity, not the mere alleged act of bot usage.

have used Skillz [to] now sign up instead with Papaya" and refuse to leave the platform. (*Id.* ¶ 55.) That theory, however, is unsupported and speculative, based on nothing more than Skillz's subjective belief. Beyond the conclusory, generalized recitation of purported lost business, Skillz has provided no inkling of any actual impact on its bottom line, or pointed to any consumers that opted for Papaya instead of Skillz, whether due to purported false advertising or otherwise.

Skillz's allegation of being damaged is also inconsistent with other allegations in the Complaint, including that "many [Papaya] customers are clearly unhappy because they believe Papaya unfairly and deceptively deploys bots." (*See id.* ¶¶ 72, 92.) Such allegations indicate that consumers are disincentivized to remain on the Papaya platform. (*See id.* ¶ 85 (user claims to have "deleted the game because [he] no longer felt [Papaya was] playing a fair game").) Skillz also alleges that "a typical user would not switch back and forth between Skillz and Papaya" because of the allure of "in-game rewards, accolades, and other accomplishments," (Compl. ¶ 48), but then, just two paragraphs later, alleges that dissatisfaction with the outcome and performance of one platform will cause players to switch to another (*id.* ¶ 50). Even within the bounds of its own Complaint, Skillz cannot keep straight whether Papaya is trapping consumers or driving them away.

Moreover, as discussed above, Skillz acknowledges a number of alternative reasons why consumers choose to play Papaya games rather than Skillz games that have nothing to do with Papaya's alleged false statements and/or alleged use of "bots" — for example, Papaya's tournament-based games, which "offer the chance at larger cash prizes." (*Id.* ¶ 55.) Skillz admits that these features factor into Papaya's popularity. (*Id.* ¶ 53.) This admission not only undercuts any alleged proximate causation between Papaya's "deceptive" conduct and injury to

Skillz, but also further reveals as speculation that Papaya's alleged presence of "bots," if known to players, would cause those players to eschew the other significant benefits of Papaya games and instead play Skillz platform games that, as Skillz admits, do not offer those same benefits.[14]

Skillz also relies on an unwarranted assumption that any user that did not play Papaya's games would instead automatically play Skillz's games, as opposed to games from another developer or platform-provider. For example, Skillz alleges without support that "Papaya's gain is Skillz's loss" and that competition between the two is a "zero-sum game." (*Id.* ¶ 49.) This allegation is implausible because it ignores that other competitors offer similar competitive games. Indeed, one such other competitor is referenced by Skillz in the Complaint itself. (*Id.* ¶ 110.) Moreover, the "zero-sum game" characterization ignores the fact that Skillz and Papaya do not provide the same services or directly compete for the same customers. Skillz, unlike Papaya, does not develop the games on its platform, but rather provides its platform to third-party developers. (*Id.* ¶¶ 27-28.) Accordingly, while Papaya develops its own games and markets those games directly to consumers, Skillz markets its platform to third-party developers, ostensibly deriving its revenue from those developers and not from consumers.

In sum, Skillz's contradictory statements and allegations — which at no point are suggested to constitute alternative pleading — undercut any plausible allegation that Skillz was harmed or injured by the alleged deceptive conduct. *See DPWN Holdings (USA),* 747 F.3d at

---

[14] The Complaint separately refers to player liquidity and its relevance to the speed of competitive match-making as a claimed reason why Papaya's alleged "bot" use would divert players from Skillz to Papaya. (*Id.* ¶¶ 56-57.) However, Skillz provides no plausible allegation in the Complaint that Papaya players would *actually* play Skillz games instead if Papaya player liquidity was lower and it took users longer to be placed into a match. Even if it took players, on balance, longer to be placed into a Papaya match, all of the aforementioned benefits that Skillz-platform games do not offer (such as the chance to win larger prizes with the same entry fee) suggest that players may still choose to play Papaya games over Skillz games.

151-52 ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the [complaint]." (citation omitted)).

### C. Skillz Has Failed to Plausibly Plead That the Alleged False Statements Were Material to Consumers' Decisions to Play Papaya Games

A Lanham Act false advertising plaintiff must allege that the defendant's statements are "material" in that they "had the capacity to adversely affect the plaintiff's business by influencing consumer purchasing decisions." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 70 (2d Cir. 2016). Put another way, "[i]f consumers, faced with the choice to purchase either the plaintiff's product or the defendant's, are likely to prefer the defendant's product by reason of the defendant's false advertising, the falsity of the defendant's advertising is material." *Id.* at 71.

Here, the Complaint does not plausibly allege that the presence or absence of bot opponents would actually influence a user's choice to play Papaya's games. At most, Skillz's allegations show only that certain purported Papaya gamers are frustrated with Papaya games due to losses, based on the unfounded belief that these losses were to bot opponents. The Complaint points to no references that any specific Papaya statement purportedly deceived consumers into playing Papaya's games, or that any of those consumers would have otherwise played Skillz-platform games if they had not supposedly been deceived. And as noted, the Complaint actually presents a number of alternative reasons why players might choose Papaya over Skillz unrelated to the alleged presence (or absence) of computerized opponents.

Accordingly, Skillz has not plausibly alleged that any Papaya statement was actually material to consumer purchasing decisions. On this ground, as well, Skillz's allegations do not state a claim under the Lanham Act and should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Papaya respectfully submits that the Court should grant the

Motion and dismiss Skillz's Complaint. Papaya further submits that the dismissal should be with

prejudice because amendment would be "futile" and "better pleading will not cure" the

deficiencies in the pleading (particularly given that Skillz admits, as it must, that Papaya has

never denied or refuted the alleged bot usage). *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

2000).


Dated: May 6, 2024             Respectfully submitted,
      New York, New York

                                                           */s/ Anthony J. Dreyer*
                                                           Anthony J. Dreyer
                                                           SKADDEN, ARPS, SLATE,
                                                              MEAGHER & FLOM LLP
                                                           One Manhattan West
   New York, New York 10001
   Tel: (212) 735-3000
   Anthony.Dreyer@skadden.com

   David B. Leland (*pro hac vice*)
   Margaret E. Krawiec (*pro hac vice*)
   SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
   1440 New York Avenue, N.W.
   Washington, D.C. 20005
   Tel: (202) 371-7000
   David.Leland@skadden.com
   Margaret.Krawiec@skadden.com

   *Attorneys for Defendants Papaya*
   *Gaming, Ltd. and Papaya Gaming, Inc.*