**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKILLZ PLATFORM INC.,<br>a Delaware corporation,<br><br>Plaintiff,<br><br>-against-<br><br>PAPAYA GAMING, LTD., a foreign corporation; and PAPAYA GAMING, INC., a Delaware corporation,<br><br>Defendants. | Civil Action No.: 24-cv-1646-DLC<br><br>Hon. Denise L. Cote |

PAPAYA GAMING, LTD.,

Counterclaim-Plaintiff,

-against-

SKILLZ PLATFORM INC.,

Counterclaim-Defendant,

and

TETHER STUDIOS LLC and GOLDEN WOOD COMPANY, LTD.,

Additional Counterclaim-Defendants.

**~~[PROPOSED]~~ ORDER GOVERNING THE DISCOVERY AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

This Order Governing the Discovery and Production of Electronically Stored Information ("ESI Order") will govern discovery of electronically stored information ("ESI") and hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, the Local Rules for the Southern and Eastern Districts of New York, and any other applicable orders and rules.

## 1. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate transparently and in good faith. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1).

## 2. IDENTIFICATION OF CUSTODIANS & DATA SOURCES

The Parties shall continue to disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Federal Rule of Civil Procedure 26, the Local Rules, and any orders of the Court.

## 3. SEARCH METHODOLOGIES

The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR"). The Parties further recognize that different methodologies to identify, search, collect, cull, review, and produce responsive and non- privileged ESI may be appropriate for different data sets. The Parties agree to meet and confer in good faith regarding any potential disputes over their respective methodologies.

Nothing in this Order precludes a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant. Further, nothing in this Order requires the production of documents captured by any

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 3 of 13

search term that are both irrelevant and not responsive to the Requesting Party's requests, or are privileged or otherwise protected from disclosure.

A Producing Party that chooses to use TAR to identify, search, collect, cull, review, or produce ESI will promptly disclose (i) the TAR tool or service and (ii) any search terms being used.

**4. SYSTEM FILES**

a) The parties may filter out common system files using the National Software Reference Library NIST hash set list. The parties may suppress container files (.ZIP, .PST, .RAR) that do not reflect substantive information.

b) The parties may filter out stand-alone files identified as zero bytes in size.

c) Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 4 of 13

5. **DE-DUPLICATION**

a) The parties may globally deduplicate (i.e. within and across custodians) using commercially acceptable e-discovery software that utilizes either MD5 or SHA1 cryptographic hash values to de-duplicate ESI at the document family or parent level. The identity of the primary custodian and other custodians that possessed all de-duplicated items at the time of production shall be provided in the "All Custodian" field of the single record that is produced.

b) Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email"), unless earlier iterations of the thread contain unique information or unique attachments, in which case earlier iterations of the thread must be produced. If a party elects to utilize email thread suppression, it shall use commercially acceptable e-discovery software and disclose the software being used.

6. **DATABASES AND STRUCTURED DATA**

The Parties may produce structured data contained in databases by generating reports in a reasonably usable format (for example, in Excel or .CSV format). The first line in the report will show the column headers for each field of data included in the report.

7. **PRODUCTION FORMAT FOR ESI**

a) The Parties agree to produce documents in single-page, Group IV TIFF image file format with a minimum resolution of 300 dpi. The parties shall provide DAT and .OPT load files with standard delimiters. The parties shall meet and confer regarding alternate production formats for documents that cannot be reasonably produced in the agreed format.

b) The Parties shall provide the metadata fields set out in Appendix 1 in the .DAT data load file to the extent they exist and are reasonably accessible. The first line in each .DAT file

Case 1:24-cv-01646-DLC   Document 144   Filed 11/19/24   Page 5 of 13

shall be the header containing the agreed-upon metadata field names, and each subsequent line shall contain the fielded data for each document.

c) The Parties shall produce Excel files, .CSV files, and other documents that are unable to be converted to .tiff format in a reasonably useable manner in native format ("Native Files"). Each Native File shall be produced with a corresponding slip-sheet TIFF placeholder image file, which will contain burned in bates numbers, confidentiality designations and language indicating that the document is being produced as a Native File. Native Files shall be named with the beginning Bates number that is assigned to that specific record in the production. Native Files shall be produced with extracted text and applicable metadata fields as set forth in Appendix 1. For Native Files that contain redactions, the Parties may either apply the redactions to the native file or produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image. The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request. Other than as specifically set forth in this paragraph, a producing party need not produce documents in native format.

d) The Parties shall meet and confer to determine a mutually agreeable and reasonably practicable format for producing audio, video, and multimedia files.

e) The Parties shall provide a text file along with its corresponding TIFF image file(s) and metadata. The text shall be extracted directly from the native file. Optical Character Recognition ("OCR") can be provided in lieu of extracted text for redacted documents or documents without extracted text. Each text file shall be named according to the beginning Bates number that is assigned to that specific record in the production.

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 6 of 13

f) The Parties shall produce color images as 300 dpi single-page JPEG files where color images can be reasonably produced. The Parties shall produce documents in color in the first instance where native color copies are available.

g) If particular documents or categories of documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.

h) The Parties shall not degrade the searchability of documents as part of the document production process.

i) If a party prefers to reproduce discrete sets of documents from another litigation, arbitration, government inquiry, or other matter in their original production format to avoid undue burden and expense, the parties shall meet and confer. The Receiving Party may request reproduction of such documents in a format consistent with this Order for good cause shown.

**8. PRODUCTION FORMAT FOR HARD COPY DOCUMENTS**

Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. The Parties shall meet and confer regarding

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 7 of 13

alternate production formats for documents that cannot be reasonably produced in the agreed format.

**9. BATES NUMBERING**

The Parties shall number documents with consistent padding (*e.g.*, with a consistent number of leading zeros) across the entire production and sequential within a given document. The numbering convention shall be consistent throughout rolling productions. Bates numbers shall be branded in the lower right-hand corner of all TIFF images and shall not obscure any part of the underlying content.

**10. CONFIDENTIALITY**

Confidentiality designations shall be branded in the lower left-hand corner of TIFF images and shall not obscure any part of the underlying content. Confidentiality designations must also be reflected in metadata in accordance with the required field in Appendix 1.

**11. PRIVILEGE & REDACTIONS**

A Producing Party may redact information subject to the attorney client privilege or work product protection, personal identifying information, and any redactions permitted under the applicable Protective Order. The Producing Party shall indicate the type of redaction on the face of the redaction (*e.g.*, "AC Privilege," "PII"). Redactions for privilege must also be reflected in metadata in accordance with the required field in Appendix 1.

**12. ATTACHMENTS & FAMILY MEMBERS**

a) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments will be consecutively produced with their parent.

b) Notwithstanding the foregoing, the Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents (*i.e.*, such embedded objects will be produced within the document itself, rather than as separate documents).

**13. HYPERLINKS**

Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a producing party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the requesting party in produced documents, the requesting party may submit a list of hyperlinks to a particular producing party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the producing party, and the producing party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a requesting party may identify to a producing party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14. TIME ZONE**

Each Producing Party shall normalize ESI that it produces in this case to a single time zone (*e.g.*, UTC, GMT, EST, etc.), and shall notify the Receiving Party of the selected time zone.

**15. PASSWORDS**

The Parties will use reasonable efforts to remove passwords or other security protection from potentially responsive ESI documents.

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 9 of 13

**16. PROCESSING EXCEPTIONS**

The Parties will use reasonable efforts to address processing exceptions.

**17. TRANSLATIONS**

The Parties have no obligation to create translations of foreign-language documents in the first instance. For any foreign-language documents responsive to document requests that a producing party reasonably knows have been translated into the English language using human translators or through machine translation for its own purposes, the producing party shall produce the translation of the original document with the original. Nothing in this Order removes any Party's obligation to secure certified translations of documents required by the Federal Rules of Civil Procedure, Federal Rules of Evidence, Local Rules, or any other applicable rules or orders of the Court.

**18. PRODUCTION TRANSMITTAL**

Productions will be delivered via secure electronic file transfer system or other method agreed to by the parties.

**19. THIRD-PARTY DISCOVERY**

If the subpoenaed Non-Party produces documents to the Issuing Party but does not produce those documents to other Parties, the Issuing Party will use reasonable best efforts to reproduce the Non-Party's documents to the other Parties as soon as practicable under the circumstances. If the Non-Party production is not bates-stamped, the Issuing Party will designate the documents with a unique bates identifier when reproducing the documents to other Parties.

**20. PROTECTIVE ORDER**

All productions are subject to any Protective Order entered by the Court in this case. Pursuant to the applicable rules and any Protective Order, production of privileged or work-

product protected information is not a waiver in the pending case or in any other federal or state proceeding.

**21. NON-WAIVER OF OBJECTIONS**

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of any information or documents.

Nothing in this order shall be interpreted to require the production of documents, material, or information that is protected by the attorney-client privilege, attorney work product protection, or any other applicable privilege or protection.

**22. PRIVILEGE LOGS**

a) The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines.

b) The parties will exchange privilege logs no later than seven days following substantial completion of document discovery and supplement their privilege logs as necessary thereafter, with final privilege logs to be served no later than ten days after the close of fact discovery under the applicable Scheduling Order.

c) A single document containing multiple e-mails in an e-mail chain may be listed on the privilege log as a single entry containing the information from the most recent email in the chain. The Parties are not required to log redacted documents provided they state the reason for the redaction in the text of the redaction box (*e.g.*, "AC Privilege") and, in the case of redactions for privilege, the basis for invoking any privilege is clear from the face of the document.

**23. MODIFICATION**

This Order may be modified by agreement of the affected Parties or by the Court. Nothing in this Order waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that the Parties must first meet and confer and use reasonable best efforts to negotiate an exception from or modification to this Order prior to seeking relief from the Court.

**24. RESERVATION OF RIGHTS**

The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

So ordered.

Denise Cote

November 20, 2024

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 12 of 13

## Appendix 1: ESI Metadata and Coding Fields

| Field Name | Description of Field |
|---|---|
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| All Custodians | All Custodians (including the identity of other custodians for deduplicated records). Multiple custodians in the "All Custodian" field shall be separated by a semicolon. |
| Author | Author field extracted from the metadata of the native file |
| From | Sender of the e-mail message |
| To | Recipient(s) of the e-mail message (To) |
| CC | Recipient(s) of "carbon copies" of the e-mail message |
| BCC | Recipient(s) of "blind carbon copies" of the e-mail message |
| Email Subject | Email Subject |
| Sent Date/Time | Date and time the e-mail message was sent |
| File Date | Date and time the file was created |
| File Date Modified | Date and time the file was last modified |
| File Type | Email, Attachment, E-File, Scanned Paper |
| File Extension | File extension of document (.msg, .doc, .xls, etc.) |
| File Name | Name of original file |
| Hash Value | MD5 or SHA-1 Hash Value |
| Modified Date/Time | For non-emails (produced in "MM/DD/YYYY HH:MM AM or PM" format) |
| Confidentiality | Confidentiality designations in any Protective Order |
| Redacted | Contains Redactions (Yes/No) |
| Native File Path | Relative file path to each native file in the production volume |
| Text File Path | The path to the corresponding OCR or extracted text file included with a production volume. |

Case 1:24-cv-01646-DLC Document 144 Filed 11/19/24 Page 13 of 13

Dated: November 19, 2024

KING & SPALDING LLP

By: /s/ Craig Carpenito

Craig Carpenito
Jessica Benvenisty
Amy Nemetz
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036-2601
Tel: (212) 556-2100
Fax: (212) 556-2222

Lazar P. Raynal (pro hac vice)
Michael A. Lombardo (pro hac vice)
KING & SPALDING LLP
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel: (312) 995-6333
Fax: (312) 995-6330

*Attorneys for Skillz Platform, Inc.*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Anthony J. Dreyer

Anthony J. Dreyer
Jordan A. Feirman
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000

David B. Leland (pro hac vice)
Margaret E. Krawiec (pro hac vice)
Michael A. McIntosh (pro hac vice)
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 371-7000

*Attorneys for Papaya Gaming, Ltd., and Papaya Gaming, Inc.*

SO ORDERED.

Dated: ____________, 2024

______________________________
HON. DENISE L. COTE, U.S.D.J.