UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :    24cv1646(DLC)
SKILLZ PLATFORM INC.,                  :
                                       :    Opinion and
                          Plaintiff,   :        Order
                                       :
          -v-                          :
                                       :
PAPAYA GAMING, LTD., et al.,           :
                                       :
                          Defendants.  :
                                       :
-------------------------------------- X
                                       :
PAPAYA GAMING, LTD., et al.,           :
                                       :
              Counterclaim Plaintiffs, :
                                       :
              -v-                      :
                                       :
SKILLZ PLATFORM INC.,                  :
                                       :
              Counterclaim Defendant,  :
                                       :
          and                          :
                                       :
TETHER STUDIOS LLC, et al.,            :
                                       :
   Additional Counterclaim Defendants. :
                                       :
-------------------------------------- X

APPEARANCES:

For plaintiff Skillz Platform Inc.:
Craig Carpenito
Amy Katherine Nemetz
Jessica C. Benvenisty
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800

Chicago, IL 60606

For defendants Papaya Gaming, Ltd., et al.:
Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001-8602

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

DENISE COTE, District Judge:

Skillz Platform Inc. ("Skillz") sued its competitor, Papaya Gaming, Ltd. and Papaya Gaming, Inc. (collectively, "Papaya"), alleging violations of the Lanham Act, 15 U.S.C. § 1125, and the New York General Business Law ("GBL"), § 349, through false advertising. Papaya brings several counterclaims against Skillz, first alleging that Skillz violated the Lanham Act and GBL § 349 by falsely advertising various aspects of its own games and making false claims about its competitors' games. Papaya also alleges defamation and civil conspiracy, and that Skillz and two other companies infringed on Papaya's trademarks and copyrights by copying elements of its games. Skillz has moved to dismiss Papaya's counterclaims in their entirety. It has also moved, in the alternative to dismissal, for severance of Papaya's trademark and copyright counterclaims.

2

For the following reasons, Skillz's motion to dismiss is granted in part.  Additionally, Skillz's motion to sever Papaya's trademark and copyright counterclaims is granted.

## Background

The following facts are taken from the First Amended Counterclaims ("FAC").  Only the facts necessary to decide the motion are included.  They are assumed to be true for the purpose of this motion, and all reasonable inferences are drawn in the counterclaim-plaintiffs' favor.

Papaya is a developer of mobile, multiplayer games that allow users to deposit money and earn real cash prizes, along with in-game currency.  In a game, users typically compete with between five and twenty opponents for the highest score.  Using an algorithm, Papaya arranges games by matching users of similar skill, as measured by each player's performance in prior games.

Skillz operates a mobile gaming platform in competition with Papaya.  The platform hosts games created by third-party developers, including two named as counterclaim-defendants: Tether Studios LLC ("Tether") and Golden Wood Company, Ltd. ("Golden Wood").  Skillz's games involve only head-to-head gameplay, as opposed to games involving more than two players.

A.   Skillz's Claims About Fairness

In various ways, Skillz markets its games as being uniquely fair and trustworthy.  On its apps, it presents a badge indicating it is "Committed to Fair Play" and will "[m]atch [users] with real players of equal skill" in its games.  On social media, Skillz has promoted its "unwavering assurance of fairness," including its promise to "NEVER EVER employ bots" and "guarantee that every match you engage in is a true reflection of your skill level."  In a 2024 "letter to our community," Skillz CEO Andrew Paradise made similar claims, noting the company was "committed to rooting out and eradicating cheaters, bad players, and bots," and that its games would include "No unfair bots, not ever."  The letter said that Skillz used a "proprietary technology to ensure fair matching," so that users could be "sure the competition is real, and so are your chances of winning."  Skillz's website, social media feeds, and marketing of individual games repeated much the same claims about "pair[ing] players with similar skill levels," having "a fair chance to win," and the games' lack of bots.  Paradise also made these statements on earnings calls with investors, emphasizing that Skillz "stands alone" in committing to "fair play for skill-based gaming."

B.    Skillz's Operation of Games

Despite its representations, according to the FAC, Skillz
has used and allowed the use of bots in its games, and it has
unevenly matched players.  Skillz has clarified that it uses
bots only in certain non-cash games and in games where two human
players compete asynchronously.  In addition to permitting the
use of bots on its platform, former Skillz employees say that
the company sometimes manipulates the outcomes of games by
unevenly matching players.

The way in which Skillz characterizes and operates games on
its platform affects Papaya in a few ways.  Because of some
players' experience with Skillz's games, they come to believe
that all mobile gaming is rigged and stop using other games,
like Papaya's.  Some confuse the two platforms and attribute the
unfairness of Skillz's games to Papaya.  And if not for Skillz's
claims about the fairness of its games, some players may have
played Papaya's games instead of Skillz's.

C.    Cash Withdrawals

In its marketing to consumers, Skillz claims that they can
withdraw cash that they win on its platform "at any time."  It
has made this claim in video advertisements, as well as on the
"Support" page of its website.  But some players have complained
online and in reviews of Skillz's platform that they were unable

to withdraw money from their accounts when they attempted to do so.  In some cases, players were unable to access their winnings because their accounts had been banned from the platform.

D.    Claims About Papaya and Other Gaming Companies

According to the FAC, Skillz has embarked on a public-facing campaign to smear competitors like Papaya to position itself as fairer and more trustworthy than other mobile gaming companies.  It has done so in two ways: first, by creating an organization that accuses Skillz's competitors of using bots in its games, and, second, by planting and disseminating an article that stated Papaya had admitted to using bots in its games.  Skillz's claims about Papaya have tarnished Papaya's reputation and that of the mobile gaming industry generally, and, in their absence, some users may have played Papaya's games instead of Skillz's.

1.    4FairPlay Organization and Website

First, Skillz created a "false-front" organization called "Fair Play for Mobile Games" or "4FairPlay", which maintained a public website from September 2023 to February 2024.  Skillz funded the organization and controlled and assisted it.  Skillz, through its CEO Andrew Paradise, also provided specific direction on the design of its website.

6

The 4FairPlay website encouraged and facilitated visitors' filing of complaints about mobile gaming companies, other than Skillz and including Papaya, with state attorneys general. One page titled "File a Complaint," for example, provided a pre-filled form for users to submit a complaint against either Papaya or one of two other companies, but not Skillz, to state law enforcement.

The website's home page included a banner showing a counter that purported to display an increasing number of complaints filed with state law enforcement about Papaya and two other companies. That counter did not display an accurate number of complaints; in fact, each time a visitor arrived at the website, it would display the same number. The number would appear to increase every few seconds, which gave the false impression that it was incorporating accurate, live updates. The page also encouraged visitors to file a complaint, noting that "thousands of players" were doing so.

The 4FairPlay homepage also displayed a pie chart purporting to show the relative number of complaints relating to various games offered by Papaya and other companies. Above the graph appeared the sentence: "Bingo Cash and Solitaire Cash by Papaya Games have received the highest complaints so far followed by Solitaire Cash from Avia Games." The figures

7

displayed in the graph, which remained static, did not reflect in real time any actual database of complaints being continuously updated.  The homepage also presented a map of the United States, purporting to show the number of complaints submitted from each state.  Like the graph, the map's data stayed the same over time and were not connected to any live database.

      2.    Bonus.com Article

On June 25, 2024, Skillz posted a link to an article on the website Bonus.com to its social media accounts ("Bonus.com article").  Skillz had been involved in creating the article, which was titled "Papaya Gaming Admits Bot Use, Claims No Deception."  Skillz's social media posts thanked Bonus.com for "covering this story," stated that "[f]raud is fraud," and made similar statements decrying bot use in the mobile gaming industry.

The article referred to this litigation, and portrayed Papaya as having "admitted" to using bots in the course of defending itself from Skillz's lawsuit, despite Papaya's counsel's statement at a May 10 conference that Papaya's platform does not use bots.[1]  Bonus.com ultimately retracted the

---

[1] At the May 10 conference, Papaya's counsel stated that "the games as currently constituted do not use bots.  Every single opponent is a human opponent."

article's statement that Papaya had admitted to using bots and issued a correction, but Skillz did not remove its social media posts referencing the article and the claims it initially made.

E.    Papaya's Intellectual Property on Skillz's Platform

According to the FAC, another aspect of Skillz's unfair competition with Papaya is its misappropriation of intellectual property in Papaya's games.  Several of Papaya's games, particularly SOLITAIRE CASH, BINGO CASH, and 21 CASH, have accrued substantial popularity and brand recognition with the game-playing public.  These similarities between Skillz's games and Papaya's have caused confusion among consumers, who may think that Skillz's games are associated with Papaya and in some cases blame Papaya for deficiencies in games that are actually hosted by Skillz.

1.    Papaya's Intellectual Property

In SOLITAIRE CASH, players win points by clearing cards from the game board and creating sequences of cards in descending order.  In BINGO CASH, players try to win the most points by marking, or "daubing," certain numbers on the game board as fast as possible.  And in 21 CASH, players create stacks of cards adding up to 21, out of a deck of 52 cards, within a given time limit.

These games have all been offered for several years, during which they have been played by millions of people and garnered hundreds of thousands of reviews.  Users associate these games with their names and logos.  Accordingly, Papaya has a federal trademark registration for each of the games' names and logos or icons.  And additional artistic expression within the BINGO CASH game, such as play screens, game boards, and other elements of the user interface, is the subject of a copyright registration.

2.    Games on Skillz's Platform

After Papaya released these games, however, several games with similar names and imagery appeared on Skillz's platform. First, in June 2023, the Skillz platform began hosting a game developed by Tether called CASH OUT BINGO.  Like BINGO CASH's logo, CASH OUT BINGO's logo features the word "BINGO" above three colored bingo balls.  In both logos, the center ball includes a dollar sign in a white circle, while two other balls with numbers in white circles appear behind it.  In addition, the CASH OUT BINGO user interface resembles that of BINGO CASH, including the use of a dark blue star against a lighter blue square for the bingo board's center, a blue pill-shaped "Bingo" button, a similarly shaped and situated set of meters to display bonuses, and similar or identical names and icons for types of bonuses (such as "Wild Daub" or "Pick-A-Ball").

10

Second, BINGO FOR CASH was developed by Golden Wood,
released on Skillz's platform in May 2024, and also resembles
Papaya's BINGO CASH game.  Both games' interfaces have a purple
background, use yellow stars for daubed numbers, highlight
certain numbers in light blue, and use a similar "Bingo" banner
in which each letter appears in its own pill-shaped frame
colored red, yellow, purple, green, and blue, respectively.

Third, 21 BASH, which was developed by Luckyo Limited and
was released in May 2023, resembles Papaya's 21 CASH in its name
and logo.  Both games' icons prominently feature the number "21"
in a gold font against a purple background.  Both icons also
feature illustrations of playing cards, including an Ace and a
Jack.

Fourth, SOLITAIRE WORLD - WIN CASH was developed by
GameNexa Studios and released in 2023.  Its icon resembles that
of Papaya's SOLITAIRE CASH.  Both icons show illustrations of
three cards, similarly spread against a green background, where
the front card displays dollar signs and a gold border, and the
two cards behind it appear to be more traditionally colored
white playing cards.

Fifth, a game developed by DNR Game Studio and released in
2024, is called SOLITAIRE CASH, but has been listed on app
stores with longer names including "SOLITAIRE CASH - JUST PLAY

11

NOW" and "SOLITAIRE CASH: WIN REAL MONEY."  This game has the same name as Papaya's SOLITAIRE CASH.

Finally, as of the FAC's filing, Skillz was planning to offer a game called "21 CASH BLITZ - WIN CASH," developed by DNR Game Studio, beginning in October 2024.  The icon for the game includes only the words "21 CASH," such that the game's title appears to be identical to that of Papaya's 21 CASH.

F.  Lawsuit

Skillz initiated this action against Papaya on March 4, 2024.  Papaya moved to dismiss the claims against it on May 6, and that motion was denied in its entirety on July 23.  Skillz Platform Inc. v. Papaya Gaming, Ltd., No. 24cv1646, 2024 WL 3526853 (S.D.N.Y. July 23, 2024).  On August 5, Papaya filed an Answer to the Complaint, as well as counterclaims against Skillz and five other companies.  On September 4, Skillz moved to dismiss and/or sever the counterclaims.

Following an initial pretrial conference on September 6, an Order of the same day set forth a schedule for discovery and other pretrial proceedings in this case.  Fact discovery in the underlying action against Papaya is about to conclude.  On September 23, Papaya filed the FAC, mooting Skillz's September 4 motion.  The FAC named only Skillz, Tether, and Golden Wood as counterclaim-defendants.  Tether filed an Answer on October 7.

On October 11, Skillz renewed its motion to dismiss or, in the alternative, sever certain counterclaims.  The motion was fully submitted on November 15.

## Discussion

Papaya brings ten counterclaims against Skillz.  In its first two claims, the FAC alleges false advertising and deceptive practices under the Lanham Act and GBL § 349, respectively.  In its next two claims, the FAC alleges defamation and civil conspiracy to unlawfully harm Papaya under New York common law.  Next, the FAC alleges trademark infringement and contributory and/or vicarious trademark infringement in violation of 15 U.S.C. § 1114; false designation of origin, false association, and/or unfair competition, and contributorily and/or vicariously doing the same, pursuant to 15 U.S.C. ¶ 1125(a); and copyright infringement and contributory and/or vicarious copyright infringement under 17 U.S.C. § 501 ("trademark and copyright claims").

Skillz has moved to dismiss all of Papaya's counterclaims for failure to state a claim for relief pursuant to Rule 12(b)(6), Fed. R. Civ. P.  In the alternative, Skillz argues, Papaya's six trademark and copyright counterclaims should be severed.

To survive a motion to dismiss brought under Fed. R. Civ.
P. 12(b)(6), "a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is
plausible on its face." Doe v. Franklin Square Union Free Sch.
Dist., 10 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Vengalattore
v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting
Ashcroft, 556 U.S. at 678). "In determining if a claim is
sufficiently plausible to withstand dismissal, a court 'must
accept as true all allegations in the complaint and draw all
reasonable inferences in favor of the non-moving party.'" Doe,
100 F.4th at 94 (citation omitted).

I.   Lanham Act and GBL § 349

Papaya alleges that Skillz violated the Lanham Act and GBL
§ 349 by falsely advertising its own products, including by
claiming that its games did not include bots, that it matches
players evenly, and that it allows users to withdraw cash at any
time.  Papaya also alleges that Skillz made false statements
about the fairness of games offered by Papaya and other
competitors.  Skillz argues primarily that the FAC fails to

state these claims because it does not plausibly allege the challenged statements were false.  For the following reasons, Skillz's motion is denied with respect to claims arising from Skillz's claims about its own products, but granted to the extent counterclaims allege violations based on Skillz's claims about its competitors.

Under Section 43(a) of the Lanham Act, any person who, on or in connection with any goods or services, uses any

> false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  To state a claim under this provision, the plaintiff must allege (a) "the falsity of the challenged statement," (b) "materiality, i.e, that the false or misleading representations involved an inherent or material quality of the product," (c) "that the defendant placed the false or misleading statement in interstate commerce," and (d) "that the plaintiff has been injured as a result of the misrepresentation."  Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 56 (2d Cir. 2022) (citation omitted).

"A plaintiff can demonstrate falsity either by showing: (1) literal falsity, i.e., that the challenged advertisement is

false on its face, or (2) implied falsity, i.e., that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." Id. at 57 (citation omitted). "[A]n impliedly false message leaves an impression on the listener or viewer that conflicts with reality," and need not necessarily imply something that is literally false. Id. (citation omitted). A statement's materiality depends on whether it is "likely to influence purchasing decisions." Id. at 63 (citation omitted).

Similarly, a GBL § 349 claim must "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted). The Second Circuit has noted that these elements resemble those of a Lanham Act false advertising claim, and neither party suggests the laws differ in any way that is material to the instant motion. See UpCodes Inc., 43 F.4th at 56 n.3.

A.   Skillz's Statements About Its Own Games

First, Papaya sufficiently alleges that Skillz violated the Lanham Act and GBL § 349 by falsely stating that games on its platforms did not use bots, matched players evenly, and allowed

users to withdraw funds at any time.  According to the FAC,
Skillz claimed in various contexts that its games never involve
bots and that they ensure players are paired with other players
of similar skill level.  It alleges that those claims are false,
in that Skillz games did use bots in some contexts and that they
manipulated the outcomes of games by matching players in a way
that ensured a certain result.  The FAC plausibly alleges that
the challenged representations were material, evidenced in part
by customer reviews implying that Skillz's users participated in
its games because they thought they would be fairly matched
against a human.  Papaya alleges that these statements have
injured it by attracting potential Papaya customers to Skillz,
and by creating confusion that has hurt Papaya's reputation.
And there is no dispute that the challenged statements were
placed in interstate commerce.

    Skillz argues to the contrary that Papaya has no factual
support for its allegations that Skillz used bots or unevenly
matched players.  These claims are governed by Rule 8's pleading
standards.  To plead plausible claims, Papaya cites to Skillz
documentation that refers to the use of bots.  And the FAC
refers to language used internally at Skillz, which, construed
in the light most favorable to Papaya, could suggest that Skillz
was manipulating the outcomes of games by unevenly matching

players.  Skillz responds that bot usage in a narrow set of
circumstances, such as in training games, is immaterial to
consumers.  But the FAC does not allege that Skillz used bots
only in training games.  And, in any event, whether the presence
of bots in certain narrow contexts is immaterial to consumers
raises questions of fact.  See UpCodes Inc., 43 F.4th at 64.
Papaya plausibly alleges that Skillz's claims that it never uses
bots affect consumers' decisions to use the platform.

With respect to the claims that users could withdraw cash
at any time, Skillz argues that the challenged statements were
not false when viewed in context, including that the Skillz's
website included an article called "why does it take 4-6 weeks
to get my withdrawal."  While, "under certain circumstances, the
presence of a disclaimer or similar clarifying language may
defeat a claim of deception," Fink v. Time Warner Cable, 714
F.3d 739, 742 (2d Cir. 2013), to warrant dismissal at this stage
of the litigation the disclaimer should be located near the
challenged language and "so clear that no reasonable addressee
could believe the plaintiffs' allegations of being misled."
UpCodes Inc., 43 F.4th at 63.  This is not such a case, as the
FAC alleges that Skillz made the challenged claims in video
advertisements and on another page of its website.

18

   B.    Skillz's Statements About Its Competitors

   Skillz has also moved to dismiss Papaya's Lanham Act and
GBL § 349 claims based on Skillz's statements about Papaya and
other competitors.  According to the FAC, Skillz implied through
the graphics and content on the 4FairPlay website that its
competitors, including Papaya, have been the subjects of many
consumer complaints related to the use of bots and unfair games,
while Skillz has not.  Skillz argues that Papaya has failed to
sufficiently allege that the challenged statements were false.
Skillz is correct.

   As in initial matter, Papaya does not allege that the
4FairPlay website is "literally false."  Id. at 57.  "A message
can only be literally false if it is unambiguous."  Id.
(citation omitted).  And "a district court evaluating whether an
advertisement is literally false must analyze the message
conveyed in full context, i.e., it must consider the
advertisement in its entirety and not engage in disputatious
dissection."  Id. (citation omitted).  Papaya's allegations are
essentially that the website's graphics caused consumers to be
confused.  The FAC's assertion that the website's complaint
counter "created a false sense of specificity and legitimacy,"
for example, is not a claim that it was unambiguous or that it
necessarily implied a constantly updated connection to live

                              19

database.  Similarly, the claims that other companies are "scams" or "fraudulent" do not necessarily and ambiguously imply a false message, because those words are not susceptible to a single clear, widely agreed-upon definition.  Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016). Where "the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."  Id. (citation omitted).

To the extent Papaya's allegation is that the website was impliedly false, it has failed to "plead sufficient facts to support a finding that consumers were confused or misled," as is necessary to challenge "a statement that is not literally false."  UpCodes Inc., 43 F.4th at 64 n.10.  This sort of allegation is "usually demonstrated through extrinsic evidence of consumer confusion or through evidence of the defendant's deliberate deception."  Id. at 57 (citation omitted).  Here, the FAC does not allege any such facts, but offers only the conclusion that "a reasonable consumer . . . would have been deceived" by the website and that the website included "false and misleading statements."  Even at this early stage, a claim cannot survive based on "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 663.

Papaya highlights three aspects of the 4FairPlay website aside from the consumer complaint graphics that it says amounted to false advertising: Skillz's hiding its involvement to "give the impression" that 4FairPlay was unbiased, the "design" of the website suggesting its impartiality, and the website's omission of Skillz as an option for the subject of complaints. But these accusations do not identify "any description of fact," 15 U.S.C. § 1125(a)(1), or statement about a product or service, much less a false one.[2] Accordingly, Papaya's Lanham Act and § 349 claims regarding the 4FairPlay website are dismissed.

II.  Defamation

Under New York law, a defamation claim must include:

> 1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face).

Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 259 (2d Cir. 2021) (citation omitted). Papaya claims that Skillz defamed it

---

[2] Papaya also posits that Skillz's motion regarding these claims could be rejected solely on the basis of its brief's referencing only defamation law to support it. That is not quite true; Skillz argues in its brief that Papaya has not pleaded falsity under the Lanham Act or GBL § 349. And, importantly, the three causes of action share the requirement of falsity. See ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 492 (2d Cir. 2013) (referring to Lanham Act and GBL § 349 claims as "sounding in defamation").

through two sets of public communications: first, various
representations on the 4FairPlay website regarding consumers'
complaints about Papaya's games, and second, the Bonus.com
article that said Papaya had admitted to bot use, which the FAC
alleges Skillz created and disseminated.

A.    4FairPlay Website

Papaya first alleges that the 4FairPlay website's various
representations indicating that Papaya had been the subject of
consumer complaints were defamatory.  Skillz argues that Papaya
has not sufficiently alleged that those statements were false in
the sense required to state a defamation claim.  Skillz is
correct.

To state the falsity element of a defamation claim, the
complaint "must plead facts that, if proven, would establish
that the defendant's statements were not substantially true."
Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236,
247 (2d Cir. 2017).  "A statement is substantially true if the
statement would not have a different effect on the mind of the
reader from that which the pleaded truth would have produced."
Id. at 242 (citation omitted).  Under this definition, which is
meant to avoid an "overly technical or exacting conception of
truth," "the entire publication, as well as the circumstances of

22

its issuance, must be considered in terms of its effect upon the ordinary reader." Id. at 243 (citation omitted).

The FAC fails to plead that the complaint counter, pie graph, and map were not substantially true. For instance, the FAC does not allege that multiple consumers had not complained about Papaya, or that the complaints about Papaya were not increasing over time.[3]

Papaya argues, and the FAC asserts in conclusory fashion, that the counter falsely gave the impression that these statistics were connected to some live database, which imparted a "false sense of legitimacy and impartiality." This parsing of the website's graphic misses the thrust of its presentation, which urges viewers to join a growing list of complainants.

Papaya also notes that other statements on the 4FairPlay website -- about "fraudulent games" and "scams" -- can support its defamation claim. This argument fails as well. "New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" Chau v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014). And "statements more likely to be characterized as fact are readily understood by the reader to have a precise, unambiguous and definite meaning and can be

---

[3] Skillz's motion is supported by a spreadsheet of complaints against Papaya. Papaya is correct these complaints cannot properly be considered on a motion to dismiss.

objectively characterized as true or false." Id. Reference to a game as a "scam" or "fraudulent" may be harsh, but those words lack a precise and definite meaning that would allow them to support a defamation claim. Various other alleged aspects of the website, such as the solicitation of complaints against Papaya but not against Skillz, likewise are not factual statements.

    B.  Bonus.com article

    Papaya also alleges that Skillz defamed it by creating and sharing the June 2024 Bonus.com article, whose headline stated that Papaya "Admits Bot Use." Skillz argues in support of its motion that the challenged statement is protected by New York's fair and true report privilege. Papaya responds primarily that the statement is not covered by that privilege because it is not true. Skillz's argument prevails.

    Under New York Law, a "civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding." Kinsey v. N.Y. Times Co., 991 F.3d 171, 178 (2d Cir. 2021) (quoting N.Y. Civ. Rts. L. § 74). A statement is "a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." Id.

24

(citation omitted).  For the privilege to apply, "the ordinary
viewer or reader" must be able to determine the publication at
issue is "reporting on a judicial proceeding."  Id. at 179
(citation omitted).  Still, New York courts adopt a liberal
interpretation" of this privilege "and will not review the
challenged language of the headline and article with a
lexicographer's precision."  Id. (citation omitted).

Skillz is correct that the fair and true report privilege
applies.  Based on the FAC, the Bonus.com article was about this
litigation -- a judicial proceeding.[4]  And the challenged
headline was "substantially true."  In a May 10 conference,
Papaya's counsel stated that "at the pleading stage, we have not
denied the use of bots" and that Papaya's games "as currently
constituted do not use bots."  Papaya's May 6 brief in support
of its motion to dismiss Skillz's claims against it stated:
"Papaya does not represent that its games never include
computerized opponents" and "Papaya has not denied or refuted
that it deployed bots."  Even if the Bonus.com headline may have
been more accurate in saying that Papaya "has not denied or
refuted that it deployed bots," defamation does law does not

---

[4] Papaya first argues that the Bonus.com is not a report on a
judicial proceeding at all.  In support of that argument it
notes its allegation that Skillz was involved in creating the
post.  But it supplies no authority or explanation establishing
why that fact would mean the privilege does not apply.

require maximal accuracy, and Papaya does not plausibly allege
that such a characterization would have a different effect on
readers than that of what the headline actually said.
Particularly in a headline -- an especially "condensed report of
events," id. at 179 (citation omitted) -- New York law does not
require the level of precision that Papaya's arguments imply.
Papaya posits that its May 2024 brief was only restating
Skillz's allegations, but that is clearly not the case.
Skillz's allegation was that Papaya did deny the use of bots.

The FAC also points to statements Skillz made not in the
Bonus.com article itself but in its social media posts sharing
the article.  It asserts that Skillz disseminated social media
posts falsely accusing Papaya of being a "scam" and a "fraud."
But these statements lack the kind of precise, unambiguous
meaning that make them actionable as statements of fact.

III. Civil Conspiracy

Skillz makes no arguments with respect to Papaya's civil
conspiracy claim in its opening brief, and its reply brief
states that it should be dismissed for the same reasons Papaya's
Lanham Act, GBL, and defamation claims should be dismissed.
Accordingly, Skillz's motion to dismiss the civil conspiracy
counterclaim is denied to the extent it arises out of the Lanham
Act and GBL § 349 claims that are not dismissed.

IV.  Trademark and Copyright Claims

Papaya has brought a series of counterclaims alleging that Skillz and two other companies violated trademark and copyright law by imitating certain elements of Papaya's games.  Skillz moves to dismiss these counterclaims.  For the following reasons, that motion is granted in part.

A.  Trademark Claims

To state a trademark infringement claim, "the plaintiff must show first, that its mark is protected, and second, that the defendant's use in commerce of the allegedly infringing mark would likely cause confusion as to the origin, sponsorship, or affiliation of the defendant's goods with plaintiff's goods." 1-800 Contacts, Inc. v. JAND, Inc., 119 F.4th 234, 246 (2d Cir. 2024) (citation omitted).

Papaya alleges that Skillz violated the Lanham Act by using game names and logos that resembled game names ("word marks") and logos ("logo marks") that Papaya had registered as trademarks.  According to the FAC, this resemblance would cause consumers to confuse Papaya's games with Skillz's games.  Skillz makes two arguments in support of its motion to dismiss the trademark claims: first, that Papaya's trademarks are not protectible, and, second, that Papaya has not sufficiently alleged consumer confusion.  Both of those arguments fail with

respect to Papaya's logos.  The motion to dismiss Papaya's
trademark claims premised on Papaya's word marks is granted.

     1.   Secondary Meaning

Skillz moves to dismiss Papaya's trademark counterclaims
first by arguing that Papaya's logo and word marks -- "BINGO
CASH," "21 CASH," and "SOLITAIRE CASH" -- are not descriptive
because they lack secondary meaning.  Papaya responds that it
has alleged longstanding, continuous use of the names and logos,
which represent popular games that have been downloaded many
times, which is enough to state a claim at this stage.  Papaya
is correct with respect to the logo marks, but not the word
marks.

Descriptive marks, which are at issue here,[5] are protected
only if they have acquired "secondary meaning," such that "the
mark's primary significance to relevant consumers is to identify
the trademark holder as the source of the product." Cross Com.
Media, Inc. v. Collective, Inc., 841 F.3d 155, 160 (2d Cir.
2016) (citation omitted).  Even so, a mark's registration on the
U.S. Patent and Trademark Office's Principal Register "is prima
facie evidence of the validity of the registered mark." Matal
v. Tam, 582 U.S. 218, 226 (2017).

---

[5] Papaya appears to accept Skillz's characterization of the
trademarks at issue as descriptive.

A mark has secondary meaning when, in the mind of consumer, "the primary significance" of a product feature "is to identify the source of the product rather than the product itself." Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 226 (2d Cir. 2012) (citation omitted).  The "crucial" question is thus "whether the public is moved in any degree to buy an article because of its source."  Id. (citation omitted).

> Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use.

Id. (citation omitted).  "Whether a mark has acquired distinctiveness is an inherently factual inquiry."  Id. (citation omitted).

Papaya has sufficiently alleged that its logos have secondary meaning.  Unlike the name marks, the logo marks are on the Principal Register.  The logos are pictured in the FAC, and it pleads that the relevant games associated with those logos have been publicly available for several years and that they have been downloaded by millions of people and positively reviewed by hundreds of thousands.  It also alleges that other companies have used the same or similar logos in their games, which may support an inference of distinctiveness.  Given the

29

fact-intensive nature of determining secondary meaning, Papaya's logos cannot be denied trademark protection as a matter of law.

The motion to dismiss is granted with respect to the word marks. Papaya's supplemental trademark registration for the word marks disclaims use of any particular font style, size, or color in connection with the words. The FAC does not explain how the word marks are presented to consumers. It provides no facts to support a claim that the word marks, by themselves, have become identifiers of the source of the games.

2.    Consumer Confusion

Papaya alleges that Skillz's use of similar logos for its games confuse consumers into thinking that Skillz's games are actually offered by Papaya. Skillz moves to dismiss Papaya's trademark claims on the basis that its allegations of consumer confusion are implausible. This argument fails as well.

To analyze consumer confusion, courts in this Circuit apply the eight-factor test set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). Those factors are:

> (1) strength of the trademark; (2) similarity between the two marks; (3) proximity of the products and their competitiveness with one another; (4) likelihood the prior owner may 'bridge the gap' in the markets for their products; (5) evidence of actual consumer confusion; (6) the defendant's good faith in adopting its imitative mark; (7) quality of the defendant's

product compared with the plaintiff's product; and (8)
sophistication of the buyers.

1-800 Contacts, Inc., 119 F.4th at 247 (citation omitted). "No
single factor is dispositive, nor is a court limited to
consideration of only these factors." Id. (citation omitted).
"The likelihood of confusion is a fact-intensive analysis that
ordinarily does not lend itself to a motion for judgment on the
pleadings," but implausible claims of confusion may be
dismissed. Id. at 255.

Papaya's allegations of consumer confusion are not
implausible. Papaya's logos have a stylized word, a defined
background design, and a set shape. The FAC alleges Papaya's
marks were in continuous and exclusive use for years, appended
to games with millions of users, such that they might have a
"tendency to uniquely identify the source of the product." City
of New York v. Henriquez, 98 F.4th 402, 411 (2d Cir. 2024)
(citation omitted). There is clearly substantial similarity
between the marks, as the logos use many of the same words,
colors, and symbols and position these components similarly with
respect to each other. The parties' products are in close
competition and are offered in essentially the same market. And
a factfinder could find that the similarities of the logos, and
Skillz's likely knowledge of them as a close competitor, imply a

degree of bad faith.  The FAC does not contain information about consumers' actual confusion or their sophistication.

Taking the <u>Polaroid</u> factors as a whole, Papaya has adequately alleged that consumers would be confused by Skillz's use of logos similar to the allegedly infringed marks. Accordingly, Skillz's motion to dismiss the trademark claims based on the Papaya logos is denied.[6]

B.  Copyright Claims

Finally, Skillz alleges that, through the games CASH OUT BINGO and BINGO FOR CASH, Skillz unlawfully used copyrighted elements of Papaya's game BINGO CASH.  Skillz moves to dismiss these claims on the basis that copyright law does not protect elements of bingo games.  Skillz's motion is denied.

"To establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's."  <u>Structured Asset Sales, LLC v. Sheeran</u>, 120 F.4th 1066, 1078 (2d Cir. 2024) (citation omitted).  "The standard

---

[6] Skillz makes no independent arguments regarding Papaya's claims of contributory and/or vicarious trademark infringement and of false designation of origin, false association, and/or unfair competition.

test for substantial similarity between two items is whether an
ordinary observer, unless he set out to detect the disparities,
would be disposed to overlook them, and regard the aesthetic
appeal as the same." Id. (citation omitted). "This test asks
whether an average lay observer would recognize the alleged copy
as having been appropriated from the copyrighted work." Id.
(citation omitted). When protectible and unprotectible elements
exist in the same work, courts "attempt to extract the
unprotectible elements from . . . consideration and ask whether
the protectible elements, standing alone, are substantially
similar." Id. at 1079 (citation omitted). Relatedly, "scenes a
faire, sequences of events that necessarily result from the
choice of a setting or situation, do not enjoy copyright
protection." Williams v. Crichton, 84 F.3d 581, 587 (2d Cir.
1996) (citation omitted).

Papaya has sufficiently alleged substantial similarity
between Papaya's BINGO CASH and Skillz's CASH OUT BINGO and
BINGO FOR CASH games. The parties appear to agree that elements
common to bingo-style games are not protectible, but they
disagree about whether substantial similarity between other
elements exists in the two games. The FAC plausibly sets forth
various elements of CASH OUT BINGO that a factfinder could
determine are substantially similar to those in BINGO CASH.

Those elements include a similarly colored and shaped "Bingo" button, similarly named and described bonus options ("Wild Daub", "Daub any number"), similar shapes and colors used for certain bingo squares, and similarly colored and shaped icons similarly arranged above the bingo board.  A motion to dismiss is not the appropriate vehicle to determine whether these elements are inherent parts of the unprotectible concept of bingo, or that they "necessarily result" from choosing to create a bingo game.  And whether a lay person would notice these similarities, even with any unprotectible context stripped away, is a question of fact that cannot be resolved at this stage. See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001) (explaining that, in testing substantial similarity, the "fact-finder must examine the works for their total concept and feel" (citation omitted)).

   C.   Severance

   In the alternative to dismissal, Skillz moves to sever Papaya's trademark and copyright counterclaims.  That motion is granted.

   Rule 21, Fed. R. Civ. P., states that "[t]he court may . . . sever any claim against a party."  "The decision whether to grant a severance motion is committed to the sound

discretion of the trial court." New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988).

Skillz and Papaya have for the past several months been engaged in active discovery that has primarily centered around Skillz's claims against Papaya and Papaya's counterclaims that bear on the companies' respective use of bots and other aspects of their games allegedly inconsistent with their public representations. The parties are proceeding on a busy schedule for fact and expert discovery, and in the not too distant future will be briefing summary judgment and other pretrial motions. This schedule was designed with Skillz's initial claims in mind. Those initial claims, along with Papaya's counterclaims that to some extent mirror them, have little to do with Papaya's trademark and copyright claims. Although they involve some of the same products, they arise out of different occurrences and raise different questions of law and fact. They also involve different parties; unlike the Lanham Act and GBL claims and counterclaims, Papaya has named Tether and Golden Wood as counterclaim defendants to the trademark and copyright counterclaims.[7] Resolving the trademark and copyright counterclaims will likely require a different set of discovery

---

[7] Tether filed an Answer on October 7, 2024. Golden Wood has not appeared in this action.

materials, different considerations underlying any settlement
discussions, and different arguments, should the parties choose
to raise them, on summary judgment and other pretrial motions,
and at trial.  Neither party presents any compelling reason to
think it will be prejudiced by the severance of these claims.

For these reasons, severance is justified by the interest
in timely adjudicating Skillz's initial claims and Papaya's
related counterclaims, while preserving the parties' right to
conduct discovery regarding the copyright and trademark
counterclaims.  Papaya's primary argument to the contrary is
that severance will create inefficiencies by requiring the
parties to re-brief Rule 12 motions and serve redundant
disclosures and discovery requests.  Not so.  Skillz has already
moved to dismiss these claims, and this Opinion addresses that
motion.  To the extent any disclosures or productions that have
already taken place bear on the trademark and copyright claims,
those materials need not be produced again.

## Conclusion

Skillz's October 11, 2024 motion to dismiss Papaya's
counterclaims is granted in part.  Skillz's motion to sever
Papaya's trademark and copyright counterclaims is granted.  A

36

scheduling order accompanies this Opinion.

Dated:     New York, New York
           February 7, 2025

                              _____
                                   DENISE COTE
                         United States District Judge