UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                    :    24cv1646(DLC)

SKILLZ PLATFORM INC.,           :

                                  :    <u>Opinion and</u>
                    Plaintiff,  :      <u>Order</u>

        -v-                  :

                                  :

PAPAYA GAMING, LTD., et al.,     :

                                  :

                    Defendants.  :

                                  :

-------------------------------------- X
                                  :

PAPAYA GAMING, LTD., et al.,     :

                                  :

           Counterclaim Plaintiffs,  :

                                  :

              -v-             :

                                  :

SKILLZ PLATFORM INC.,           :

                                  :

           Counterclaim Defendant,  :

                                  :

              and             :

                                  :

GOLDEN WOOD COMPANY, LTD.,      :

                                  :

   Additional Counterclaim Defendant.  :

                                  :

-------------------------------------- X

APPEARANCES:

For plaintiff Skillz Platform Inc.:
Craig Carpenito
Amy Katherine Nemetz
Jessica C. Benvenisty
King & Spalding
1185 Avenue of the Americas
New York, NY 10036

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800

Chicago, IL 60606

For defendants Papaya Gaming, Ltd., et al.:
Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001-8602

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

DENISE COTE, District Judge:

Skillz Platform Inc. ("Skillz") sued its competitor, Papaya
Gaming, Ltd. and Papaya Gaming, Inc. (collectively, "Papaya"),
alleging violations of the Lanham Act, 15 U.S.C. § 1125, and the
New York General Business Law ("GBL"), § 349, through false
advertising.  Papaya brought several counterclaims against
Skillz, alleging false advertising, defamation, civil
conspiracy, and copyright and trademark infringement.  An
Opinion of February 7 granted in part Skillz's motion to dismiss
Papaya's First Amended Counterclaims ("FAC").  Skillz Platform
Inc. v. Papaya Gaming, Ltd., No. 24cv1646, 2025 WL 438387
(S.D.N.Y. Feb. 7, 2025) ("February 7 Opinion").  Papaya has now
moved for leave to file further amended counterclaims, attached
to its motion as Proposed Second Amended Counterclaims ("PSAC").
These proposed amendments chiefly try to resurrect the dismissed

counterclaims.  Skillz opposes the motion.  For the following
reasons, Papaya's motion is denied.

## Background

The following facts are taken from the PSAC, and, because
much of the discussion below evaluates its content by the
standard applicable to motions to dismiss pursuant to Rule
12(b)(6), Fed. R. Civ. P., those facts are assumed to be true.
Familiarity of the prior Opinions in this case, including the
February 7 Opinion, is assumed.  Only the facts necessary to
decide the present motion are included.

Papaya is a developer of mobile, multiplayer games that
allow users to deposit and earn money, along with in-game
prizes.  Users of Papaya's games typically compete with between
five and twenty opponents.  Skillz operates a mobile gaming
platform in competition with Papaya.  The Skillz platform hosts
games, each of which allows gameplay between only two players,
created by third-party developers.

The PSAC also alleges that Skillz engaged in a multipronged
campaign to discredit Papaya in the eyes of the public and law
enforcement officials regarding Papaya's use of robots or
"bots".  The proposed amendments refer to three aspects of that
campaign, each of which is described separately below.

A.    Consumer Complaints Sent to State Attorneys General

According to the PSAC, Skillz created and funded a false-front organization called 4 Fair Play.  Through its website, 4 Fair Play solicited complaints from consumers about Papaya and other competitors of Skillz.  Through a form on the website, visitors could input personal information, select a game about which they wanted to complain, and write a description of their complaints in an open-ended submission box.  Skillz forwarded these complaints to state attorneys general.  But before doing so, it added stock language to the complaint, which said "I'm a resident of your state and I would like to make you aware of a mobile game that is defrauding consumers like me out of their hard-earned money.  I strongly believe the following games use AI or 'bots' to scam players by pretending that those are real players."  It then listed the games selected on the complaint form.  Skillz did not tell complainants it was adding this language.  Most complaints that 4 Fair Play received did not mention bot use, but the stock language, which misleadingly appeared to have been written by the complainant, was added to them anyway.  Skillz "spot checked" the complaints that it forwarded to law enforcement, but it otherwise did not vet them to make sure they came from real people.

4

B.   4 Fair Play Website Representations

Among other content maligning Papaya, the 4 Fair Play website included a page titled "What Players Are Telling Us" that purported to show six short quotations from consumers complaining about Papaya's games.  Another page on the website showed six other such quotations.  These testimonials, each one or two sentences long, were attributed to consumers identified only by initials and state of origin, such as "L.G.S. from Pennsylvania" and "J.P. from Florida," or by the game they had played, such as a "Bingo Cash player."  Skillz itself had drafted some of those testimonials, and they had not come from real consumers.  Other testimonials did come from real consumers but had been edited by Skillz.

Separately, the 4 Fair Play website displayed a banner reading "12,594 and Counting!"  In fact, there had not been exactly 12,594 complaints submitted when that number was displayed.  Also, the number would increase every few seconds to give the sense that the counter was connected to a live database that was continuously updating, which it was not.

The home page of the 4 Fair Play website displayed a pie chart that purported to show the complaints the organization had received, broken down by the game referenced in the complaint. Three of the games were Papaya's, and the pie chart indicated

5

that complaints about those three games accounted for 40.2% of the total complaints.  In fact, 40.2% of the complaints received did not refer to Papaya's games.  The home page also displayed a map of the United States purporting to show the numbers of complaints submitted by consumers in each state.

C.  Interview Scheme

In late 2023, 4 Fair Play, controlled by Skillz, hired an organization to obtain confidential information from Papaya. Portraying itself as a "public policy group conducting research," the organization contacted Skillz employees using the social media website LinkedIn and offered recipients $300 for participating in interviews meant to "better understand the mobile gaming industry."  An internal guide, which was edited by Skillz executives, encouraged interviewers to ask questions about Papaya's use of bots.  The involvement of Skillz and 4 Fair Play in this scheme was hidden.

Two former Papaya employees participated in interviews, one in December 2023 and one in January 2024.  Both individuals had signed agreements with Papaya prohibiting them from disclosing the company's sensitive information.  In these interviews, the former employees disclosed information about when and why bots are used and the coding behind the bots, among other things.

Using the information collected in these interviews, Skillz publicly accused Papaya of using bots. In an article published in July 2022, Skillz's CEO said that competitors had an easier time pairing players because of their use of bots.

D.    This Lawsuit

Skillz initiated this action against Papaya on March 4, 2024, claiming that Papaya had falsely advertised its games to be free from bots. On August 5, Papaya filed an Answer to the Complaint, as well as counterclaims against Skillz and five other companies. Those counterclaims alleged false and deceptive practices under the Lanham Act and N.Y. Gen. Bus. L. § 349 ("GBL § 349"); defamation and civil conspiracy under New York common law; and copyright infringement and contributory and/or vicarious trademark and copyright infringement under 15 U.S.C. § 1114 and 17 U.S.C. § 501. 2025 WL 438387, at *4.

On September 4, Skillz moved to sever and dismiss the counterclaims against it. Following an initial pretrial conference on September 6, an Order of the same day set forth a schedule for discovery and other pretrial proceedings in this case. That Order set a September 25 deadline for Papaya to file amended counterclaims and stated, "[i]t is unlikely that Papaya will have further opportunity to amend." On September 23, Papaya filed the FAC, mooting Skillz's September 4 motion. The

7

FAC named only Skillz and two other counterclaim-defendants. On October 11, Skillz renewed its motion to dismiss or, in the alternative, sever the counterclaims.

The February 7 Opinion granted Skillz's motion to dismiss in part. It denied the motion with respect to Papaya's claims that Skillz's falsely advertised that its own platform did not use bots, matched players evenly, and allowed customers to withdraw cash at any time. 2025 WL 438387, at *6. But it dismissed Papaya's claims that Skillz violated the Lanham Act and GBL § 349 by misrepresenting other companies' games on the 4 Fair Play website and in an article Skillz shared on social media. Id. at *7. The February 7 Opinion also dismissed Papaya's claims of defamation and civil conspiracy, which were based on the 4 Fair Play website and the article. Id. at *8. It also granted in part the motion to dismiss Papaya's copyright and trademark claims and severed the copyright and trademark claims that survived. Id. at *10-13.

Papaya filed its motion for leave to file second amended counterclaims on March 3. That motion was fully briefed on March 19. Fact discovery concludes March 31, 2025, and expert discovery is scheduled to conclude on May 30.

## Discussion

Rule 15(a)(2), Fed. R. Civ. P., states that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  "Where, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause."  Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009) (citation omitted).  "Whether good cause exists turns on the diligence of the moving party."  Id. at 355 (citation omitted).

Even under Rule 15(a), a district court may "deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77, 90 (2d Cir. 2023) (citation omitted).  "A plaintiff need not be given leave to amend if [it] fails to specify . . . how amendment would cure the pleading deficiencies in [its] complaint."  Melendez v. Sirius XM Radio, Inc., 50 F.4th 294, 309 (2d Cir. 2022) (citation omitted).  "Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse

9

of discretion to deny leave to amend." <u>Lucente v. Int'l Bus.</u>
<u>Machs. Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (citation
omitted).  "An amendment to a pleading is futile if the proposed
claim could not withstand a motion to dismiss pursuant to Fed.
R. Civ. P. 12(b)(6)." <u>Id.</u>  Whether a proposed claim could
withstand a motion to dismiss depends on whether the proposed
pleading contains "sufficient factual matter, accepted as true,
to state a claim to relief that is plausible on its face." <u>Doe</u>
<u>v. Franklin Square Union Free Sch. Dist.</u>, 100 F.4th 86, 94 (2d
Cir. 2024) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678
(2009)).

Papaya proposes three sets of revisions to its
counterclaims that it argues cure deficiencies identified in the
February 7 Opinion or support a new cause of action.  First, it
adds allegations related to Skillz's handling of complaints it
received through the 4 Fair Play website, including that it
added allegations of bot use to complaints that did not mention
bots, before forwarding them to state law enforcement.  Second,
Papaya alleges that the 4 Fair Play website included fabricated
quotations from consumers.  Third, the PSAC alleges that Skillz
directed a scheme in which a group purporting to conduct
industry research tricked Papaya employees into disclosing
sensitive information about Papaya's business.  This last

allegation forms the basis of a claim for unfair competition
that has been added in the PSAC.  In response to Papaya's
motion, Skillz argues primarily that Papaya lacks good cause to
amend its counterclaims and that its proposed amendments would
be futile anyway.  Skillz's arguments prevail, largely because
Papaya's proposed amendments would be futile, and Papaya's
motion is denied.

I.  Consumer Complaints

    In the PSAC, Papaya adds allegations that Skillz
misleadingly supplemented consumer complaints before sending
them to state law enforcement.  Skillz argues that these
allegations rehash the dismissed counterclaims, are untimely,
and would be futile due to their failure to allege injury given
Papaya's admission of surreptitious bot use.

    As an initial matter, these allegations could not support a
claim for Lanham Act false advertising or deception under GBL §
349, as both of those laws apply only to consumer-facing
representations.  See 15 U.S.C. § 1125(a)(1)(B) (prohibiting
certain conduct "in commercial advertising or promotion");
Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)
(requiring an allegation of "consumer-oriented conduct" for a
GBL claim).  That leaves a claim for defamation, which under New
York law requires

11

> 1) a written defamatory statement of fact concerning
> the plaintiff; 2) publication to a third party; 3)
> fault (either negligence or actual malice depending on
> the status of the libeled party); 4) falsity of the
> defamatory statement; and 5) special damages or per se
> actionability (defamatory on its face).

Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 259 (2d Cir.

2021) (citation omitted).  The element of falsity requires

pleading that the alleged statement is not "substantially true,"

meaning that it "could have produced no worse an effect on the

mind of a reader than the truth pertinent to the allegation."

Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236,

241-42 (2d Cir. 2017) (citation omitted).

The crux of Papaya's allegations is that Skillz added stock

language to the complaints it forwarded to law enforcement, so

that it appeared consumers were complaining about Papaya's use

of bots when they were only complaining about other things.[1]  The

PSAC does not allege that the substantive content of this stock

language was false -- just that it was misattributed.  Nor does

the PSAC allege that state authorities ever did anything with

these communications or that they became public.  These proposed

additions thus do not amount to any allegation of harm,

---

[1] The PSAC and Papaya's briefing emphasize other alleged facts,
such as that Skillz sent complaints about Papaya to law
enforcement, but not complaints about itself, and that Skillz
did not "vet" the complaints that it sent.  It is not clear what
cause of action those allegations are meant to support or what
law would require Skillz to do those things.

reputational or otherwise.  In its brief, Papaya suggests that Skillz gave "governmental officials . . . the unmistakable impression that thousands of consumers wanted them to take action in response to Papaya's alleged unfair use of bots."  The problem with this claim is that the PSAC does not actually allege that such an impression was false -- that is, that Papaya did not use bots and that consumers did not want law enforcement to take action in response to Papaya's alleged unfair use of bots.  Papaya's argument that the misleading stock language caused it reputational harm and resulting lost profits cannot succeed given the PSAC's failure to allege that any customer or potential customer ever saw it.

To the extent Papaya seeks to rely on a theory of harm known as <u>per se</u> actionability, that theory requires proof that the statement "impugns the basic integrity or creditworthiness of a business."  <u>Celle v. Filipino Rep. Enters. Inc.</u>, 209 F.3d 163, 180 (2d Cir. 2000) (citation omitted).  The issue of the integrity of Papaya's business practices and its deception of the public about its historic use of bots to compete with customers in its games of "skill" are at the heart of this case. Papaya does not deny such undisclosed historic use in its PSAC

13

or otherwise in this litigation.[2]  Therefore, Papaya will not be in a position to prove the falsity of the supposedly defamatory statement at trial.

II.  4 Fair Play Website

Next, Papaya proposes adding allegations that testimonials on the 4 Fair Play website appeared to have been submitted by real consumers, when in fact Skillz fabricated them.  Skillz argues that these allegations misrepresent the evidence produced in discovery and that they rehash a theory rejected by the February 7 Opinion.  Because these proposed revisions would be futile, Papaya's motion to amend the complaint with them is denied.

Claims for false advertising under the Lanham Act and the GBL and for defamation under New York common law all require that alleged misrepresentations be about something material -- that is, something that would have a meaningful effect on the reader.  Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 63 (2d Cir. 2022) (requiring materiality, meaning that the statement is "likely to influence purchasing decisions," for a Lanham Act claim (citation omitted)); Orlander, 802 F.3d at 300;

---

[2] In recent depositions, none of Papaya's individual deposition witnesses denied the historic use of bots, as they all asserted their Fifth Amendment rights against self-incrimination rather than testifying to any potentially disputed facts.

Tannerite Sports, LLC, 864 F.3d at 242 (explaining that whether
a statement is actionable defamation depends on its effect on
the reader).  A plaintiff must also plausibly allege it was
harmed by the defendant's putatively unlawful conduct to state a
claim for relief.  The PSAC includes new allegations that Skillz
posted fabricated consumer complaints on the 4 Fair Play
website, but the allegation is still insufficient to state a
claim.

Papaya does not allege that the content of the
testimonials, which accuse Papaya's games of using bots or of
being unfair in general, are false.  Nor does the PSAC allege
that numerous real consumers were not submitting complaints
along these lines.  The only alleged misrepresentation is that
some of the consumers (barely) identified by the website --
"J.P. from Florida," "Bingo Cash Player," and the like -- did
not write the specific words included in the displayed
testimonials.  To the extent Papaya is alleging that such
misattribution is material and caused injury, those allegations
are simply not plausible.  Even assuming the PSAC's factual
allegations are true, no reasonable jury could find that
anyone's purchasing decisions would have been affected (or that
consumers would be affected in any other meaningful sense) by
the fact that a real "J.P. from Florida" did not say the words,

"I have genuinely never played a game that is so rigged in my life."  While parties generally "should be given the opportunity to develop their evidence to demonstrate materiality," UpCodes Inc., 43 F.4th at 64, the pleadings must set forth some plausible basis for the defendant to ultimately be held liable. The PSAC fails to do so here.

The proposed amendments related to the complaint counter, pie graph, and map are futile for the reasons explained February 7 Opinion.  That these graphics were giving viewers the wrong impression about the speed at which they were being updated does not state a claim.  Even as amended, these allegations do not plausibly plead that the graphics were "literally false" or not "substantially true," as required under applicable law. Sprinkling the word "unambiguously" among the descriptions of the challenged representations does not make them so.[3]

III. Interview Scheme

Papaya's last set of proposed amendments includes facts regarding the interview scheme and a claim for unfair competition.  Skillz argues that the proposed allegations would fail to state a claim.  Skillz's argument is correct.

---

[3] For one representative example, the PSAC refers to the sentence "Bingo Cash and Solitaire Cash by Papaya Games have received the highest complaints so far" as "unambiguously" representing that the pie chart was continuously connected to a live database.

"Under the misappropriation theory of unfair competition, a party is liable if they unfairly exploit the skill, expenditures and labors of a competitor." E.J. Brooks Co. v. Cambridge Sec. Seals, 31 N.Y.3d 441, 449 (N.Y. 2018) (citation omitted). "The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Pauwels v. Deloitte LLP, 83 F.4th 171, 185 (2d Cir. 2023) (citation omitted). "[I]f a plaintiff cannot adequately allege that a defendant misappropriated the plaintiff's property or trade secret, the plaintiff cannot state a claim" for unfair competition. Id. at 187. "[A]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 478 (N.Y. 2007) (citation omitted).

Papaya's proposed amendments related to the interview scheme are futile because they would not state a claim for unfair competition. The PSAC alleges that Skillz used deceptive means to obtain information about Papaya's business. But it does not allege that Skillz actually did anything with that

information.  The PSAC mentions that, following the interviews,
Skillz told reporters that Papaya was using bots in its games.
But according to the PSAC itself, Skillz was publicly accusing
Papaya of using bots well before the interviews took place
anyway.  Indeed, the PSAC says that the 4 Fair Play website,
which forms much of the basis of Papaya's defamation and false
advertising claims and which accused Papaya of using bots, was
published as early as September 2023.[4]  In this context,
characterizing the accusation that Papaya used bots as a trade
secret is a stretch at best.  And it is not clear what "skills,
expenditures, [or] labors" that piece of information alone
represents.  E.J. Brooks Co., 31 N.Y.3d at 449.  But even if it
were a trade secret, without any facts suggesting that Skillz
did anything with the sensitive information it allegedly
purloined, Papaya cannot state a claim for unfair competition.

At its heart, Papaya accuses Skillz of using a
surreptitious practice to confirm that Papaya was deceiving
consumers by using bots to compete against them without
disclosing that practice.  Papaya's surreptitious use of bots is
at the core of Skillz's claims against Papaya in this
litigation, including claims of false advertising and deceptive

_____

[4] According to the PSAC, the website appeared in substantially
the same form from November 7, 2023, at the latest, until it was
taken down in early 2024.

acts or practices.  Papaya's briefing does not address whether
its purported use of a deceptive practice that may violate the
law can constitute a trade secret.

Finally, Papaya points to the PSAC's allegation, based
"upon information and belief," that Skillz used information
obtained in the interviews about Papaya's matchmaking processes
to "unfairly compete with Papaya" such as by "focus[ing] its
advertising and marketing efforts."  Alone, this allegation is
the kind of "threadbare recital[] of the elements of a cause of
action" that could not overcome a Rule 12(b)(6) motion to
dismiss.  Iqbal, 556 U.S. 678.  Viewed in context, those
"advertising and marketing efforts" appear to be Skillz accusing
Papaya of bot use, which, for the reasons discussed above, does
not help the PSAC state a claim.  Accordingly, Papaya's proposed
amendments related to the interview scheme are futile.

Independently, it is not clear that Papaya has shown good
cause or justified its delay in proposing to amend its
counterclaims with the interview scheme.  Its brief in support
of its motion states that it relies on "newly discovered"
evidence to add allegations supporting an unfair competition
claim.  In fact, Papaya knew about the interview scheme, at the
latest, on November 21, 2024, when its counsel described it in
detail during a conference with the Court.  Similarly, Papaya

19

has been complaining about Skillz providing information to state attorneys general for months. Otherwise, its complaints about the contents of the 4 Fair Play website are a repackaging of its dismissed claims. Waiting more than three months, until near the end of fact discovery, to make the substantive amendments it proposes does not reflect diligence or due delay.

### Conclusion

Papaya's March 3 motion for leave to file the PSAC is denied.

Dated:     New York, New York
           March 26, 2025

                          _____
                               DENISE COTE
                         United States District Judge

20