# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3097
DIRECT FAX
(917) 777-3097
EMAIL ADDRESS
ANTHONY.DREYER@SKADDEN.COM

May 19, 2025

*Denied.*
*/s/ Denise Cote*
*5/27/25*

**VIA ECF**
Honorable Denise L. Cote
Southern District of New York
500 Pearl Street, Room 1910
New York, NY 10007

RE:   *Skillz Platform Inc. v. Papaya Gaming, Ltd. et al.*, No. 1:24-cv-01646 (S.D.N.Y.)

Dear Judge Cote:

On behalf of Papaya Gaming, Ltd. ("**Papaya**"), we request that the Court compel discovery from Skillz Platform Inc.'s ("**Skillz**") proffered expert, Dr. Andreas Groehn. It became apparent at Dr. Groehn's May 15 deposition that, as part of his engagement in this case, he designed and/or conducted undisclosed consumer studies pertaining to this case (the "**Studies**") and directly relevant to his research methodologies and opinions. When Papaya questioned Dr. Groehn about the Studies, Skillz's counsel repeatedly instructed Dr. Groehn not to answer based on a baseless assertion that the Studies were "work product" and "not relevant to [Dr. Groehn's] opinions" because he limited his report only to two surveys Skillz felt were favorable. Skillz's attempt to bury damaging evidence created in this case by its testifying expert should not be countenanced.

Dr. Groehn was retained as an independent expert in "consumer research." (**Ex. 1** (excerpts of initial report), ¶¶ 10, 75.) Dr. Groehn submitted a report offering opinions about (1) consumers' perceptions of Papaya advertising, and (2) the impact on consumer behavior of bots in skill-based mobile games. (*Id.* ¶ 10.) These opinions pertained to two consumer surveys that Dr. Groehn designed. (*Id.* ¶¶ 14-15.) He also submitted a rebuttal report (excerpts in **Ex. 2**) criticizing Papaya's survey experts, who opined on consumers' interpretation of statements made in *Skillz's* advertising, and the materiality of those statements on consumers' purchasing decisions.

At his deposition (excerpts at **Ex. 3**), instructions not to answer strongly suggested that Dr. Groehn has designed and/or conducted additional undisclosed Studies as part of his engagement in this matter, including a "conjoint analysis." (*Id.* at 62:6-63:20.)[1] As Dr. Groehn explained,

---

[1] The instructions prevented Papaya from learning foundational information about these other Studies, including their number and when they were done, the nature and scope of Dr. Groehn's assignment when he was retained, and even *whether Dr. Groehn himself considered any conjoint analysis he may have done as having any "relationship whatsoever to the results of [his] Likelihood Survey."* (*E.g., id.*, 63:15-66:6, 69:1-13, 70:8-74:5, 77:6-79:22, 80:21-81:3, 84:8-15, 102:17-103:2, 103:22-104:9, 105:15-106:9, 110:13-111:4, 303:18-304:4.)

conjoint analysis "measure[s] the importance of product features," and "establish[es] the demand for products"—similar to how one of Dr. Groehn's disclosed surveys evaluated "how certain information" about mobile games "would impact [consumers'] likelihood to play." (*Id.* at 66:7-67:3; 68:6-22.) It also appears likely Dr. Groehn conducted undisclosed Studies concerning Papaya and/or Skillz advertising, bearing precisely on his own "perception survey" and his rebuttal of Papaya's experts. (*Id.* 78:3-22.) If (as it appears) Dr. Groehn conducted other Studies or considered information in connection with this case concerning the value and importance of certain mobile gaming features on consumer demand (including specifically the importance of "bots"), or concerning the parties' advertising, those studies would be highly relevant to the studies and opinions offered in his reports on those very same subjects *and would have needed to be disclosed.*

Skillz cannot meet its burden to shield discovery of the prior Studies. Rule 26(b)(4)(C)(ii) requires that a testifying expert produce the "facts or data" that they "considered" in forming their opinions. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 293 F.R.D. 568, 577 (S.D.N.Y. 2013). Courts have been clear that the word "considered" means "anything received, reviewed, read, **or authored** by the expert, before or in connection with the forming of [their] opinion, **if the subject matter relates to the facts or opinions expressed**." *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016) (emphasis added). This disclosure is mandatory "even if the expert avers under oath that he did not actually consider certain materials in forming [their] opinion." *Seawolf Tankers Inc. v. Laurel Shipping LLC*, No. 20-cv-5198, 2024 WL 532397, at *4 (S.D.N.Y. Feb. 9, 2024). Plainly the Studies preceded Dr. Groehn's initial report,[2] and Skillz cannot plausibly contend that the Studies do not "relate to" or are "not relevant" to Dr. Groehn's disclosed opinions and surveys concerning consumer perception and behavior as they relate to Skillz, Papaya, and skill-based mobile gaming.

Nor can Skillz circumvent these well-established principles by proclaiming that the Studies were performed by Dr. Groehn in connection with offering "consulting opinions." (Ex. 3 at 110:11-111:2.) Any such protection was obviated by Dr. Groehn's designation as a testifying expert. If the materials considered by the expert as a consultant in any way "inform his expert report supporting his proposed testimony, they [will be] subject to discovery." *S.E.C. v. Rio Tinto PLC*, No. 17-cv-7994, 2021 WL 2186433, at *5 (S.D.N.Y. May 28, 2021); *see also id.* (recognizing that disclosure is required where there is "at least an ambiguity as to whether the materials informed the expert's opinion") (quotations omitted); *Messier v. Southbury Training School*, No. 3:94-CV-1706, 1998 WL 422858 at *2 (D. Conn. June 29, 1998) (explaining that "[a]ny ambiguity" about whether an expert was serving in a consulting or testifying function "when creating a document must be resolved in favor of discovery").

Papaya therefore requests that the Court immediately order Dr. Groehn to (1) produce documents sufficient to identify all of the Studies, their methodology, and their results, and (2) appear for up to 1.5 hours of additional deposition time to address the Studies. Papaya proposes that the materials be produced no later than the morning of May 27 so that Papaya can take the remaining deposition before the close of expert discovery. At minimum, Papaya would request that the Court review documentation concerning the Studies *in camera* so that the Court can determine whether the Studies relate to the same subject matter as Dr. Groehn's expert reports.

---

[2]   The surveys disclosed in Dr. Groehn's initial report were conducted at the eleventh hour, mere days before the initial report was due on April 18. (Ex. 1, ¶¶ 36, 57.)

Honorable Denise L. Cote
May 19, 2025
Page 3

        Respectfully submitted,

        */s/ Anthony J. Dreyer*
        Anthony J. Dreyer

3