```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
SKILLZ PLATFORM INC.,                  :
                                       :
                         Plaintiff,    :    24cv1646 (DLC)
            -v-                        :
                                       :    OPINION AND
PAPAYA GAMING, LTD., et al.,           :       ORDER
                                       :
                         Defendants.   :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the plaintiff Skillz Platform Inc.:

Amy Katherine Nemetz
Curtis Ryan Crooke
Jessica C. Benvenisty
Kathleen Elizabeth McCarthy
Craig Carpenito
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Barry Antoine Kamar
King & Spalding
200 South Biscayne Blvd.
Suite 4700
Miami, FL 33131

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800
Chicago, IL 60606

For the defendants Papaya Gaming, Ltd. and Papaya Gaming, Inc.:

Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

Allison M. Brown
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

DENISE COTE, District Judge:

Skillz Platform Inc. ("Skillz") sued competitors Papaya
Gaming, Ltd. and Papaya Gaming, Inc. (together, "Papaya") for
violations of the Lanham Act, 15 U.S.C. § 1125(a)(1), and New
York General Business Law ("GBL"), § 349, through false
advertising.  Papaya has brought counterclaims against Skillz
under the Lanham Act, GBL § 349, and civil conspiracy under New
York common law for falsely advertising various aspects of its
own games.  Skillz and Papaya have each moved for summary
judgment on Papaya's counterclaims.  For the following reasons,
Skillz's motion is granted; Papaya's motion is denied.

## **Background**

The following facts are largely taken from the documents
submitted in connection with this motion.  Only those facts
necessary to decide the parties' motions are stated.  They are

taken in the light most favorable to the counterclaim-plaintiff unless otherwise noted.

Skillz, founded in 2012, operates in the real-money skill-based mobile gaming ("RMSB") market.  Its games are available for users to download on the Apple App Store and Samsung Galaxy Store.  In RMSB games, players are matched by the platform with other users on games created by third parties and compete to win cash prizes or for game rewards.

Papaya was founded in 2016 and entered the RMSB market as a direct competitor to Skillz in 2019.  Papaya's games are also available on the Apple and Samsung app stores and are similar to those offered on the Skillz platform.  But while Skillz most commonly offers head-to-head competition between two players, Papaya offers multi-player tournaments with larger cash prizes.

I.   Skillz's User Matching

Skillz has communicated that its games "guarantee" and "ensure" that consumers will be matched with players of "similar" or "equal" "skill" or "skill levels."  For example, the loading screen for Skillz mobile applications appears with a bullet stating, "Match with REAL PLAYERS of equal skill." Skillz's website has stated that it "leverages player matching technology to ensure fairness by pairing players of equal skill

levels, so beginners only play beginners and experts only play experts."

Skillz does not dispute that matchmaking on its platform has included skill band expansion.  As the time increases from when a game is initiated, the maximum player rating differential permitted for a competitor to be matched with the initiating player also increases.

Skillz also utilizes other matching technologies.  One is called the Determined Outcome Matcher ("DOM").  A Skillz internal document explains that DOM "occurs when [a] user's win rate is out of band."  Skillz also "used to adjust ratings periodically but stopped around October of 2022."  Finally, in January 2024, Skillz implemented a platform-wide reset of all players' ratings that was fully reversed by April 2024.

II.  Skillz's Bot Usage

Skillz has represented that its platform does not utilize bots.  For example, its app load-up screen has stated in a bullet, "Play real people, NO BOTS, guaranteed!"  Skillz published in a Facebook post that "it is our solemn promise that Skillz will NEVER EVER employ bots."  In a "special message" to the Skillz "community" posted on Skillz's website, Skillz CEO Andrew Paradise stated:

> As pioneers and leaders in our space, we have
> witnessed hundreds of real-cash games that have

infiltrated the app stores.  An increasing number of
these games use bots, directly defrauding players of
their money by making them believe they are being
matched with real players.  That is not just a scam,
it is illegal.  We can't standby and let this happen.

In a Skillz document directed towards third-party
developers there is a section titled "Utilizing Bots in
Gameplay."  The document instructs developers that "[a] bot, by
design, allows the computer to manage aspects of gameplay,
typically acting as a player's opponent or/and player's
challenges" and that "[t]he bot behavior in your game must be
deterministic, meaning that given the exact same set of player
inputs and conditions, it must always produce the same bot
behavior."

III. Cash Withdrawals

Finally, Skillz has informed its customers that they can
withdraw their cash awards "at any time."  The Skillz FAQ page
has a statement that players can "withdraw [their] winnings at
any time."  A video advertisement for the Skillz Platform game
"Solitaire Cube" informs users that they can "reliably cash out
at any time."  Skillz does not dispute, however, that it has
implemented since 2019 some variant of a policy in which users
requesting withdrawals exceeding $5,000 in profits must submit
to a "playtest" fraud verification screening.

IV.  Injury to Papaya

It is undisputed that Skillz and Papaya are direct competitors in the RMSB market.  In a declaration submitted with its opposition to Skillz's motion, Papaya's 30(b)(6) designee stated that "Skillz's statements about its matchmaking . . . are likely to and do cause harm to Papaya by causing at least some users to choose Skillz over Papaya or, in some instances, by causing Papaya users to leave Papaya's platform for Skillz." The designee also remarked that "[b]ased on my experience, advertisements highlighting the ability to withdraw money easily and quickly are highly effective" and that "Skillz's statements about withdrawals on its platform" "are likely to and do cause harm to Papaya."

Papaya's damages expert, Jonathan Orszag, concluded that from 2020 to 2024, Skillz made an excess profit of approximately $37.37 million from its use of DOM.  In his report, Orszag described his assignment as "to provide an estimate of the incremental profits earned by Skillz by not disclosing to its users that tournaments they participate in are not evenly matched."  In his deposition testimony, when asked if he was "providing any opinions about whether or not Papaya actually suffered any harm," Orszag responded, "That's not an analysis that I have conducted, other than the general point that these

two firms compete and they compete with other firms as well."
The deposition testimony is discussed in further detail below.

    V.    Procedural History

    Skillz initiated this action on March 4, 2024.  Papaya
answered with counterclaims on August 5.  An Opinion of February
7, 2025 addressed Papaya's counterclaims.  It dismissed Lanham
Act and GBL § 349 counterclaims concerning Skillz's statements
about its competitors' games as well as Papaya's defamation
counterclaim, severed Papaya's trademark and copyright
counterclaims, and denied Skillz's motion to dismiss Lanham Act,
GBL § 249, and civil conspiracy counterclaims with respect to
Skillz's statements about its own platform.  Skillz Platform
Inc. v. Papaya Gaming, Ltd., No. 24CV1646(DLC), 2025 WL 438387
(S.D.N.Y. Feb. 7, 2025).  An Opinion of March 26 denied Papaya's
motion for leave to file further amended counterclaims.  Skillz
Platform Inc. v. Papaya Gaming, Ltd., No. 24CV1646(DLC), 2025 WL
918411 (S.D.N.Y. Mar. 26, 2025).  On May 21, Papaya moved to
dismiss its severed counterclaims without prejudice.

    Following the completion of discovery, Skillz and Papaya
each filed motions for summary judgment.  An Opinion of October
27 denied Papaya's motion for summary judgment on Skillz's
claims as well as Papaya's motions to exclude the testimony of
Skillz's survey and damages experts.  Skillz Platform Inc. v.

Papaya Gaming, Ltd., No. 24CV1646 (DLC), 2025 WL 3012836
(S.D.N.Y. Oct. 27, 2025).  Skillz and Papaya have each moved for
summary judgment on Papaya's counterclaims.  That motion was
fully submitted on August 8 and is addressed here.

## Discussion

Skillz has moved for summary judgment on Papaya's three
counterclaims.  Papaya asserts against Skillz a claim of false
advertising under the Lanham Act, of deceptive practices under
GBL § 349, and civil conspiracy under New York common law to the
extent that the conspiracy arises out of the other two
counterclaims.

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  Material facts are those that "might affect the
outcome of the suit under the governing law."  Choi v. Tower
Rsch. Cap., LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation
omitted).  "[S]ummary judgment must be rejected if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party."  Indemn. Ins. Co. of N. Am. v. Unitrans Int'l
Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted).

A court's role with respect to a summary judgment motion
"is not to resolve disputed questions of fact but solely to

determine whether, as to any material fact, there is a genuine
issue to be tried." Moll v. Telesector Res. Grp., Inc., 94
F.4th 218, 227 (2d Cir. 2024) (citation omitted).  The court
must "review the record taken as a whole," and "may not make
credibility determinations or weigh the evidence."  Id.
(citation omitted).

I.    Lanham Act

In its Lanham Act counterclaim, Papaya asserts that Skillz
made false statements about even matchmaking, the presence of
bots on its platform, and the speed of player cash withdrawals.
The three categories of statements are illustrated by the
following examples:

- Skillz's website, which has stated that Skillz
  "leverages player matching technology to ensure
  fairness by pairing players of equal skill levels,
  so beginners only play beginners and experts only
  play experts."

- A Skillz Facebook post which states: "it is our
  solemn promise that Skillz will NEVER EVER employ
  bots."

- The Skillz FAQ page, which states that players can
  "withdraw [their] winnings at any time."

Skillz seeks summary judgment on Papaya's Lanham Act
counterclaim, arguing that Papaya has not offered evidence
establishing any economic or reputational injury to its business
as a result of Skillz's statements.  It argues as well that
Papaya has failed to show that any of the challenged statements

9

communicated false messages to consumers.  It is only necessary
to reach the first issue.  Papaya has not submitted evidence in
opposition to this motion that would permit a jury to find in
its favor on the necessary Lanham Act element of injury.
Therefore, Skillz is granted summary judgment on the Lanham Act
counterclaim.

Section 43(a) of the Lanham Act provides, in relevant part,
that

> any person who, on or in connection with any goods or
> services, . . . uses in commerce . . . false or
> misleading description of fact, or false or misleading
> representation of fact, which

> in commercial advertising or promotion, misrepresents
> the nature, characteristics, [or] qualities . . . of
> his . . . services, or commercial activities,

> shall be liable in a civil action by any person who
> believes that he or she is or is likely to be damaged
> by such act.

15 U.S.C. § 1125(a)(1).  "To prevail on a Lanham Act false
advertising claim, a plaintiff must establish that the
challenged message is (1) either literally or impliedly false,
(2) material, (3) placed in interstate commerce, and (4) the
cause of actual or likely injury to the plaintiff."  Zesty Paws
LLC v. Nutramax Lab'ys, Inc., -- F.4th --, 2025 WL 2810078, at *2
(2d Cir. Oct. 3, 2025) (citation omitted).

To prevail on the element of injury, the plaintiff must
demonstrate injury to a "commercial interest in reputation or

sales." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 132 (2014). That injury must be proximately caused by the Lanham Act violation. Id. The plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising," which "occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 133. See also Souza v. Exotic Island Enters., Inc., 68 F.4th 99, 119 (2d Cir. 2023). Injury "can be established when defendant and plaintiff are competitors in a relevant market and plaintiff demonstrates a logical causal connection between the alleged false advertising and its own sales position." Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d 48, 71 (2d Cir. 2016) (citation omitted). "[A]lthough such injury may be presumed from a direct competitor's false comparative advertising claim, in all other cases, a plaintiff must present some affirmative indication of actual injury and causation." Souza, 68 F.4th at 119 (citation omitted).

Papaya has not proffered sufficient evidence to support a claim that it suffered a loss of sales or was otherwise injured as a result of Skillz's statements about Skillz's own games. Papaya's market share in 2021 grew astronomically, while Skillz's market share declined. In describing that growth,

11

Papaya used the term "hyper-growth" and cited a 495% annual revenue growth in documents it presented to potential investors. Although there is no requirement that a party experience a decline in revenue or sales in order to suffer an injury under the Lanham Act, Papaya has failed to point to any evidence demonstrating that it suffered harm either to its sales position or to its reputation from the statements by Skillz it challenges in the counterclaim.

Papaya's damages expert, Jonathan Orszag, did not perform any analysis to fill this gap. Papaya points to a single calculation by Orszag that, between 2020 and 2024, Skillz made an excess profit of approximately $37.37 million from its use of DOM in its tournaments. Orszag did not conduct any analysis, however, related to the other two categories of challenged statements concerning bot usage and cash withdrawals or estimate additional Skillz revenue as a result of band expansion or ratings resets, which are the other two matchmaking tools that Papaya claims contradict Skillz's statements about fair matchmaking on its platform. Crucially, Orszag's expert report does not opine that Papaya lost revenue as a result of Skillz's statements about Skillz matching of players of equal skill. Orszag admitted at deposition that he did not conduct an analysis of whether Papaya suffered harm. At bottom, Papaya has

not offered any evidence connecting Skillz's allegedly misleading statements to Papaya's sales or any other economic or reputational injury that Papaya suffered.[1]

In its opposition, Papaya cites as evidence of injury deposition testimony from Orszag in which he states that the loss of a user on one RMSB platform will have an effect on the other. But Orszag clarified in his following answer that a loss of a user on one platform "could have" an effect on the other and that his statement was made in the context of critiquing Skillz's damages expert for failing to take into account "the full range of options that users would switch to and consider." This critique, of course, undermines Papaya's claim that Skillz's statements necessarily affected Papaya's sales as opposed to the sales of other industry participants. When asked repeatedly whether he was offering an opinion about whether or not Papaya was harmed by Skillz's conduct, Orszag consistently answered that it was not an analysis he had conducted. Therefore, Papaya's citation to Orszag's testimony to support its counterclaim regarding the matchmaking statements is inapposite.

---

[1] In its motion for summary judgment on its counterclaims, Papaya itself suggests that Orszag's opinions are relevant only to the calculation of damages, not to whether Papaya has established that is has suffered an injury.

Papaya relies as well on a declaration by its Rule 30(b)(6)
representative submitted in opposition to Skillz's motion.  The
representative's assertions that Skillz's statements about even
matchmaking and cash withdrawals caused users to pick Skillz
over Papaya or leave Papaya for Skillz are entirely conclusory.
The four individuals that Papaya identified during discovery as
the only individuals likely to have discoverable information
about any harm Papaya suffered have each invoked their Fifth
Amendment right against self-incrimination.  The declaration
does not create a genuine dispute of material fact that Papaya
was injured by Skillz's statements.

Papaya next argues that it need not offer evidence of
injury because Skillz engaged in comparative advertising and
injury is presumed.  But none of the statements to which Papaya
points are comparative advertisements about Papaya's product.

In making its argument that Skillz engaged in comparative
advertising, Papaya cites one statement about fair matchmaking.
Under the banner "The Skillz Difference," its website states
that Skillz is "committed to fair competition" and that "every
game is evenly matched."  This statement about fair matchmaking
is not a comparative advertisement implicating Papaya.

Papaya also relies on three statements about bot usage.
Under the header "The Skillz Difference," Skillz's website

states "only real people, no unfair bots here."  Skillz's CEO
stated in a community message that an increasing number of RMSB
games that have "infiltrated the app stores" utilize bots to
defraud players.  And third, a Skillz post on X, formerly known
as Twitter, thanks a news outlet for "spotlighting the issue of
bot fraud to millions" and states that "[w]e have never and will
never use bots to defraud customers, unlike our competitors."
That post hyperlinks to a news segment on bot fraud in the RMSB
industry that mentions class action lawsuits against Papaya and
AviaGames for their usage of bots to control the outcomes of
games.  None of these statements compare Skillz's games with
Papaya's.  A false comparative advertising claim involves "a
misleading comparison to a specific competing product."  Merck
Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 259 (2d Cir. 2014)
(citation omitted).  Where an injury "accrues equally to all
competitors" a party must produce evidence of "actual injury and
causation" to ensure that the injury is not "speculative."  Id.
(citation omitted).

In support of its argument that the Skillz advertisements
constitute comparative advertising, Papaya relies on the Second
Circuit's decisions in McNeilab, Inc. v. Am. Home Prods. Corp.,
848 F.2d 34 (2d Cir. 1988), and Time Warner Cable, Inc. v.

DIRECTV, Inc., 497 F.3d 144 (2d Cir. 2007).[2]  Neither decision
assists Papaya.  In McNeilab, the Advil advertisement directly
mentioned Tylenol and compared the products' propensities to
cause adverse stomach reactions.  848 F.2d at 37.  McNeilab
distinguished a comparative advertisement from "non-comparative
commercials which touted the benefits of the product advertised
but made no direct reference to any competitor's product."  Id.
at 38.  Time Warner addressed claims of disparagement and
superiority in a market in which there were essentially two
players: a cable provider and a satellite service.  497 F.3d at
162.  Papaya had many competitors in the RMSB market and cannot
show that any of Skillz's statements would have been an obvious
comparison with Papaya's product.  Any injury from Skillz's
statements accrued "equally to all competitors; none [was] more
likely to suffer from the offending broadcasts than any other."
Id. (citation omitted).

Lastly, Papaya argues that Skillz has asserted throughout
this litigation that injury from one party's false advertising

---

[2]  Papaya also refers to a line from the Second Circuit's
decision in Souza that "if Plaintiffs are in direct competition
with Defendants, and if Defendants' false advertising implicated
Plaintiffs in some way, then injury and proximate cause are
presumed."  68 F.4th at 119.  Read in context, Souza's statement
underscored that the Circuit's decisions were not in tension
with Lexmark.  Souza did not purport to alter the standard set
out in Merck.

flows directly to the other given their competitive relationship.  This argument fails as well.  Skillz has not relied on a presumption of harm to obtain summary judgment on the injury element of its Lanham Act claim.

II.  GBL § 349 and Civil Conspiracy

Section 349 of the GBL prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  To demonstrate a violation of § 349, a plaintiff must establish "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  McCracken v. Verisma Sys., Inc., 91 F.4th 600, 607 (2d Cir. 2024) (citation omitted).  "The elements [of § 349] are similar in substance to those of a false advertising claim under the Lanham Act."  Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 56 n.3 (2d Cir. 2022).

The parties do not substantively distinguish their arguments with respect to GBL § 349 from their Lanham Act arguments.  For the reasons set forth above, summary judgment is also granted on the GBL § 349 counterclaim.  Because the remaining civil conspiracy counterclaim arises out of the Lanham

Act and GBL § 349 counterclaims, Skillz is additionally entitled to summary judgment on that counterclaim.

III. Injunctive Relief

Skillz also moves for summary judgment on Papaya's request for injunctive relief. When a plaintiff prevails on a claim for which it may seek injunctive relief, to obtain that relief it must demonstrate

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (patent act violation). See also ABKCO Music, Inc. v. Sagan, 50 F.4th 309, 322 (2d Cir. 2022) (copyright action); Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 272 (2d Cir. 2011) (trademark action). A Lanham Act plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" of the Lanham Act. 15 U.S.C. § 1116(a).

Skillz has shown that Papaya is not entitled to an injunction. Skillz has received summary judgment on Papaya's Lanham Act counterclaim and, as a result, Papaya is not a prevailing party on that claim. In other words, there is no finding that Skillz violated the Lanham Act. Moreover, Papaya

has not offered evidence to support a finding that it has
suffered an irreparable injury.  As already described, those
individuals it identified as "likely to have discoverable
information" about any harm that Papaya suffered as a result of
Skillz's conduct asserted their Fifth Amendment right to remain
silent.  Nor has Papaya offered other evidence of a loss to its
sales, market share, or reputation attributable to the Skillz
statements.

Papaya contends it is entitled to an injunction due to a
rebuttable presumption of irreparable harm.  But that
presumption is triggered by a finding of a violation, which is
absent.[3]

IV.  Affirmative Defenses

Lastly, Skillz moves for summary judgment on Papaya's eight
affirmative defenses to Skillz's claims.[4]  This portion of its
motion for summary judgment is granted as well.

To begin with, Papaya essentially abandons seven of the
affirmative defenses.  With the exception of the defense of

---

[3]  Papaya has not suggested that its request for injunctive
relief can succeed on its two other counterclaims if the request
for an injunction for the Lanham Act claim must be dismissed.

[4]  These defenses are unclean hands, laches, acquiescence,
waiver, estoppel, statute of limitations, failure to mitigate,
and reduction of damages.

unclean hands, Papaya fails to point to any evidence in
opposition to Skillz's motion.  Instead, Papaya asserts that
"these defenses can and will be supported by evidence at trial."
This is insufficient.  "A party opposing a properly brought
motion for summary judgment bears the burden of going beyond the
pleadings, and designating specific facts showing that there is
a genuine issue for trial."  Amnesty Am. v. Town of W. Hartford,
288 F.3d 467, 470 (2d Cir. 2002) (citation omitted).  See Rule
56(e), Fed. R. Civ. P; Celotex Corp. v. Catrett, 477 U.S. 317,
324 (1986).  Accordingly, Skillz is entitled to summary judgment
on these seven defenses.

Skillz has shown as well that it is entitled to summary
judgment on Papaya's unclean hands defense.  "The doctrine of
unclean hands is based on the principle that since equity tries
to enforce good faith in defendants, it no less stringently
demands the same good faith from the plaintiff."  Dunlop-
McCullen v. Loc. 1-S, AFL-CIO-CLC, 149 F.3d 85, 90 (2d Cir.
1998).  "The application of unclean hands is appropriate where
the party applying for such relief is guilty of conduct
involving fraud, deceit, unconscionability, or bad faith related
to the matter at issue to the detriment of the other party."
Jackpocket, Inc. v. Lottomatrix NY LLC, 645 F. Supp. 3d 185, 276

(S.D.N.Y. 2022), aff'd, 2024 WL 1152520 (2d Cir. 2024) (citation omitted).

Papaya contends that Skillz's advertising disclaiming use of bots and promising to match players with similar skill levels entitles Papaya to interpose a defense of unclean hands should Skillz seek disgorgement of Papaya's profits at trial. In opposition to this motion, however, Papaya has not shown that Skillz engaged in any misconduct that would entitle Papaya to claim this defense. Moreover, as described in the Opinion of October 27, a jury would be entitled to find that Papaya used bots to compete with human players, including to control the outcome of games, while representing in its advertising that players would be competing against other humans and could win through the exercise of skill. Skillz, 2025 WL 3012836, at **2, 4. Papaya has not shown that Skillz used bots in an equivalent fashion. Players in Skillz's games lost because other human players out played them, not because they were outscored by a bot.

## Conclusion

Skillz's June 27, 2025 motion for summary judgment on Papaya's counterclaims, Papaya's request for injunctive relief, and Papaya's affirmative defenses is granted. Papaya's June 27, 2025 motion for summary judgment on Papaya's counterclaims is

denied.

Dated:    New York, New York
          November 21, 2025

                                    _____
                                        DENISE COTE
                            United States District Judge