UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
SKILLZ PLATFORM INC.,                     :
                                          :
                          Plaintiff,      :        24cv1646 (DLC)
              -v-                         :
                                          :        OPINION AND
PAPAYA GAMING, LTD., et al.,              :           ORDER
                                          :
                          Defendants.     :
                                          :
----------------------------------------- X

APPEARANCES:

For the plaintiff Skillz Platform Inc.:

Amy Katherine Nemetz
Curtis Ryan Crooke
Jessica C. Benvenisty
Kathleen Elizabeth McCarthy
Craig Carpenito
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Barry Antoine Kamar
King & Spalding
200 South Biscayne Blvd.
Suite 4700
Miami, FL 33131

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800
Chicago, IL 60606

For the defendants Papaya Gaming, Ltd. and Papaya Gaming, Inc.:

Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

DENISE COTE, District Judge:

Skillz Platform Inc. ("Skillz") has moved to exclude portions of the May 9, 2025 expert report submitted by Jonathan M. Orszag on behalf of Papaya Gaming Ltd. ("Papaya") to rebut a damages analysis provided by Skillz's expert.  For the following reasons, the motion is granted in part.

## Background

The issues at stake and procedural history in this Lanham Act litigation are set forth in Opinions denying Papaya's motion for summary judgment and granting in part the parties' motions to exclude the testimony of three other experts.  See Skillz Platform Inc. v. Papaya Gaming, Ltd., No. 24CV1646 (DLC), 2025 WL 3012836 (S.D.N.Y. Oct. 27, 2025); Skillz Platform Inc. v. Papaya Gaming, Ltd., No. 24CV1646 (DLC), (S.D.N.Y. Feb. 12, 2026).  Familiarity with those Opinions is assumed.  The legal standard applied in this Opinion is set forth in Skillz, slip op. at 4-7, and incorporated herein.

Jonathan Orszag is a founding partner at Economic Partners, LLC, an economic consulting firm.  He once served as the Assistant to the U.S. Secretary of Commerce and as an Economic

2

Policy Advisor on President Clinton's National Economic Council. He has degrees in economics.  His principal areas of expertise are antitrust and damages.

Orszag was retained by Papaya to assess "from an economic perspective" the expert report of Jim W. Bergman, who was hired by Skillz to calculate disgorgement and its damages.  A prior Opinion has described Bergman's calculations and that description is repeated here.  See Skillz, 2025 WL 3012836, at *10.

## I.    Bergman's Report

To begin with, Bergman calculated the amount of Papaya's unjust enrichment based on the additional profit it was able to achieve from its use of bots.  Bergman compared Papaya's user acquisition cost per paying monthly active user ("PMAU") in 2021 through 2022[1] against Skillz's costs per PMAU in 2019 through 2020, explaining that those periods capture user acquisition costs at similar stages of the companies' development, growth, and nominal revenue.  The ratio between the averages of user acquisition costs ("UA Spend Ratio" or "Ratio") was 2.10, that is, Skillz spent 2.10 times as much as Papaya to acquire its users.  Bergman then divided Papaya's actual revenue growth rate each year by the UA Spend Ratio to estimate growth rates for

---

[1] Papaya did not produce PMAU data for earlier periods of time.

each year without bot usage, and applied those growth rates to the new model.  Through further calculations, including crediting Papaya for a portion of its actual costs, Bergman estimated Papaya's additional profits from its use of bots as $719 million.

As an alternative measure of unjust enrichment, Bergman calculated the amount of Papaya's cost savings from its use of bots.  To do so, Bergman multiplied Papaya's actual user acquisition costs by the UA Spend Ratio, reasoning that Papaya would have had to spend user acquisition costs similar to that spent by Skillz in order to achieve the revenue growth without bots.  Through this method, Bergman estimated Papaya's cost savings from its use of bots as $652.6 million.

Finally, Bergman calculated Skillz's actual damages. Bergman took the measure of Papaya's revenue attributable to its use of bots, which he had calculated in the unjust enrichment model, and multiplied it by Skillz's 2021 market share in the real-money skill-based ("RMSB") gaming market excluding Papaya. Applying further calculations, Bergman concluded that Skillz suffered $637.5 million in damages.

II.  Orszag's Report

After providing a summary of his rebuttal report, Orszag describes the gaming industry, the Skillz business model, and

4

the Papaya business model.  He then explains that the two business models are "fundamentally different."  Before providing the core of his report, which is a detailed and lengthy critique of Bergman's calculations, Orszag describes at length his understanding of Skillz's practices and what players of RMSB games prefer and understand.  When he presents the core of his report, Orszag concludes that, after obvious mistakes in the Bergman calculations are corrected, there are no damages. Orszag ends by offering his own "less convoluted" approach to measuring the impact of Papaya on Skillz's success and finds no evidence of an impact.

### Discussion

With a single exception, discussed below, Skillz does not challenge Orszag's critique of Bergman's damages calculations or his presentation of an alternative model to calculate damages. It does, however, move to exclude four portions of Orszag's rebuttal report.  Three of those four challenges apply to the portions of Orszag's report that precede his engagement with Bergman's calculations.

I.    Players May Prefer Papaya's Bots.

Skillz first challenges passages in Orszag's report in which he describes the operation of Skillz's platform and its impact on RMSB players, contrasting it to Papaya's practices.

In these sections, Orszag argues, <u>inter alia</u>, that Skillz is not the appropriate benchmark in the Bergman calculations because users may prefer Papaya's faster tournaments with bots to Skillz's band widening and "uneven matchmaking practices," which Orszag characterizes as unfair.  Orszag asserts that "Skillz has marketed 'evenly matched' tournaments for years" and that in an "evenly matched tournament, each player has a 50% chance to win."  According to Orszag, however, "many games offered by Skillz are not evenly matched and one of the players has substantially less than a 50% chance to win."  Orszag also discusses Skillz's use of Determined Outcome Matching ("DOM") and compares it to Papaya's Tailored Bots.

Skillz argues that these sections of the rebuttal report should be stricken because Orszag is not qualified to give the opinions that appear there, including opinions on what is fair or even in matchmaking processes.  Moreover, as Orszag admits, he has conducted no analysis to show what users prefer or how Skillz's matchmaking processes actually work.

Skillz's motion is granted.  Papaya has not shown that Orszag is qualified to opine on these topics.  Moreover, he has conducted no analysis to support these statements.  Orszag is therefore barred from describing Skillz's platform and practices to the extent that he does in these passages and from opining on

what players understand and prefer.  Orzag's description about the "evenness" of Papaya's bots is also excluded.

In opposition to this motion, Papaya does not contend that Orszag has conducted any analysis of Skillz's platform or practices or that he is qualified to opine on players' understanding or the use of terminology in the RMSB environment. Papaya describes Orszag's testimony as simply "factual background relevant" to his analysis and as "linked to" an economic comparison that he conducts.  Accordingly, Skillz's motion is granted.

## II.  Papaya's Financial Statements

Skillz next seeks to exclude a portion of Orszag's critique of Bergman's calculations.  Bergman calculated that Skillz spent 2.10 times as much as Papaya to acquire its users and used that UA Spend Ratio to calculate Papaya's unjust enrichment.  Orszag argues that Bergman made two errors in his calculation. According to Orszag, Bergman should not have combined Skillz's Engagement Marketing and User Acquisition Spend "on equal terms" since Engagement Marketing is less costly to provide.  Second, Orszag points out that Bergman did not add to his calculation of the ratio something that could be considered Papaya's Engagement Marketing.  Orszag indicates that Papaya "has now provided me" with the Bonus Cash spend and with information about

discretionary refunds, which could be considered Engagement Marketing.  Including these figures, Orszag asserts, would reduce the UA Spend Ratio "substantially."

Skillz's motion to strike Orszag's reliance on the documents Papaya provided to him after the close of discovery is granted.  Those late-produced documents have been excluded to remedy Papaya's discovery violation.[2]  Skillz's points as well to Orszag's admission that he has no expertise in Papaya's accounting treatment of engagement marketing expenses.  This admission is an additional ground for striking the testimony regarding Papaya's Bonus Cash spend and the late-produced documents about discretionary refunds.

III.  Return to Player ("RTP")

Skillz moves to strike Orszag's RTP calculation.  He explains that the RTP is the average prize earned for every dollar of participation fee.  In a section of his report in which Orszag assumes users prefer faster games, he contrasts the use of bots by Papaya and "band-widening" by Skillz to achieve that goal.  Orszag asserts that band-widening, in which two

---

[2] The late-produced documents were responsive to a Skillz document demand.  Papaya was given the option to have the documents excluded or to submit its expert to an additional deposition, accompanied by additional Daubert motion practice. On May 30, 2025, Papaya chose to have the documents excluded from the trial.

human players are pitted against each other, does not affect the average return from the game. He then demonstrates that the RTP in a game with bots results in humans performing on average better than when playing only with other humans. He concludes, therefore, that Papaya's use of bots resulted in human players receiving "above the 'advertised' return" and above "what they expected." He also calculates that Papaya paid more to human players in its games with bots than in those without bots.

Skillz moves to exclude the testimony about RTP on the grounds that it is irrelevant and therefore unhelpful to the jury. According to Skillz, because this calculation of the average aggregate RTP does not shed light on what users prefer or whether a Papaya tournament is "even," the calculations are irrelevant.

Skillz's motion is granted to the extent that Orszag opines about players' preferences and expectations or Skillz's band-widening practices. Orszag has no expertise in these areas and has not performed any analysis to support the opinions he offers on these topics. The motion is denied, however, to the extent Orszag has calculated Papaya's RTP. Papaya seeks to present this calculation as relevant to whether any misrepresentation about the fairness of its games was material. The calculation will be received for that purpose.

IV.   Skillz's Profitability

In his description of Skillz, Orszag recites the analysis by an anonymous short seller that was obtained by the investment bank UBS.  The report raises questions about the financial condition of Skillz.  Skillz moves to strike the description of the anonymous analysis and any reliance Orszag may place on it.

This portion of Skillz's motion is granted.  Orszag may not refer to the anonymous analysis at trial.  It does not appear that Papaya objects.  Papaya describes Orszag's reference to it in his report as an inconsequential error and as something on which Orszag relied solely for context.

### Conclusion

Skillz's June 27, 2025 motion to exclude the rebuttal testimony of Jonathan M. Orszag is granted in part.

Dated:    New York, New York
          February 12, 2026

_____
DENISE COTE
United States District Judge