```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
SKILLZ PLATFORM INC.,                     :
                                          :
                      Plaintiff,          :       24cv1646 (DLC)
            -v-                           :
                                          :       OPINION AND
PAPAYA GAMING, LTD., et al.,              :          ORDER
                                          :
                      Defendants.         :
                                          :
----------------------------------------- X
```

APPEARANCES:

For the plaintiff Skillz Platform Inc.:

Amy Katherine Nemetz
Curtis Ryan Crooke
Jessica C. Benvenisty
Kathleen Elizabeth McCarthy
Craig Carpenito
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Barry Antoine Kamar
King & Spalding
200 South Biscayne Blvd.
Suite 4700
Miami, FL 33131

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800
Chicago, IL 60606

For the defendants Papaya Gaming, Ltd. and Papaya Gaming, Inc.:

Anthony Joseph Dreyer
Jordan Adam Feirman
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001

David B. Leland
Margaret E. Krawiec
Michael A. McIntosh
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue, NW
Washington, DC 20005

Devora Whitman Allon
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Allison M. Brown
Kirkland & Ellis LLP
2005 Market Street,
Suite 1000
Philadelphia, PA 19103

Cole Carter
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654

George W. Hicks , Jr.
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004

DENISE COTE, District Judge:

On December 30, 2025, Papaya Gaming, Ltd. ("Papaya") moved to resurrect the counterclaims it filed in this action.  More than a month earlier, on November 21, 2025, summary judgment had been granted for plaintiff Skillz Platform Inc. ("Skillz") on Papaya's counterclaims on the ground that Papaya had not offered sufficient evidence of injury to support its counterclaims. Skillz Platform Inc. v. Papaya Gaming, Ltd., No. 24CV1646 (DLC), 2025 WL 3268799, at *4 (S.D.N.Y. Nov. 21, 2025)("November

Opinion").   Papaya now moves to supplement the report of its expert Jonathan Orszag with a damages theory and calculation. In the alternative, Papaya seeks entry of final judgment on the counterclaims under Rule 54(b), Fed. R. Civ. P.   For the following reasons, Papaya's motion is denied.

## Background

Skillz, founded in 2012, operates in the real-money skill-based mobile gaming ("RMSB") market.  Its games are available for users to download on the Apple App Store and Samsung Galaxy Store.   In RMSB games, players are matched by the platform with other users on games created by third parties and compete to win cash prizes or for game rewards.

Papaya entered the RMSB market as a competitor to Skillz in 2019.   Papaya's games are also available on the Apple and Samsung app stores.   While the games users play on the Papaya platform, like Solitaire, are similar to those offered on the Skillz platform, players compete in multi-player tournaments on the Papaya platform but play in two-person tournaments on the Skillz platform.

On March 4, 2024, Skillz filed this action against Papaya. Skillz asserts that Papaya engaged in materially false advertising in violation of the Lanham Act and GBL § 249 when it

marketed its games as fair and skill-based while failing to disclose that Papaya used bots as "players" in its tournaments.

Papaya answered with counterclaims on August 5, and Skillz moved to dismiss each of Papaya's counterclaims. Papaya's Lanham Act and GBL § 349 counterclaims that concerned Skillz's statements about its competitors' games and Papaya's defamation counterclaim were dismissed. Skillz, 2025 WL 438387, at *7, *8-*9 (S.D.N.Y. Feb. 7, 2025) ("February Opinion"). Papaya's trademark and copyright counterclaims were severed. Id. at *12. Skillz's Lanham Act, GBL § 249, and civil conspiracy counterclaims that concerned Skillz's statements about its own platform, however, survived the motion. Id. at *6. An Opinion of March 26 denied Papaya's motion for leave to file further amended counterclaims. Skillz, 2025 WL 918411 (S.D.N.Y. Mar. 26, 2025). On May 21, at Papaya's request, its severed counterclaims were dismissed.

Fact discovery on Skillz's claims and Papaya's surviving counterclaims closed on March 31, 2025. The parties exchanged expert reports on April 18 and rebuttal expert reports on May 9. In support of its request for damages, Skillz submitted an expert report by economist and financial analyst Jim Bergman. Papaya submitted expert reports on damages from economist

Jonathan Orszag.  Expert depositions were completed on June 11, 2025.

Upon the close of discovery, the parties engaged in summary judgment and Daubert motion practice.  An Opinion of October 27 denied Papaya's motion for summary judgment on Skillz's claims as well as Papaya's motions to exclude the testimony of Bergman and Skillz's survey expert.  Skillz, 2025 WL 3012836 (S.D.N.Y. Oct. 27, 2025).  The November Opinion granted, inter alia, Skillz's motion for summary judgment on Papaya's counterclaims and affirmative defenses, including a defense of unclean hands. Skillz, 2025 WL 3268799 (S.D.N.Y. Nov. 21, 2025).  That November Opinion is incorporated by reference and familiarity with it is assumed.  In brief, and as relevant here, the November Opinion held that Papaya had not put forward evidence that Papaya was injured as a result of Skillz's statements about Skillz's own matchmaking practices, a necessary element of the Lanham Act counterclaim.  Id. at *4.

As described in the November Opinion, Papaya's expert Orszag concluded, that from 2020 to 2024, Skillz made an excess profit of approximately $37.37 million from its use of Determined Outcome Matching ("DOM").[1]  Orszag's expert report,

---

[1] DOM is a technology that matches players for particular tournaments.

however, did not opine that Papaya lost revenue or was injured as a result of the Skillz statements that were the subject of Papaya's counterclaims, such as statements about its matching of players of equal skill.  Orszag's assignment from Papaya did not include an assessment of whether Papaya was harmed by Skillz's alleged false advertising, a fact he confirmed in his deposition.  When asked if he was "providing any opinions about whether or not Papaya actually suffered any harm," Orszag responded, "That's not an analysis that I have conducted, other than the general point that these two firms compete and they compete with other firms as well."  Orszag repeated that assertion on ten occasions in his testimony.  The November Opinion found, inter alia, that Orszag "did not perform any analysis" to fill the gap in Papaya's evidence of injury under the Lanham Act.  Id.

The deadline for a motion for reconsideration of the November Opinion expired on December 5; Papaya did not move for reconsideration.  Instead, on December 30, Papaya filed the instant motion for leave to submit a supplemental report from Orszag.  It moved, in the alternative, for entry of final judgment on the counterclaims under Rule 54(b), Fed. R. Civ. P. On January 15, 2026, Papaya submitted a corrected supplemental report from Orszag relying on a newly produced document

6

detailing Papaya's user acquisition costs.  This was not the first time that Papaya sought to rely on documents that it should have produced during the discovery period.[2]

In the supplemental report Orszag concludes that Skillz's alleged false advertising financially harmed Papaya in an amount that ranges from less than $2 thousand to slightly over $1.7 million.[3]  Orszag describes his assignment as "to assess whether Papaya was adversely impacted by Skillz's alleged false disclosures."  He began his analysis with the $37.37 million he had previously concluded was Skillz's excess profit from false advertising.  Conceding that number "is not directly Papaya's injury," he opines that in a but-for world in which Skillz disclosed its use of DOM, Skillz would have paid additional reward payments to users.  That, in turn, would have reduced Skillz's sales and marketing budget.  Orszag concludes that Skillz's decreased sales and marketing expenditures would have

---

[2] In his expert rebuttal report of May 9, 2025, Orszag had also relied on Papaya documents that had not been produced during the discovery period.  Papaya was given the option to have the documents excluded or to submit Orszag to an additional deposition, accompanied by additional Daubert motion practice. On May 30, Papaya chose to have the documents excluded from the trial.  On February 12, 2026, Skillz's motion to strike Orszag's reliance on those late-produced documents was granted.  See Skillz, 2026 WL 395430, at *3 (S.D.N.Y. Feb. 12, 2026).

[3] To arrive at damages of over $1 million Orszag assumes that Skillz achieves a return of a dollar for every dollar spent on sales and marketing.

resulted in users spending less on Skillz's platform and more on competitors' platforms, including Papaya's.  Orszag then multiplied his calculation of users' reduced payments on Skillz's platform by Papaya's market share in three models of the RMSB market, including a model employed by Bergman. Applying further calculations, including adjusting for Papaya's user acquisition costs[4] and controlling for different sensitivities of how much of its revenue Skillz spent on sales and marketing, Orszag produced a table showing Papaya's additional profits under those but-for worlds and sensitivities.

Shortly after the parties informed the Court that they had been unable to settle their disputes, an order of February 10 scheduled the trial for Skillz's claims to begin on April 13, 2026.  Skillz filed its opposition to the instant motion that same day.  Opinions of February 12 resolved the motions to exclude the testimony of Papaya's gaming experts, Orszag's May 9, 2025 rebuttal report, as well as the testimony of Skillz's gaming expert.  Skillz, 2026 WL 395323 (S.D.N.Y. Feb. 12, 2026); Skillz, 2026 WL 395430 (S.D.N.Y. Feb. 12, 2026).  The instant motion became fully submitted on February 18.  The Joint Pretrial Order is due March 13.

---

[4] The corrected report applied Papaya's user acquisition costs from the newly-produced document.

8

## Discussion

Papaya moves to supplement Orszag's expert report.  In the alternative, it seeks entry of a partial judgment pursuant to Rule 54(b).  The motion to supplement Orszag's expert report will be addressed first.

I.    Motion to Supplement Orszag Report

In seeking to supplement Orszag's expert report, Papaya expressly disclaims that it is moving pursuant to Rule 26. Instead, it argues that Orszag's new opinion should not be precluded under Rule 37 and requests that the Court exercise its discretion to admit late-disclosed testimony.  Skillz argues that the new opinion is precluded under Rule 37.  Skillz is correct.

Rule 26(a) of the Federal Rules of Civil Procedure is addressed to expert disclosures during discovery.  Rule 26(a)(2)(B) mandates that a report submitted by an expert witness must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Under Rule 26(e), a party attempting to supplement an expert report must do so "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the

9

discovery process or in writing."  Rule 26(e)(1)(A), Fed. R. Civ. P.

Rule 37 governs failures to make disclosures or to cooperate in discovery.  Under Rule 37(c)(1), which addresses failure to timely disclose evidence as required by Rule 26, the party subject to sanctions for its discovery failure "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1), Fed. R. Civ. P.

"[W]e interpret the Federal Rules the same way we interpret federal laws more generally: by giving them their plain meaning."  Berk v. Choy, 607 U.S. --, 2026 WL 135974, at *3 (U.S. Jan. 20, 2026) (citation omitted).  When terms are "unambiguous, judicial inquiry is complete."  Pavelic & LeFlore v. Marvel Ent. Grp., 493 U.S. 120, 123 (1989) (citation omitted).  "If a Federal Rule answers the disputed question, it governs, unless it exceeds statutory authorization or Congress's rulemaking power."  Berk, 2026 WL 135974, at *3 (citation omitted).

"The district court has wide discretion in punishing failure to conform to the rules of discovery."  Brandon v. Royce, 102 F.4th 47, 58 (2d Cir. 2024) (citation omitted).  In

determining whether preclusion is an appropriate sanction, courts consider the factors first set forth by the Second Circuit in Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988):

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Brandon, 102 F.4th at 58 (citation omitted); see Wolak v. Spucci, 217 F.3d 157, 161 (2d Cir. 2000).

The introduction of Orszag's injury opinion is a violation of Rule 26 and preclusion is necessary under Rule 37.  Applying the straightforward standard from Rule 37, Papaya's failure to produce Orszag's damages theory and calculation during the exchange of expert reports was neither "substantially justified" nor "harmless."

There is no justification for this belated filing of Papaya's damages theory and calculation.  Orszag's new calculation relies on data known to Papaya during the discovery period.  Papaya made a tactical decision not to have its damages expert calculate how Papaya may have been injured as a result of the conduct by Skillz which was the focus of Papaya's counterclaims.  The reason for that decision may well have been the difficulty of demonstrating any injury to Papaya during a

11

period in which Papaya's market share grew "astronomically" while Skillz's market share declined.[5]  Skillz, 2025 WL 3268799, at *4.  Given that Papaya calculates that its injury may have amounted to as little as $2,000, Papaya may have preferred to rely on a vague inference of injury and the jury's speculation about that injury rather than evidence of injury and its calculation.  In any event, the failure of proof was deliberate and glaring; it was not accidental or inadvertent.

In its motion of June 27, 2025, Skillz sought summary judgment on Papaya's counterclaims by arguing, inter alia, that "Papaya does not even attempt to offer any evidence establishing any injury to its business caused by Skillz's Challenged Statements."  In response, Papaya did not seek permission to offer Orszag's recently-produced calculation of damages.  Instead, in its opposition brief, filed on July 18, Papaya argued that the Court could rely on other evidence of injury or that injury was presumed because Skillz had engaged in comparative advertising.  In its August 8 reply brief, Skillz urged again that Papaya could not "overcome its failure to adduce admissible evidence showing that it suffered any harm

---

[5] Papaya may also have concluded that it would be difficult to prevail on an assertion that Skillz had injured Papaya when no Papaya executive would be able to take the stand to explain that contention.  Each of Papaya's executives has invoked their Fifth Amendment right against self-incrimination.

12

from Skillz's advertising." Papaya continued to rest on the arguments it made on July 18; it did not seek permission to file a damages analysis from Orszag. Then, for the reasons explained in the November Opinion, the counterclaims were dismissed. Id. at *6.

Papaya's decision was not harmless. Because of Papaya's decision not to timely offer a theory for or a calculation of any damages it incurred, Papaya's counterclaims were dismissed in November. To date, there has been no need for the Court to address a myriad of other arguments presented by Skillz in support of its motion to dismiss Papaya's counterclaims. And while the Court has resolved Daubert motions addressed to Skillz's claims, it has not had to address the three Daubert motions that pertained exclusively to Papaya's counterclaims.[6] A trial date has been set and in a few weeks a jury will focus on the statements Papaya made in its advertising, Papaya's undisclosed use of bots, and what injury Skillz may have suffered from those actions by its competitor.

Allowing Papaya to supplement its expert report at this late stage of the litigation would impose a burden on the Court and prejudice Skillz as it prepares for trial. It will also

---

[6] These motions are Skillz's June 27, 2025 motions to exclude the affirmative opinions of Orszag and to exclude the testimony of Papaya's survey experts Dr. Bruce Isaacson and Healy Whitsett.

require an adjournment of the trial.  If this motion is granted, the Court will have to address Skillz's remaining arguments for judgment on the counterclaims, and if the counterclaims survive that motion practice, the remaining Daubert motions.  Skillz may also move to exclude Orszag's new report.  While a continuance is always possible, given the Court's calendar, any rescheduled trial will not occur for months.

In making this motion to supplement, Papaya begins with an assertion that the Court erred in concluding that it had not submitted sufficient evidence to permit a jury to find that it was injured as alleged in its counterclaims.  It then addresses the four Outley factors, arguing for the Court's exercise of its discretion to permit the supplementation of Orszag's expert report.

First, Papaya argues that there is a legitimate reason for its delay in offering this supplemental expert report, to wit, it believed it was unnecessary to do so.  Whether the Court erred in finding that Papaya had failed to offer sufficient evidence of injury, for the reasons explained in the November Opinion, will of course be subject to appellate review.  But Papaya's reasoned decision not to offer Orzag's supplemental theory and calculation during the period set aside for expert disclosures does not constitute a legitimate reason for offering

14

it now.   Litigation would be endless if parties were able to reopen discovery upon receipt of an adverse summary judgment ruling.

Papaya next argues that Orszag's supplemental report is important, since it may allow Papaya to resurrect its counterclaims.  This is an important consideration and should be weighed with care.  On the other hand, it is fair to observe that if this damages calculation were truly important to Papaya it had an opportunity to present this evidence during the period set aside for expert discovery.

Papaya argues as well that Skillz will not be prejudiced by the Orszag damages theory and calculation.  Papaya contends that his injury opinion is a "minor extension" of Orszag's original damages opinion; that it "simply makes explicit an implication" of that original opinion using "no new facts"; and that it applies methods already embraced by Skillz's own damages expert. It frames the injury opinion as new "only in a formal sense, not a substantive one" and one that does not alter Orzag's original conclusion.  Papaya minimizes the impact of the new Orszag report.  Orszag presents an entirely new analysis, one that he expressly disclaimed having conducted previously.  When asked in deposition if he was "providing any opinions about whether or not Papaya actually suffered any harm," Orszag consistently

15

asserted that it was "not an analysis that" he had conducted. In his supplemental report, Orszag concedes that the Skillz excess profits he originally calculated were "not directly Papaya's injury."  This is obvious since he calculates that Papaya's injury may be as low as $1,906 despite calculating Skillz's excess profits in an amount of over $37 million. Further, Orszag's supplemental report relies upon newly produced financial data from Papaya that should have been produced in discovery but was not.  Finally, Skillz's prejudice will include its loss of its April trial date and the expense associated with the additional work that it will no doubt undertake to address this new expert testimony.

Finally, Papaya argues that no continuance of the trial will be necessary since only a "small amount of additional work" will be required should the new report be received.  Papaya is wrong, for the reasons explained above.

At bottom, Rule 37, and independently the Outley factors, do not support the application of this Court's discretion as Papaya requests.  Papaya's decision to wait until this stage of litigation to introduce this new expert report weighs heavily against its request.  The report offers a new analysis and will require substantial additional effort by the Court and the parties before this case will be ready for trial.  Skillz will

be deprived of its April trial date.  The expense of this litigation will be increased and the parties' reliance on the schedules set for this litigation, and their considerable efforts to abide by those schedules, will have been for naught. Combined, these factors weigh heavily against Papaya's application.

II.   Motion for Entry of a Partial Judgment

Papaya moves in the alternative for entry of final judgment on the dismissed counterclaims pursuant to Rule 54(b), Fed. R. Civ. P.  Papaya seeks to appeal from the dismissal of some of its counterclaims in the February Opinion and from the entry of judgment in favor of Skillz on other Papaya counterclaims in the November Opinion.

Rule 54 is an exception to the general principle and "historic federal policy against piecemeal appeals."  Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980) (citation omitted).

> When an action presents more than one claim for relief
> -— whether as a claim, counterclaim, crossclaim, or
> third-party claim -— or when multiple parties are
> involved, the court may direct entry of a final
> judgment as to one or more, but fewer than all, claims
> or parties only if the court expressly determines that
> there is no just reason for delay.

Rule 54(b).  "Rule 54(b) certification must take account of both the policy against piecemeal appeals and the equities

17

between or among the parties." Scottsdale Ins. Co. v. McGrath, 88 F.4th 369, 378 (2d Cir. 2023) (citation omitted). In other words, "a district court must take into account judicial administrative interests as well as the equities involved." Novick v. AXA Network, LLC, 642 F.3d 304, 310 (2d Cir. 2011) (quoting Curtiss-Wright, 446 U.S. at 8). "Certification is appropriate only to serve the interests of sound judicial administration or to avoid some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Matter of Energetic Tank, Inc., 110 F.4th 131, 148 (2d Cir. 2024) (citation omitted).

The Court of Appeals for the Second Circuit has "repeatedly stated that a district court's authority to enter a Rule 54(b) judgment should be exercised sparingly." Ashmore v. CGI Grp., Inc., 860 F.3d 80, 86 n.6 (2d Cir. 2017). "The district court generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated." Zivkovic v. Laura Christy LLC, 94 F.4th 269, 271 (2d Cir. 2024) (citation omitted). "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense

separable from the remaining unresolved claims." Novick, 642 F.3d at 310 (citation omitted).

Papaya's request for entry of a partial judgment is denied. Piecemeal appeals are not appropriate here.

Entry of a Rule 54(b) judgment will not serve the interests of sound judicial administration. As Papaya admits, its affirmative defense of unclean hands replicates its counterclaims. And, as it also admits, there is factual and legal overlap between its counterclaims and the Skillz claims that will proceed to trial in April. Skillz and Papaya are competitors in the RMSB market. They have asserted claims of false advertising against each other over statements that implicate their different matchmaking practices. Those claims are brought under the same statutes, the Lanham Act and GBL § 349. As a result, piecemeal appeals of this litigation would require different panels of the Court of Appeals to wade through interrelated factual issues. It is abundantly clear that multiple appeals from this litigation would waste judicial resources.

The equities also weigh strongly against entry of a partial judgment. Trial is near at hand. It will begin on April 13. After the jury renders its decision, all parties

19

will have an opportunity to bring their appeals from this litigation.  Severing Papaya's counterclaims for a separate, immediate appeal will unreasonably burden the parties during the final weeks of trial preparation.  There is no offsetting interest that either Skillz or Papaya have in a marginally faster appeal on interrelated claims. There is no possibility that any appeal of the severed counterclaims will be resolved before the April trial.

## Conclusion

Papaya's December 30, 2025 motion for leave to supplement the expert report for Jonathan Orszag or for entry of final judgment pursuant to Rule 54(b) on its counterclaims is denied.

Dated:    New York, New York
          February 20, 2026

_____
DENISE COTE
United States District Judge

20