```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
SKILLZ PLATFORM INC.,                     :
                                          :
                        Plaintiff,        :      24cv1646 (DLC)
             -v-                          :
                                          :      OPINION AND
PAPAYA GAMING, LTD., et al.,              :          ORDER
                                          :
                        Defendants.       :
                                          :
----------------------------------------- X
```

For the plaintiff Skillz Platform Inc.:

Amy Katherine Nemetz
Curtis Ryan Crooke
Jessica C. Benvenisty
Kathleen Elizabeth McCarthy
Craig Carpenito
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Barry Antoine Kamar
King & Spalding
200 South Biscayne Blvd.
Suite 4700
Miami, FL 33131

Lazar Pol Raynal
Michael Anthony Lombardo
King & Spalding
110 N Wacker Drive, Suite 3800
Chicago, IL 60606

For the defendants Papaya Gaming, Ltd. and Papaya Gaming, Inc.:

Devora Whitman Allon
Giancarlo Francis Carozza
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Allison M. Brown

Kirkland & Ellis LLP
2005 Market Street,
Suite 1000
Philadelphia, PA 19103

Adam R. Alper
Cole Carter
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654

George W. Hicks , Jr.
Quinn Zhang
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004

Argie Lagrimas Mina
Michael W De Vries
Kirkland & Ellis LLP
695 Town Center Drive
Suite 1700
Costa Mesa, CA 90067

Sharre Lotfollahi
Kirkland & Ellis LLP
2049 Century Park East
Suite 3700
Los Angeles, CA 90067

DENISE COTE, District Judge:

The defendants Papaya Gaming Ltd. and Papaya Gaming, Inc. ("Papaya") moved on the eve of trial in this false advertising litigation to withdraw their executives' invocation of the Fifth Amendment privilege against self-incrimination and to amend the Pretrial Order to add the five executives to their witness list. The plaintiff Skillz Platform Inc. ("Skillz") had planned to offer evidence of the executives' invocation of their Fifth

Amendment rights, which occured more than a year ago, and had requested that the jury be given an adverse inference instruction.

Papaya's eleventh-hour motion has generated heated debate between the parties.  For the following reasons, Skillz will not be permitted to introduce evidence that the Papaya executives had invoked their Fifth Amendment rights; Papaya will not be permitted to call any of its executives to testify at trial; and the jury will be given an instruction that the Papaya executives are equally unavailable to both Skillz and Papaya.

## BACKGROUND

On March 4, 2024, Skillz filed this action alleging that Papaya had violated the Lanham Act and New York General Business Law by employing bots as "players" in its mobile gaming tournaments without disclosing that use to consumers.  Skillz asserts that the concealment made the Papaya advertisements of its games as fair and skill-based false and misleading.  See Skillz Platform Inc. v. Papaya Gaming, Ltd., No. 24CV1646 (DLC), 2025 WL 3012836, at *3 (S.D.N.Y. Oct. 27, 2025) (summary judgment opinion).

The history of this litigation places the current dispute in context.  Papaya's motion to dismiss Skillz's complaint was

3

denied in July 2024.  Skillz, 2024 WL 3526853 (S.D.N.Y. July 23, 2024).  Papaya, an Israeli company, at first refused to produce discovery on the ground that it would violate Israeli law to do so.[1]  After that position was rejected, discovery commenced in earnest.  See Skillz, 753 F. Supp. 3d 347 (S.D.N.Y. Oct. 11, 2024), reconsideration denied, 2024 WL 4839405 (S.D.N.Y. Nov. 20, 2024).  That discovery was contentious, and it took a long time for Papaya to produce its core documents.  That production included a voluminous production of its game logs.  Skillz contends that those logs show that in the games played for money on Papaya's platform between late 2021 and early 2023, close to 75% included bots functioning as "players".

Fact discovery was due to conclude on February 28, 2025. In mid-January, Papaya took the position that it would make its executives, who reside in Israel, available for their depositions in London and only during the last six days of the fact discovery period.  Learning that none of the executives had traveled to the United States over the past twelve months, the Court permitted the depositions to occur in London.  Papaya was required to cooperate with Skillz regarding the scheduling of

---

[1] Papaya asserted that Israel's data protection laws "bar Papaya from collecting and transferring a significant portion of the nonpublic responsive documents and information to the United States absent an Israeli court order."

4

its depositions and, at Papaya's request and with the consent of Skillz, the period for fact discovery was extended by a month. The five depositions of the Papaya executives were then scheduled to take place between March 10 and March 28 in London.

Skillz took the Rule 30(b)(6) deposition of Papaya on February 27.  In that deposition, Papaya admitted that it had used bots in its tournaments.

Skillz's counsel was scheduled to fly to London on March 7 to begin to take the depositions of five Papaya executives. These five individuals were the only persons Papaya had identified in its initial disclosures and in response to Skillz's interrogatories as the individuals with knowledge of Papaya's (1) use of bots as part of its matchmaking practices, (2) responses to consumers who complained about bots, and (3) marketing of its games.

On March 6, the day before Skillz's counsel was scheduled to travel to London for the depositions, Papaya informed Skillz that each of its five executives intended to assert their Fifth Amendment right not to testify.  This last-minute notice was given even though this issue had been brewing for months if not years.

Papaya has been aware for some time of multiple investigations of its conduct by government officials.[2]  To the extent Papaya's games are classified as games of chance as opposed to games of skill because of its use of bots as players in tournaments, the games may be classified as gambling and subject to regulation and taxation.  See Skillz, 2025 WL 3012836, at *10.  This issue had even triggered a discovery dispute in this litigation in November of 2024, when Papaya requested that Skillz give it documents about Papaya that Skillz had provided to government officials.  In response to that request, Skillz revealed to Papaya that the U.S. Attorney's Office for the District of New Jersey ("USAO") intended to appear in this action for the limited purpose of objecting to Papaya's request for copies of documents Skillz had provided to that office.  The Court ordered Skillz to provide Papaya with the contact information for the relevant person at the USAO and that discovery dispute was resolved.[3]

When Papaya gave notice that its witnesses would be invoking their Fifth Amendment privilege, it also requested a

---

[2] At the final pretrial conference on March 27, 2026, the Court granted Papaya's motion in limine to bar evidence of or reference to multiple federal and state investigations of its conduct.

[3] Ultimately, Papaya reached an agreement with the USAO and the USAO did not ask to appear in this litigation.

second extension of the fact discovery period. It requested an adjournment of the depositions and an extension of discovery by three months, writing that it learned "this week" that the executives intended to assert their Fifth Amendment rights.  It sought to use the time to better ascertain whether there is "a real risk of government inquiry" and to pursue settlement discussions with Skillz.[4]  Papaya explained that there was no prejudice to Skillz "because this case is and has always been solely about damages."[5]  Skillz opposed the adjournment as nothing more than a delay tactic, explaining that in January Skillz's counsel had inquired whether Papaya's witnesses would be taking "the Fifth, because this is going to impact the 30(b)(6) deposition," and had been assured by Papaya's counsel that the executives "were not going" to do so.  Papaya's counsel explained that he had only responded, "we're not there yet."

The Court denied Papaya's second request to adjourn discovery.  At their depositions, each of Papaya's executives invoked their Fifth Amendment rights.  Fact discovery closed on March 31, 2025.

---

[4] In a March 7 conference, Papaya's counsel stated "we are not saying these witnesses will never testify" and that Papaya is seeking "more clarity on the DOJ issue."

[5] Papaya's current counsel asserts that Papaya will vigorously defend against a finding of liability as well.

After fact and then expert discovery closed, the parties engaged in summary judgment and Daubert motion practice.  An October Opinion denied Papaya's motion for summary judgment on Skillz's claims as well as Papaya's motions to exclude the testimony of Skillz's experts.  Skillz, 2025 WL 3012836 (S.D.N.Y. Oct. 27, 2025).  In November, Papaya's counterclaims and affirmative defenses were dismissed.[6]  Skillz, 2025 WL 3268799 (S.D.N.Y. Nov. 21, 2025).

In January of 2026, the parties engaged in mediation.  When that mediation failed, Papaya changed counsel and requested a lengthy adjournment of the trial, which was scheduled to begin on April 6, 2026.[7]  Up until this point, Papaya had been represented by attorneys from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden").  They had been joined at the end of 2025 by attorneys from Kirkland & Ellis LLP ("Kirkland").[8]  On

---

[6] Papaya has pursued an aggressive strategy to try to resurrect those counterclaims.  Those efforts have included filing litigation against Skillz's agents in the Eastern District of Virginia.  That litigation has been dismissed and sanctions for filing it have been imposed on Papaya.  Papaya Gaming, Ltd. v. Fair Play for Mobile Games, No. 25CV5573 (DLC), 2026 WL 558698 (S.D.N.Y. Feb. 27, 2026).

[7] To accommodate religious holidays, the trial date was subsequently moved to April 13.

[8] The two law firms filed a motion to supplement the report of Papaya's damages expert, Jonathan Orszag, in an effort to resurrect Papaya's counterclaims.  The motion was denied. Skillz, 2026 WL 482356 (S.D.N.Y. Feb. 20, 2026).

February 6, Skadden sought to withdraw from its representation of Papaya, an application which the Court agreed to grant on the condition Kirkland could adhere to the trial schedule. Kirkland then requested an adjournment of the trial to November. That request was denied. When Kirkland represented that Papaya would meet the forthcoming deadlines, Skadden's request to withdraw was granted.

The parties filed the Pretrial Order on March 13, 2026, along with their requests to charge and for voir dire. Papaya also filed ten motions in limine and Skillz filed four. The responses to those motions were filed on March 20. Throughout these documents, the parties' arguments reflected their understanding that Skillz would be offering evidence that Papaya's executives had invoked the Fifth Amendment privilege at their depositions and that Skillz would seek as well an adverse inference instruction at the trial.

With the parties' consent, the Court had arranged for them to engage in settlement discussions before the Honorable Loretta Preska of this court. In a filing on March 23, which was the eve of those settlement discussions, Papaya informed Skillz and the Court that its five executives wished to testify at trial. They were prepared to withdraw their assertions of the Fifth Amendment privilege and to be deposed by Skillz at Papaya's

9

expense.  Skillz responded on March 26.  Papaya replied on March 27.

At the final pretrial conference on March 27, the Court first ruled on the motions in limine and then heard argument on Papaya's request.[9]  Among other things, Papaya's counsel explained that it wished to make an ex parte showing of why its notice of the revocation had come so late and that an attorney for the executives was in the courtroom and available to speak ex parte about the circumstances leading to the request to withdraw.  Skillz objected to any ex parte submission to the Court on this issue.  An Order of that afternoon explained that one of Papaya's five executives could testify at trial on the condition that he submits to a pretrial deposition by Skillz at a time and place set by Skillz, with reasonable notice being given by Skillz of that time and place.  The parties were ordered to confer regarding which of the Papaya executives would testify.

---

[9] The rulings were largely made in the context in which they were briefed, that is, without reference to Papaya's recent notification that its executives were now willing to testify. Among other things, the Court ruled that evidence of the Papaya executives' invocation of their Fifth Amendment privilege had to be presented succinctly to the jury (instead of the eight hours Skillz sought for that evidence) and that Papaya's Rule 30(b)(6) witness, who was the Vice President of Finance, would be permitted to testify about Papaya's financial position but not the many other topics that Papaya sought to develop through his testimony at trial.

During a telephonic conference later that day, Papaya explained that it wished to call its CEO Oriel Bachar to testify at trial.  Skillz objected vociferously and asked to respond on Monday morning to these events.

On March 30, Skillz moved for reconsideration.  Skillz objected to Papaya's CEO or its Rule 30(b)(6) witness Raz Revah testifying.  It asked to present evidence to the jury that the five executives had invoked their Fifth Amendment privilege.  If the Court denied these requests, it preferred an adjournment of the trial for several months to take the depositions of all five Papaya executives.  If there were no adjournment and one Papaya witness would testify, it strongly preferred that person to be Uri Pearl Stein, who was in charge of marketing for Papaya.  At a conference with the parties that same day, the Court ruled that the jury would be instructed that the Papaya executives were equally unavailable to the parties; that no testimony would be permitted from any of the five Papaya executives or its Rule 30(b)(6) witness; that Skillz could not offer evidence that the Papaya executives had invoked their Fifth Amendment privilege; and that the trial would not be adjourned.

Having had a full opportunity to be heard at the March 30 conference, Papaya's request at the conference for permission to file a motion for reconsideration was denied.  Nonetheless, on

11

March 31, Papaya filed such a motion, accompanied by a general proffer of the trial testimony of its five executives and its Rule 30(b)(6) witness.  Skillz responded on April 2.  The reasons for the Court's March 30 ruling follows.

## DISCUSSION

Papaya seeks to call as trial witnesses its five executives who invoked their Fifth Amendment right against self-incrimination during the discovery period as well as its Rule 30(b)(6) witness.  These requests are addressed in turn.  Each is denied.

### I.  Papaya's Request to Withdraw the Invocation of the Fifth Amendment

According to the Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  "[T]he Fifth Amendment privilege allows one not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Chavez v. Martinez, 538 U.S. 760, 770 (2003) (citation omitted).

In order to invoke the privilege, a witness must have "reasonable cause to apprehend danger from a direct answer" and have "reason to fear that any such answer might be used to incriminate him in future criminal proceedings."  United States

12

v. Okatan, 728 F.3d 111, 118 (2d Cir. 2013) (citation omitted);
see Andover Data Servs., a Div. of Players Computer, Inc. v.
Stat. Tabulating Corp., 876 F.2d 1080, 1082 (2d Cir. 1989).  To
be a "credible" threat of prosecution the fear of criminal
prosecution may not be "imaginary or wholly speculative."
Antonyuk v. James, 120 F.4th 941, 1004 (2d Cir. 2024) (citation
omitted).  As explained in United States v. Zappola, 646 F.2d 48
(2d Cir. 1981), "the claimant of the privilege must be
confronted by substantial and real, and not merely trifling or
imaginary, hazards of incrimination."  Id. at 53 (citation
omitted).

There is a "strong" public policy that disputes be resolved
"on the merits."  Pecarsky v. Galaxiworld.com Ltd., 249 F.3d
167, 174 (2d Cir. 2001) (citation omitted).  Accordingly, a
district court "should take a liberal view toward applications
by civil litigants to withdraw their previously invoked Fifth
Amendment privilege."  In re 650 Fifth Ave. & Related Props.,
934 F.3d 147, 169–70 (2d Cir. 2019)("650 Fifth").  This does not
mean, however, that courts must always allow litigants who
invoked the privilege to switch positions and testify.  Id. at
170.

When confronted with a party's request to withdraw its
previous invocation of its Fifth Amendment rights, threshold

13

issues are whether the request is "timely" and whether its opponent suffered "undue prejudice from a litigant's later-regretted decision to invoke the Fifth Amendment." United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 83-84 (2d Cir. 1995)("Fifth Avenue Brooklyn").  See also 650 Fifth, 934 F.3d at 170.  In reviewing a timely request to withdraw a previously invoked Fifth Amendment privilege, a court should also consider "the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties."  Fifth Avenue Brooklyn, 55 F.3d at 84.

With respect to the nature of the proceeding, "[c]ourts must bear in mind that when the government is a party in a civil case and also controls the decision as to whether criminal proceedings will be initiated, special consideration must be given to the plight of the party asserting the Fifth Amendment." Id. at 83 (citation omitted).  If there is a "timely request made to the court, the court should explore all possible measures in order to select that means which strikes a fair balance and accommodates both parties."  Id. at 84 (citation omitted).

Trial courts must be "especially alert" however, to the danger that the litigant might have invoked the privilege

14

"primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties."  650 Fifth, 934 F.3d at 170 (citation omitted).

> In such circumstances, particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege.

Id. (citation omitted).

Papaya faces an uphill battle in seeking to have its executives testify at trial.  It is not a timely request and Papaya's invocation of the privilege has already severely prejudiced Skillz.  First, this request to withdraw the invocation comes too late.  It comes on the eve of a trial that has been scheduled for months.  In this litigation, which was filed over two years ago, Skillz seeks damages for unfair competition from Papaya that occurred as many as five years ago; principal summary judgment motions were resolved at the end of last year; a January mediation failed; and a date was promptly set for this jury trial.  As for the prejudice to Skillz, Papaya notified Skillz at the very close of fact discovery that its executives would invoke the Fifth Amendment privilege.  Skillz was deprived of their testimony and for the last year has had to build its case without that evidence.  Even if Papaya could

15

overcome these serious hurdles to its application, the other factors that may be relevant to its application are not favorable.

A. Nature of the Proceeding

This is civil litigation between private parties. Therefore, the heightened Fifth Amendment concerns that arise in a proceeding in which the government is a party are not present here.  See Fifth Avenue Brooklyn, 55 F.3d at 84.  As a consequence, there is no additional leeway that should be accorded to Papaya for its last-minute notice of its executives' withdrawal of their invocation of the Fifth Amendment privilege.

Papaya has difficulty in even showing that their testimony is essential to its defense.  It has spent a year defending against this litigation without their testimony.  And whatever assistance their testimony may give to that defense is tempered by Papaya's acknowledgment over a year ago that the trial in this matter will be principally a fight over damages.  At the April 13 trial, Skillz will attempt to prove that Papaya violated the Lanham Act by engaging in false advertising about the fairness and nature of the tournaments hosted on its platform.  Papaya's statements to the public are part of a historical record; they are contained in its advertising and presented to consumers on its platform.  A second component of

16

Skillz's claims is that the statements made in the advertising were false because Papaya employed bots in its tournaments without disclosing that to the public.  This component of Papaya's evidence is now largely uncontested.  It is now undisputed that Papaya employed bots as "players" in its tournaments from the inception of its business until late 2023.

Accordingly, the trial will primarily be a contest over whether the jury should award damages to Skillz and in what amount.  Using three different methodologies, Skillz will seek over half a billion dollars from Papaya, before prejudgment interest is calculated.  The experts from Skillz and Papaya will battle over this issue.  Reduced to its essentials, the nature of the proceeding weighs against allowing the Papaya executives to withdraw their invocation of the Fifth Amendment.  This withdrawal is untimely and its timing deeply prejudices Skillz.  At a minimum, before these witnesses could testify Skillz would be entitled to depose them and there is not enough time for it to do so and to prepare for the April 13 trial.

A. How and When the Privilege was Invoked

Courts are invited to examine as well how and when the privilege was invoked.  The privilege was invoked in a manner that was itself untimely and that prejudiced Skillz.  Without disclosing the imminent invocation of the privilege, Papaya

tried to schedule its executives' depositions to occur during the last week of the fact discovery period.  When that effort failed, the period for fact discovery was extended for a month and the depositions of the executives were scheduled to occur over the final three-week period for fact discovery.  Papaya only alerted the plaintiff that its executives intended to assert the privilege as Skillz's counsel prepared to fly to London to take the depositions.  This was sharp practice.

There was no adequate explanation at the time for why the notice came so late.  Papaya's executives had months to consider the implications of the USAO's potential investigation of Papaya; the notice was not given until four months after Papaya became aware of the investigation.  Notice was given only after extensive back and forth between the parties over both the location and the dates of the depositions.  It was not given until after Skillz had taken the Papaya Rule 30(b)(6) deposition.  Indeed, Skillz had inquired before that deposition whether Papaya's executives would be asserting the privilege, and Papaya gave Skillz no reason to believe that they would do so.  This factor therefore weighs strongly against allowing Papaya's executives to revoke their invocation of their privilege and to testify at trial.

## B. Prejudice to Skillz

The next factor to be weighed, the prejudice to Skillz, has already been described.  The prejudice to Skillz from this last-minute revocation is severe.  That prejudice includes the following.  Notice of the withdrawal came three weeks before the trial is scheduled to begin.  Discovery closed without Skillz being able to substantively depose even one of the witnesses Papaya had identified as having knowledge of the claims and defenses in this action.  Without such testimony, Skillz developed its expert evidence, engaged in summary judgment and Daubert motion practice, constructed a witness and exhibit list for trial, filed motions in limine, and prepared its case for trial.  It expected to offer evidence that Papaya executives had invoked their Fifth Amendment right to remain silent, which this Court will no longer allow it to do.  Skillz also intended to request an adverse inference instruction based on those invocations.  This factor weighs strongly against Papaya's application to have its witnesses testify at trial.

## C. Timing of Request to Revoke

The next factor to be examined is the timing of Papaya's request to revoke.  As already explained, this factor also weighs against Papaya.  True to Papaya's pattern in this litigation, notice of the withdrawal came late.  Here, it was

only 21 days before trial.  The request came on the night before settlement discussions were to begin before Judge Preska. Pretrial submissions had already been filed, motions in limine that relied upon the Papaya executives' invocation had been fully submitted, and the rulings on those motions were expected to be delivered at the final pretrial conference four days later.

D. Balance of Parties' Interests

Papaya has important interests at stake in this trial.  It characterizes Skillz's damages request as an existential threat. Its executives seek to testify in an effort to defend against that threat.[10]  Even if it were appropriate to assume that they invoked their privilege against self-incrimination in good faith and have withdrawn that invocation in good faith as well, Papaya has not shown that their testimony is essential to a just and reliable verdict.  As Papaya's attorney acknowledged a year ago, when trying to minimize the impact of the executives' invocation of their Fifth Amendment rights, this trial will be principally

---

[10] With its March 31, 2026 motion for reconsideration, Papaya filed a high-level proffer of its executives' trial testimony. Any such proffer should have been made earlier; a motion for reconsideration may not add to the evidentiary record without prior permission.  See S.D.N.Y. Local Civil Rule 6.3 ("No party is to file an affidavit unless directed by the court."); see also Cho v. Blackberry Ltd., 991 F.3d 155, 170 (2d Cir. 2021). In any event, consideration of that proffer does not alter the ruling in this Opinion.

about damages.  A decision barring the Papaya executives from testifying will not deprive Papaya of an opportunity to dispute the damages award that Skillz seeks.

As already explained, many of the core facts are not in dispute; they are uncontested historical facts.  This includes the nature of the games played on the Skillz and Papaya platforms, Papaya's employment of bots in its tournaments, and the historical financial performance of both Skillz and Papaya. Papaya's attorneys will cross-examine Skillz's damages experts and Papaya's experts will also dispute Skillz's damages theories and calculations.  As Papaya has forecast, and as the rulings on the motions in limine have permitted, Papaya will also offer evidence to support its theory that any loss of market share or revenue that Skillz suffered is attributable to factors inherent in Skillz's performance and may not be attributed to Papaya's advertising and conduct.  Accordingly, the denial of Papaya's request will not result in any unfair prejudice to its right to represent itself at trial.  But, even if the testimony of Papaya's executives were important to the issues the jury must decide, weighing each of the factors that the Court of Appeals has identified as relevant, and particularly in light of the history of this litigation, Papaya should not be allowed to benefit from their testimony at trial or to delay the trial.

Given Papaya's withdrawal of its invocation, it would unfairly prejudice Papaya to allow Skillz to present evidence to the jury that its executives had invoked the privilege against self-incrimination at their depositions.  Therefore, the Court will advise the jury that Papaya's executives are equally unavailable to both Skillz and Papaya.  The Court acknowledges that this outcome will place Papaya in a better position at trial than it had expected.

Skillz also has important interests at stake in this litigation that must be balanced.  When Papaya's witnesses invoked their Fifth Amendment privilege, Skillz was deprived of access to evidence that only those witnesses held.  It had to build its case without that evidence.  This eleventh hour effort by Papaya to essentially ignore this history is deeply unfair to Skillz.

To address this prejudice, Skillz seeks to adjourn the trial for months, reopen discovery, and take the executives' depositions.  Papaya consents to this request.  Adjourning the trial for months is not an appropriate remedy.  Wholly apart from the difficulties of managing a calendar of cases that will be trial-ready in the coming months, an adjournment to allow the parties to reopen discovery runs afoul of Rule 1, Fed. R. Civ. P., which commands that cases be administered to secure "just,

speedy, and inexpensive" determinations.  The parties have already expended extravagant sums on this litigation.  They were and are ready for trial.  It shall proceed as scheduled.

Moreover, Skillz's request to reopen discovery came when it understood that the Court would allow Papaya to call one executive to testify and Papaya chose its CEO to be that witness.  That issue is now moot.  No Papaya executives will be permitted to testify and Skillz may present its case at trial as it had envisioned it would, absent evidence of the Papaya executives' invocation of their Fifth Amendment rights.

In sum, the trial will proceed much as the parties had planned.  It will be the trial for which both Skillz and Papaya had prepared, with one notable exception.  There will be no evidence that Papaya's witnesses once invoked their Fifth Amendment privilege and refused to testify.  This strikes a balance between the parties' interests and accommodates the important interests implicated by the Fifth Amendment.  An equally-unavailable witness charge will be given at trial so that neither party is unfairly advantaged or disadvantaged by the absence of Papaya's executives.

II. Rule 30(b)(6) Testimony

Papaya seeks to call Raz Revah, its Vice President of Finance and Rule 30(b)(6) deponent, as a trial witness. This request is denied.

In choosing Revah as its Rule 30(b)(6) witness, Papaya selected someone who had no personal knowledge of the historical events at issue in this litigation. Revah joined the company in January of 2024; he had not been at Papaya when bots were employed as players in its tournaments, a practice that Papaya contends ended in late 2023. Revah was not identified in Papaya's Rule 26(a) disclosures or in response to Skillz's interrogatories as an individual with knowledge of the Skillz's claims or Papaya's defenses. At his deposition, Papaya made clear that Revah was not testifying in his personal capacity but as the company's Rule 30(b)(6) witness.

As the Court explained at the March 27 final pretrial conference, a person does not become a percipient witness who is competent to testify to events in which they did not participate simply because the witness is properly prepared to discuss on behalf of the company the topics that are the subject of the Rule 30(b)(6) deposition. Under Rule 32(a)(3), Fed. R. Evid., only an adverse party may introduce the deposition of a corporation's designated Rule 30(b)(6) witness; the party for

24

whom he gave that testimony may not offer the testimony at trial except perhaps as an appropriate counter-designation.

Skillz does not offer Revah's Rule 30(b)(6) testimony. It moved in limine to exclude the testimony of the Rule 30(b)(6) witness. That motion is granted.

This ruling reverses a ruling made at the final pretrial conference, where the Court advised the parties that it would permit Revah to testify about issues concerning Papaya's financials about which he would have personal knowledge as the Vice President of Finance. That ruling was made against the backdrop of a litigation context that no longer exists. It was made with the expectation that Skillz would be permitted to offer evidence that other Papaya executives had invoked their Fifth Amendment privilege.[11] Since Papaya will no longer be confronting evidence at trial of those invocations, Rule 32(a)(3) will govern as it ordinarily does.

Moreover, since Papaya never gave the required notice to Skillz during the discovery period that Revah had personal knowledge of relevant issues and Skillz did not have an opportunity to depose Revah in his personal capacity, Papaya may not call him as a witness now. Its request to do so comes too

---

[11] In ruling on other motions in limine, the Court gave the parties instructions on the manner in which those invocations could be presented to the jury.

late, would unfairly burden Skillz on the eve of trial, and appears to be largely based on the mistaken assumption that he could give competent evidence on many topics on which he is not qualified to speak.

## Conclusion

An equally-unavailable witness charge will be given at trial. Skillz may not offer evidence that any Papaya witness invoked the Fifth Amendment privilege against self-incrimination. The Papaya executives who invoked their Fifth Amendment privilege may not testify at trial. Nor may Papaya call Raz Revah, its Rule 30(b)(6) witness, to testify.

Dated:    New York, New York
          April 3, 2026

                                   _____
                                   DENISE COTE
                                   United States District Judge