# KING & SPALDING

King & Spalding LLP
110 N Wacker Drive
Chicago, Illinois 60606

Lazar P. Raynal
Direct Dial: +1 312 764 6947
lraynal@kslaw.com

April 19, 2026

**BY ECF**

The Honorable Denise L. Cote
United States District Court, Southern District of New York
500 Pearl St., Room 1910
New York, NY 10007

> Re:   ***Skillz Platform Inc. v. Papaya Gaming, Ltd. and Papaya Gaming, Inc.*,
> No. 1:24-cv-01646-DLC (S.D.N.Y.)**

Dear Judge Cote,

Plaintiff Skillz Platform Inc. ("Skillz") submits this response to Papaya's April 18 proposed revised monetary remedies instructions. *See* ECF 895-1 at 2 ([Revised] Proposed Supplement Instr. No. 1 (Disgorgement)), at 4 ([Revised] Proposed Instr. No. 2 (Damages)).

**Disgorgement**: Papaya mischaracterizes Skillz's disgorgement theory when it states that "[t]he implication of Mr. Bergman's testimony…is that the jury can award Skillz disgorgement of the increase in Papaya's enterprise value that allegedly resulted from Papaya's [false] advertising." That was not Mr. Bergman's testimony. On the contrary, Mr. Bergman presented the jury with two alternative disgorgement models, neither of which rely on Papaya's enterprise value. The first model was based on the user acquisition costs Papaya avoided through its false advertising to acquire the $2.1 billion it received through false advertising, and the second was based on the excess profit (i.e., Papaya's revenue minus costs) Papaya received through false advertising. Through those calculations, Mr. Bergman established that Papaya's profit attributable to the false advertising was $652.6 million if calculated from a saved costs perspective or $719 million if calculated from an increased revenue perspective. *See e.g.,*Trial Tr. at 734:14-175:12, 778:23–779:2. This testimony was more than sufficient to meet Skillz's burden under the statute of proving the total revenue generated by Papaya's false advertising, which shifts the burden to Papaya to establish any appropriate deductions. *See* 15 U.S.C. § 1117(a).

Papaya twists Mr. Bergman's trial testimony to suggest that his disgorgement models relied on "enterprise value." They do not, as the testimony cited above makes clear. Mr. Bergman merely referenced Papaya's high enterprise valuation to explain that Papaya's lower reported "operating profits" (which are not at issue and not the relevant metric) do not detract from the fairness of the higher figures he calculated using his disgorgement models, which was a direct response to Papaya's repeated arguments that Mr. Bergman's disgorgement numbers were somehow unfairly disproportionate to Skillz's current market capitalization and the benefit Papaya received from its false advertising. Papaya's proposed addition to the disgorgement instruction, which refers not only to Papaya's but also Skillz's "enterprise value" (neither of which is used in Mr. Bergman's disgorgement models), would serve no purpose and would only confuse the jury. Indeed, this addition would be especially confusing considering that Skillz's separate ***damages*** model (unlike the ***disgorgement*** model) does rely on enterprise value calculations.

April 19, 2026
Page 2

Having cited no basis in the law or Mr. Bergman's actual disgorgement analysis to warrant its proposed instruction, Papaya's proposal amounts to a request for a corrective instruction in the guise of a jury instruction. Papaya's request is clearly improper given that Papaya did not object to Mr. Bergman's testimony at the time, making its proposed charge untimely and waived.

**Damages**: The enterprise value damages issue has been fully briefed and addressed by the Court numerous times. *See* ECF 717 (Skillz Opp. to Papaya's MIL No. 2); PTC Tr. at 42:5–45:3; Tr. 1016:6–1017:15. Papaya's letter raises no new, or valid, arguments attacking Skillz's damages theory that would require the Court to add any additional text to the damages instruction.

First, Papaya's objection that Mr. Bergman's rationale for using enterprise value as a measure of damages was undisclosed is based on an absurd reading of Mr. Bergman's expert report, which reviews Skillz's losses at length and explains how Skillz's long investment in building its business was undercut by Papaya's false advertising scheme, causing lasting and ongoing harm even after Papaya allegedly stopped deploying bots and depriving Skillz of value developed over time. See ECF 734-5 (Bergman Report ¶¶ 65, 155–56, 173). Moreover, Papaya did not object at trial to the quoted testimony[1] and any objection now is untimely and therefore waived. As Skillz explained in prior briefing, Mr. Bergman's enterprise value analysis falls squarely within the broad remedial framework of the Lanham Act's language, which provides for the recovery of "***any damages sustained by the plaintiff.***" 15 U.S. Code § 1117. Papaya does not cite a single Lanham Act case that holds the recovery of enterprise value, based on the specific facts of the case, is an unavailable damages remedy.

Second, paying users are properly considered assets. The record shows that both Skillz and Papaya track user information, such as paid monthly active users ("PMAU") and user acquisition costs, as important business metrics. The number of PMAUs would surely be a metric subject to valuation and negotiation in any business transaction. Indeed, PMAUs are akin to the paid subscribers found to be assets for tax purposes in *Newark Morning Ledger Co. v. United States*, 507 U.S. 546 (1993) (customer relationships/subscribers are an identifiable "asset" capable of valuation). A key passage from *Lexmark* (notably omitted during Papaya's JMOL argument) makes clear that the deception that drove users to Papaya is exactly the type of economic or reputational injury the Lanham Act seeks to remedy:

> [A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; ***and that that occurs when deception of consumers causes them to withhold trade from the plaintiff***.

*Lexmark Intern. v. Static Control Components, Inc.*, 572 US 118, 133 (2014) (emphasis added).

Third, Skillz's position on its damages theory remains as previously briefed. There is ample evidence in the record to the effect that Papaya's undisclosed bot advertising scheme almost completely destroyed Skillz's business. *See, e.g.*, DX0517 (exhibit showing Skillz's stock price dropping); Trial Tr. at 350:9–20 (lower market valuation than cash on hand).

Skillz's proposed instructions on monetary relief explain the law and the appropriate burdens of proof in understandable terms, instructing the jury to reach a damages amount that in its judgment "fairly and reasonably compensates Skillz for the injury [the jury finds] was proximately caused by Papaya's conduct" and "[a] reasonable and fair estimate of Papaya' profits." ECF 660 at 29–30. Papaya's proposals should be rejected as unfounded and unnecessary.

---

[1] Papaya's letter cites Tr. 718:19–22, which is incorrect; the quote from Mr. Bergman is at Tr. 782:19–22.

April 19, 2026
Page 3

Respectfully submitted,

*/s/ Lazar P. Raynal*
Lazar P. Raynal
*Attorney for Skillz Platform Inc.*

cc:     All Counsel of Record (via ECF)