# KIRKLAND & ELLIS LLP

April 19, 2026

**VIA CM/ECF**
The Honorable Denise L. Cote
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:    *Skillz Platform Inc. v. Papaya Gaming, Ltd. and Papaya Gaming, Inc.*,
>        No. 1:24-cv-01646 (S.D.N.Y.)

Dear Judge Cote:

Papaya writes in response to the letter filed by Skillz on April 18, 2026 (Dkt. No. 894), requesting a separate jury charge on Skillz's New York General Business Law ("GBL") § 349 claim. For the reasons below, and consistent with Skillz's treatment of the claim throughout this litigation, the jury should not be separately charged on the GBL claim.

*First*, Skillz has consistently treated its GBL § 349 claim as being equivalent to its Lanham Act false advertising claim and should not be permitted to raise a new theory of liability on that claim at this late stage. As the Court noted at the beginning of trial, Skillz has treated the two claims as identical throughout the litigation. *See* Trial Tr. at 8:15-16 ("the parties have told me in a variety of contexts that they should be treated the same for this litigation, and therefore I don't plan to charge the GBL"). Indeed, Skillz's pretrial memorandum specifically stated that "Skillz's New York GBL § 349 claim is based on the *same conduct* underlying Skillz's Lanham Act claim, and Papaya has violated that state law corollary for the *same reasons* it violated the Lanham Act." Dkt. No. 658 at 17 (emphases added). Likewise, Skillz's statement in the joint pretrial order of the "claims and defenses to be tried"—which governs the scope of this trial—states that the GBL "claim is based on substantially the same facts and conduct that are the subject of Skillz's Lanham Act claim." Dkt. 663 at 3; *see Edelman v. NYU Langone Health Sys.*, 2025 WL 3039930, at *11 (S.D.N.Y. Oct. 31, 2025) ("Plaintiff's statements in the joint pretrial order and in the initial disclosures are binding on her and . . . preclude her from arguing at trial that she was entitled to a different measure of lost profits damages." (collecting cases)). Consistent with Skillz's treatment of its GBL claim throughout this case, the Court has resolved Skillz's state-law claim by reference to its Lanham Act analysis in every ruling. *See, e.g.*, Dkt. 35 at 10; Dkt. 568 at 34. The GBL § 349 claim should not now be treated distinctly at trial. [1]

---

[1] The very first time that Skillz first suggested that its GBL § 349 claim may potentially be broader than its Lanham Act claim was in opposition to Papaya's Motion in *Limine* No. 4, which sought to exclude consumer complaints and legal opinion letters. *See* Dkt. No. 721 at 1-2. Contrary to Skillz's suggestion, however, the Court did not deny that motion on the ground that allegedly false statements made in the legal opinion letters and consumer complaints "would still constitute violations of GBL § 349." Dkt. 894 at 1. Rather, the Court explained that the evidence was relevant to Skillz's *Lanham Act* claim as it bore on Papaya's "motive for not disclosing use of bots to the public," its "intent to conceal and deceive," and its "knowledge about these issues and the materiality of these issues from Papaya's point of view and the point of view of the consuming public." PTC Tr. at 56:4-18.

# KIRKLAND & ELLIS LLP

The Honorable Denise L. Cote
April 19, 2026
Page 2

*Second*, Skillz has not presented a separate damages theory that is specific to its newly envisioned GBL § 349 claim. Skillz's damages expert, Mr. Bergman, repeatedly testified that he limited his damages opinion to harm allegedly caused by Papaya's false advertising. *See* Trial Tr. at 796:11-15 ("Q. []And if the jury decides that Papaya is not liable for false advertising, then there are no damages, right? A. That's my understanding."); *see also id.* at 796:19-2, 733:2-16, 799:6-16, 800:20-801:11 ("[Q.] was it your intent to tie the damages calculations that you did *solely* to Papaya's false advertising? A. Generally I would say yes…") (emphasis added). Moreover, Skillz has made no attempt to limit any of its damages requests only to injuries occurring in New York. Section 349 "contain[s] a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York." *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547 (S.D.N.Y. 2014). If the jury were to find liability solely on the GBL § 349 claim, any damages award must necessarily be limited to injuries occurring in New York. *See DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 210 n.13 (N.D.N.Y. 2023) (noting that a GBL § 349 plaintiff may recover only "based on injuries that occur in New York"). Rather than attempting to limit any damages to injuries that occurred in New York, Mr. Bergman's damages theories start with Papaya's *global* profits and savings, and use them to calculate Skillz's damages in total enterprise value lost to the company *as a whole*. *See* PX595-PX598 (*consolidated* financial statements); PX183.10 (showing "Gross Revenue Split by Geo[graphy]" with "UK" and "Other" at 13%).[2]

*Finally*, Skillz's objections to Papaya's proposed jury instructions should not be accepted. Skillz objects to an instruction apportioning damages based on the percentage of consumers confused by Papaya's advertising. That objection confirms Skillz seeks damages untethered from consumer deception—contrary to the Lanham Act's requirement that any harm "flow[] directly from the deception wrought by the defendant's advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). An instruction ensuring that any award reflects actual consumer deception is thus required. Skillz also objects to Papaya's extraterritoriality instruction, yet record evidence confirms that 13% of Papaya's revenue is derived from non-U.S. sources. PX183.10; *see also* Trial Tr. at 750:5-753:25, 765:9-19, 767:9-768:7 (relying on PX183). An instruction limiting recovery to domestic activity is therefore necessary.

---

[2] Skillz also lacks a cognizable theory under GBL § 349 based on Papaya's legal opinion letters or consumer complaints. Skillz's "stream of commerce" theory—that private communications with financial entities and app stores are actionable because they enabled Papaya's games to reach consumers, Dkt. No. 721 at 2—would sweep in virtually all business conduct, including private transactions that courts consistently hold fall outside the statute. *See N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 101 (2012); *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 300-04 (E.D.N.Y. 2010). Moreover, Skillz has offered no theory of damages connecting a little over 200 individual communications to over $600 million in claimed enterprise-value losses.

## KIRKLAND & ELLIS LLP

The Honorable Denise L. Cote
April 19, 2026
Page 3

Respectfully submitted,

*/s/ Devora W. Allon*
Devora W. Allon, P.C.

cc:      All counsel of record (by ECF)