**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKILLZ PLATFORM INC., a Delaware corporation,<br><br>                          Plaintiff,<br><br>        -against-<br><br>PAPAYA GAMING, LTD., a foreign corporation; and PAPAYA GAMING, INC., a Delaware Corporation,<br><br>                      Defendants. | Case No. 1:24-cv-01646-DLC<br><br>Hon. Denise L. Cote |

**PLAINTIFF SKILLZ PLATFORM INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINT**

Plaintiff Skillz Platform Inc. ("Skillz") respectfully submits this memorandum of law in support of its Emergency Motion for Temporary Restraint pursuant to Federal Rule of Civil Procedure 64(a) and New York Civil Practice Law and Rules ("CPLR") § 5229.

## PRELIMINARY STATEMENT

On April 23, 2026, the jury determined that Defendants Papaya Gaming, Ltd. and Papaya Gaming, Inc. ("Papaya") are liable to Skillz for $420 million in damages and, in an advisory opinion, that Skillz is further entitled to recover $719 million in Papaya's additional profits and $652 million in Papaya's cost savings. ECF No. 899 at 1-2. The Court deferred entry of judgment pending post-trial briefing on the disgorgement penalty. Ex. 1 (4/23/26 Trial Tr. at 1292:24-1293:7). To avoid irreparable harm before final judgment is entered—including the possibility that Papaya removes funds and assets from the United States to Israel or elsewhere in an effort to avoid complying with any forthcoming judgment—Skillz respectfully requests an order pursuant to Rule 64 and CPLR § 5229 restraining Papaya from (1) expatriating any revenue earned in the United States; and (2) selling, transferring, assigning, or otherwise interfering with any assets that may be necessary to fully satisfy the judgment in favor of Skillz.

## ARGUMENT

Federal Rule of Civil Procedure 64(a) provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." CPLR § 5229, in turn, provides that "[i]n any court, before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment." Federal courts in New York have repeatedly

held that Section 5229 "is a remedy within the meaning of Rule 64." *Demirovic v. Ortega*, 296 F. Supp. 3d 477, 481 (E.D.N.Y. 2017) (collecting cases).

The purpose of Section 5229 is "to prevent the judgment debtor from secreting his assets before a final judgment can be entered." McKinney Practice Commentary, N.Y. C.P.L.R. § 5229. "Although rarely the subject of reported cases given that a judgment can be entered on a verdict or decision rather quickly, CPLR 5229 is properly invoked where there is some time between a decision and the judgment." *Loew v. Kolb*, 2003 WL 22077454, at *2 (S.D.N.Y. Sept. 8, 2003). "Other than having received a favorable verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR 5229." *Sequa Cap. Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996) (citations omitted). That is, Section 5229 does not require a movant to "submit evidence that the adverse party is disposing of assets." *Gallegos v. Elite Model Mgmt. Corp.*, 1 Misc. 3d 200, 207 (Sup. Ct. 2003). Indeed, such "[a] requirement" would "run counter to the purpose of CPLR 5229, which is a preventative measure designed to frustrate the adverse party from disposing of assets before such disposition takes place." *Id.*

Here, there is no dispute that Skillz has received a favorable verdict or decision. Standing alone, that is sufficient for the Court to grant relief under Section 5229, particularly given the "magnitude" of the verdict. *Leser v. U.S. Bank Nat. Ass'n*, 2013 WL 867153, at *2 (E.D.N.Y. Feb. 21, 2013). In *Leser*, for example, the Court granted the defendant and counterclaim plaintiff's request for prejudgment relief based on a jury verdict of just over $38 million—a number that pales in comparison to the potential judgment here. *Id.* Still, the court observed that "[i]rrespective of the strength of [the defendant]'s purported evidence of a risk of dissipation, the magnitude of any judgment likely to be entered is sufficient in itself to give rise to the possibility that the plaintiff may be unable to satisfy it." *Id.*

2

Moreover, while Skillz "need not make a particular showing of the danger of dissipation of assets," *Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, 2016 WL 7217641, at *6 (E.D.N.Y. Dec. 13, 2016), such a danger plainly exists here. Although Papaya's "target market is the United States," Ex. 2 (PX-00595-9 2021 Consolidated Financial Statements), and it derives the overwhelming majority of its revenue from United States-based customers, Ex. 3 (4/20/26 Trial Tr. at 1111:11-18), Papaya Gaming, Ltd.'s wholly-owned United States subsidiary (Papaya Gaming, Inc.) processes customer payments through its domestic bank account and then, it is believed, promptly expatriates those funds, for a fee, to Papaya Gaming Ltd. in Israel. *See* Ex. 4 (PX 0459-6, PX 0459-7 8/1/23 EY Memorandum at 6-7).

Papaya's practice of expatriating funds outside the United States represents a significant threat to Skillz's ability to collect on the forthcoming judgment. *Cf. S.E.C. v. Aragon Cap. Advisors, LLC*, No. 07 CIV.919 FM, 2011 WL 3278642, at *10 (S.D.N.Y. July 26, 2011) (ownership of assets in a foreign country "heighten the risk" of asset dissipation beyond the court's jurisdiction). Compounding the risk that Papaya will render itself judgment-proof by expatriating profits abroad, Papaya may also attempt to evade its obligations to Skillz by claiming that it is cash-poor, *see, e.g.*, Ex. 5 (PX-598-14, 2024 Financial Statements), particularly since (i) its revenues dropped as a consequence of turning off bots in late 2023, Ex. 6 (PX-1241-1, Papaya Profit due to Bot Usage) (ii) it agreed to pay $15 million to settle a consumer class action, Ex. 7 (PX-01268, *Barcelo v. Papaya*, No. 24STCV32626 (Cal. Sup. Ct. 2024)) and (iii) it has accrued extraordinary fees and costs from hiring two top-tier firms to engage in scorched-earth litigation of this matter, *see* Ex. 8 (PX-1249-1, 2021-2024 Consolidated Statement of Operations).

Papaya may respond that it has no intention of moving funds abroad or otherwise evading judgment. That is irrelevant. As Judge Cohen of the New York Supreme Court recently made clear

3

in rejecting such an argument, where a defendant has been found liable for "a substantial amount"—there, approximately $200 million—relief under CPLR § 5229 is appropriate regardless of whether the court has "reason to question [a defendant]'s good faith or his business reputation." Ex. 9 (*Fortress Credit Corp. v. Cohen*, Index No. 651498/2024, NYSECF 146 at 2 (N.Y. Sup. Ct. Jan. 31, 2025)). The fact remains that "CPLR 5229 is a common tool employed by plaintiffs awaiting imminent entry of judgment after a decision has been rendered in their favor." *Id.* (citation omitted). Nor does Papaya's intent to appeal final judgment (once it is entered) change this calculus. *See id.*

In sum, most of Papaya's money is made here in the United States and Skillz, a U.S. company that will be the beneficiary of a judgment entered by this Court, will be Papaya's largest creditor. There is no reason for Papaya to continue removing funds to Israel—potentially during the duration of a lengthy appeal—just so Skillz will have to expend unnecessary resources to repatriate that money to satisfy the judgment. The Court has discretion under Rule 64 and Section 5229 to prevent Papaya from complicating the collection process and should exercise that discretion here.

## CONCLUSION

For the foregoing reasons, the Court should enter an order restraining Papaya from (1) expatriating any revenue earned in the United States; and (2) selling, transferring, assigning, or otherwise interfering with any assets that may be necessary to fully satisfy the judgment in favor of Skillz until a judgment is entered.

Date: May 11, 2026
    New York, New York

Respectfully submitted,

KING & SPALDING

4

By: /s/ *Craig Carpenito*

Craig Carpenito
Kathleen Elizabeth McCarthy
Amy Nemetz
ccarpenito@kslaw.com
kmccarthy@kslaw.com
anemetz@kslaw.com
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Tel: (212) 556-2100
Fax: (212) 556-2222

Lazar P. Raynal (*pro hac vice*)
Michael A. Lombardo (*pro hac vice*)
lraynal@kslaw.com
mlombardo@kslaw.com
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
Tel: (312) 995-6333
Fax: (312) 995-6330

*Attorneys for Skillz Platform Inc.*

5

## <u>WORD COUNT CERTIFICATION</u>

I, Craig Carpenito, hereby certify that the foregoing memorandum complies with the word count limitations set forth in Rule 6.3 of the Local Rules of the United States District Court for the Southern District of New York, and contains 1,247 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and this certificate.

Dated: May 11, 2026
      New York, New York

                                        */s/ Craig Carpenito*
                                        Craig Carpenito