**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKILLZ PLATFORM INC., <br><br> *Plaintiff*, <br><br> v. <br><br> PAPAPYA GAMING LTD. and PAPAYA GAMING, INC. <br><br> *Defendant*. | Case No.: 1:24-cv-01646 <br><br> Hon. Denise L. Cote |

**<u>DEFENDANTS' OPPOSITION TO SKILLZ'S EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER / TEMPORARY RESTRAINT</u>**

**TABLE OF CONTENTS**

**INTRODUCTION**............................................................................................................ **1**

**I.      FACTUAL BACKGROUND**................................................................................ **1**

      A.      Papaya............................................................................................................. 1

      B.      Skillz's Lawsuit ............................................................................................. 3

**II.     LEGAL STANDARD** ......................................................................................... **5**

**III.    ARGUMENT**...................................................................................................... **5**

      A.      CPLR § 5229 Does Not Justify Skillz's Requested Mandatory Injunctions. ......... 6

      B.      The Court's Inherent Equitable Powers Do Not Justify Skillz's Requested Mandatory Injunctions. .................................................................................... 12

**CONCLUSION** ........................................................................................................... **16**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cacchillo v. Insmed, Inc.*,
   638 F.3d 401 (2d Cir. 2011)........................................................................................5, 14

*Carter v. Sewell*,
   2023 WL 7164304 (S.D.N.Y. Oct. 31, 2023)..............................................................5, 13

*Coley v. Vannguard Urb. Improvement Ass'n*,
   2016 WL 7217641 (E.D.N.Y. Dec. 13, 2016)..........................................5, 11, 13, 14

*Demirovic v. Ortega*,
   296 F. Supp. 3d 477 (E.D.N.Y. 2017) .......................................................................6, 7, 9

*Gallegos v. Elite Model Mgmt. Corp.*,
   768 N.Y.S.2d 134 (Sup. Ct. 2003)............................................................................7, 8, 12

*Goldstein v. Hochul*,
   2022 WL 20305832 (S.D.N.Y. Oct. 3, 2022)...................................................................14

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999)..........................................................................................................13

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
   2021 WL 535485 (S.D.N.Y. Feb. 12, 2021).....................................................................15

*Jay's Custom Stringing, Inc. v. Yu*,
   2001 WL 761067 (S.D.N.Y. July 6, 2001) .......................................................................15

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
   295 F. Supp. 2d 366 (S.D.N.Y. 2003)...............................................................................13

*King v. Unique Rigging Corp.*,
   2006 WL 3335011 (E.D.N.Y. Oct. 27, 2006)................................................................8, 10

*Leser v. U.S. Bank. Nat. Ass'n*,
   2013 WL 867153 (E.D.N.Y. Feb. 21, 2013).................................................................10, 11

*LL&L Innovations, LLC v. Jerry Leigh of California, Inc.*,
   2010 WL 3956815 (D. Utah Oct. 8, 2010) .......................................................................15

*Loew v. Kolb*,
   2003 WL 22077454 (S.D.N.Y. Sept. 8, 2003)................................................................7, 11

*M.V. Music v. V.P. Recs. Retail Outlet*,
    653 F. Supp. 3d 31 (E.D.N.Y. 2023) ....................................................................14

*Merck Eprova AG v. Brookstone Pharms., LLC*,
    920 F. Supp. 2d 404 (S.D.N.Y. 2013)..................................................................15

*Minzer v. Keegan*,
    1997 WL 34842191 (E.D.N.Y. Sept. 22, 1997) .....................................................14

*Morozov v. ICOBOX Hub Inc.*,
    2020 WL 5665639 (S.D.N.Y. May 5, 2020) ...................................................7, 8, 9

*Ottley v. Schwartzberg*,
    819 F.2d 373 (2d Cir. 1987)...............................................................................11

*Roberts v. Atl. Recording Corp.*,
    892 F. Supp. 83 (S.D.N.Y.1995)........................................................................13

*SEC v. Aragon Cap. Advisors, LLC*,
    2011 WL 3278642 (S.D.N.Y. July 26, 2011) ......................................................11

*Sequa Cap. Corp. v. Nave*,
    921 F. Supp. 1072 (S.D.N.Y. 1996)..........................................................5, 6, 8, 10

*Toray Int'l Am. Inc. v. Nakayama*,
    2014 WL 12543817 (S.D.N.Y. Apr. 29, 2014).......................................................5

*VoiceStream Wireless Corp. v. All U.S. Commc'ns*,
    149 F. Supp. 2d 29 (S.D.N.Y. 2001)...................................................................15

*WowWee Grp. Ltd. v. Meirly*,
    2020 WL 70489 (S.D.N.Y. Jan. 7, 2020) ............................................................12

**Rules**

CPLR § 5222........................................................................................................13

CPLR § 5229................................................................................................*passim*

Fed. R. Civ. P. 64.............................................................................................1, 5

Fed. R. Civ. P. 65..........................................................................................12, 13

**INTRODUCTION**

Skillz's Emergency Motion for a Temporary Restraining Order seeks the unnecessary, improper, and extreme remedy of a mandatory injunction that would severely disrupt Papaya's business, require Papaya to affirmatively rework its fundamental operations, risk preventing Papaya from ███████████████████████████████████████████████ ██████████████████████████████████████████████. This drastic relief is unwarranted under FRCP 64(a), New York CPLR § 5229, and the principles of equity. Skillz has not shown any of the factors necessary for relief under CPLR § 5229. Nor has Skillz identified any example of a Court granting such extreme relief under CPLR § 5229. There is also no basis in equity to grant a TRO: there is no risk of irreparable harm, and Skillz does not even mention, much less show, the other requirements for emergency injunctive relief.

Skillz's claim of an emergency also contradicts its representations to Papaya and to this Court. On April 27, 2026, Skillz stipulated that Papaya would have until June 5, 2026 to oppose all post-trial motions, of which this is one. Dkt. 902. Skillz signed that stipulation with full knowledge of all information (exhibits, testimony, and verdicts) relied upon in its current motion. Dkt. 903. Skillz identifies no new facts or changed circumstances since then. Skillz waited nearly three weeks after the verdict, and with no prior notice to Papaya, to manufacture this "emergency" motion days before Papaya's post-trial motions are due. At a minimum, Skillz's decision to wait weeks to file its motion undermines any claim of irreparable harm.

Skillz's motion should be denied.

## I.    FACTUAL BACKGROUND

### A.    Papaya

Papaya Gaming, Ltd. is a foreign limited liability company with its principal place of business in Tel Aviv-Yafo, Israel and Papaya Gaming, Inc. is a Delaware corporation. Dkt. 521

(Skillz's Statement of Undisputed Facts), ¶¶ 188–89.  Papaya offers games in which players can compete to win cash prizes.  *Id.* ¶ 202; *see* Declaration of Raz Revah ("Revah Decl.") ¶ 2.

Papaya derives most of its revenue from customers, who can deposit funds on Papaya's platform.  ███████████████████████████████████████████████ ███████████████████████████████████████████.  *See* Revah Decl. ¶ 3; *see also* Dkt. 798-01 at 4 (Papaya's proffer regarding Mr. Revah's relevant areas of knowledge, including Papaya's "operations, expenses, [and] accounting").  ███████████████████ ███████████████████████████████.  Revah Decl. ¶ 4.

Papaya  manages  its  worldwide  financial  activities  ███████████████████ ███████████████████████████████████.  *Id.* ¶ 6.  Papaya employs approximately ████████████████████████████████████████████████ ███████████████████████████████████████████████.  *Id.* ¶ 9. The funds transferred ████████████████ are used for, among other things:

- ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ *Id.* ¶ 9(A).

- ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* ¶ 9(B).

- ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████.  *Id.* ¶ 9(C).



- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 9(D).

These and other expenditures are required to maintain Papaya's operations and they are not discretionary.  They include payments ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 10.  Further, the vast majority of funds ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Specifically, in an average financial quarter, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  In some quarters, it may be ▮▮▮▮▮▮▮ *Id.* ¶ 11.

Major changes to Papaya's operations, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will severely disrupt Papaya's relationships ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 12.  It may also ▮▮▮▮▮▮▮▮▮. *Id.*   It will impose significant costs on Papaya and damage its ongoing operations, including risk to Papaya's ability ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 13.  And Papaya may face ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*  Any of these failures would cause critical and irreparable harm to Papaya.  *Id.* ¶¶ 13–15.

### B.    Skillz's Lawsuit

On March 4, 2024, Skillz sued Papaya under the Lanham Act and New York GBL.  Dkt. 1.  Skillz sought injunctive relief enjoining Papaya from "engaging in false or misleading advertising with respect to its gaming applications and/or violating the Lanham Act," "enjoining Papaya from continuing its unlawful conduct," and "requiring Papaya to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of its

gaming applications." *Id.* at 36 ¶¶ A, B, G. Skillz did not seek injunctive relief related to Papaya's procedures for transferring funds, and Skillz never amended its complaint.

In discovery, Papaya produced thousands of documents responsive to Skillz's requests for production. These included all of the Papaya documents cited in the TRO, which were produced over a year ago, on January 15, 2025, and February 20, 2025. *See* Allon Decl. ¶¶ 2–4.

Skillz's claims were tried from April 13 through April 23, 2026, with the jury rendering a verdict in favor of Skillz on the Lanham Act and New York GBL claims, awarding $420 million in actual damages, and issuing advisory verdicts of alternative forms of relief for disgorgement of $719 million and $652 million. Dkt. 899. Skillz has not yet moved for disgorgement, the Court has not yet awarded disgorgement or ruled on Papaya's forthcoming challenges to actual damages, and Skillz has not yet elected whether to recover actual damages or disgorgement. Papaya has not changed its business operations since the verdict ████████████████████████████ ██████ Revah Decl. ¶ 16. Papaya has ██████████████████████████████ ████████████, which Skillz has known about since February 2025. *Id.;* Allon Decl. ¶¶ 2–4.

After the verdict, the Court instructed the parties to "set a schedule now for any remaining motion practice." Allon Decl. ¶ 5, Ex. A at 1291:20–21. The Court further instructed the parties to "discuss with each other … ways to address this schedule," and asked the parties if there was "any other application we need to take on the record." *Id.* at 1293:18–1294:4. Skillz did not identify any such application. The parties discussed the post-trial briefing schedule over the following days and, on April 27, 2026, submitted a joint stipulation governing the schedule for all post-trial motions. Skillz's counsel signed this stipulation and agreed that post-trial motions are due on May 15, oppositions on June 5, and these deadlines "will apply to all post-trial motions filed by the parties." Dkt. 902. The Court entered the schedule on April 28, 2026. Dkt. 903.

4

After the close of business on May 11, Skillz filed this emergency motion.  Skillz gave Papaya no prior notice of the motion.  Skillz offered no explanation for departing from the schedule for that it agreed to just two weeks prior, Dkt. 902, or for waiting nearly three weeks after the jury verdict to make this "emergency" application to the Court.

## II.    LEGAL STANDARD

Rule 64 permits relief to the extent available under state law.  Fed. R. Civ. P. 64(a).  The only state law Skillz cites is CPLR § 5229, which authorizes only restraints "with the same effect as if a restraining notice had been served ... after judgment."  CPLR § 5229.  Under CPLR § 5229, courts have "discretion whether to grant relief and the manner and limitations in which relief is granted."  *Sequa Cap. Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996); *Coley v. Vannguard Urb. Improvement Ass'n*, 2016 WL 7217641, at *6 (E.D.N.Y. Dec. 13, 2016) (same).

Under their inherent equitable powers, courts may grant TROs, which are an "extraordinary remedy."  *Carter v. Sewell*, 2023 WL 7164304, at *1 (S.D.N.Y. Oct. 31, 2023).  Among other requirements, a movant must show that "a balance of hardships tip[s] decidedly in [their] favor."  *Toray Int'l Am. Inc. v. Nakayama*, 2014 WL 12543817, at *1 (S.D.N.Y. Apr. 29, 2014).  The standard is even stricter for mandatory injunctions seeking to change, rather than maintain, the status quo.  Such requests require showing that "extreme or very serious damage will result from a denial of preliminary relief."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011).

## III.    ARGUMENT

Skillz's motion seeks to enjoin Papaya from: (1) "expatriating any revenue earned in the United States"; and (2) "selling, transferring, assigning, or otherwise interfering with any assets that may be necessary to fully satisfy the judgment in favor of Skillz."   Mot at 1.  While framed as negative relief, both requests are for mandatory injunctions because, as even Skillz recognizes, they would force Papaya to undertake highly disruptive actions to affirmatively change its

5

fundamental business operations, processes, and systems.  *Id* at 3; Revah Decl. ¶¶ 7–12.  These requests would inflict immediate and irreparable harm on Papaya.  Revah Decl. ¶ 13–15. Neither request for relief is warranted under CPLR § 5229 or the Court's inherent equitable powers.

### A.     CPLR § 5229 Does Not Justify Skillz's Requested Mandatory Injunctions.

The Court should deny Skillz's request for relief under CPLR § 5229 because none of the factors that courts in this Circuit rely upon when granting such relief are present here, and Skillz's requested relief would dramatically alter, rather than maintain, the status quo.  Skillz identifies no example of any court issuing such an extreme mandatory injunction under CPLR § 5229.  And Skillz identifies no example of a court issuing relief under CPLR § 5229 where doing so would risk ███████████████████████████████████████████████████████ ████████████████████████████████, and imperil the prevailing party's prospects of collecting on a judgment that it purports to seek to safeguard.

In its motion, Skillz suggests that the sole requirement to grant relief under CPLR § 5229 is a showing of a "favorable verdict or decision."  Mot. at 2 (quoting *Sequa Cap.*, 921 F. Supp. at 1076).  That is wrong.  Identifying a favorable verdict or decision is merely the "showing required before the Court may *consider if* relief is appropriate under CPLR § 5229."  *Demirovic v. Ortega*, 296 F. Supp. 3d 477, 482 (E.D.N.Y. 2017) (emphasis added) (citing *Sequa Cap.*, 921 F. Supp. at 1076).  Upon such a showing, "the decision whether to *grant* relief, and under what circumstances, rests within the sound discretion of the Court."  *Id.*  (emphasis added).  As do "the manner and limitations in which relief," if any, "is granted."  *Sequa Cap.*, 921 F. Supp. at 1076.

Importantly, "[t]he court must exercise its discretion in light of the object of the statute to prevent the party against whom a verdict or decision has been rendered from secreting or conveying his property to avoid payment of the judgment."  *Demirovic*, 296 F. Supp. 3d at 482 (quoting Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5229.02 (David L.

Ferstendig ed., 2d ed.)) (cleaned up).  In other words, the discretion must be exercised consistent with the purpose of CPLR § 5229, which is "to prevent an adverse party from disposing of assets in order to avoid judgment."  *Gallegos v. Elite Model Mgmt. Corp.*, 768 N.Y.S.2d 134, 135 (Sup. Ct. 2003).  That discretion is properly exercised where (1) "inconsistencies or misrepresentations by the party against whom relief is sought" create reason "to believe the danger exists that defendants may dispose or divert assets to avoid a potential judgment," (2) the "adverse party is in financial distress," or (3) "there is a danger that [the adverse party] will dispose of his assets." *Morozov v. ICOBOX Hub Inc.*, 2020 WL 5665639, at *11 (S.D.N.Y. May 5, 2020) (internal citations and quotes omitted); *see, e.g.*, *Demirovic*, 296 F. Supp. 3d at 483  (defendants "repeatedly testified to their dire financial straits" and had inaccurate financial records); *Loew v. Kolb*, 2003 WL 22077454, at *1-2 (S.D.N.Y. Sept. 8, 2003) ("[E]vidence in the record showing that there is a danger that [defendants] will dispose of assets").  None of these factors is present here.

**First**, no "danger exists that defendants may dispose or divert assets to avoid a potential judgment."  *Gallegos*, 768 N.Y.S.2d at 136.  In *Gallegos*, danger that the defendants would dissipate assets "to avoid a judgment" was established by, among other things, trial testimony from a defendant employee that income generated from model bookings was being *re*routed to a *non-*party, Swiss affiliate of the New York defendant corporation.  *Id.* at 135–38.  There is no evidence that Papaya has, is, or will dispose of, divert, or reroute any assets.  And there is certainly no evidence that Papaya has, is, or will do so to avoid a potential judgment, as New York law requires. *Id.* at 136.  While Papaya's ordinary course business operations involve ████████████ ████████████████████████████████████████, these actions do not involve disposing of or diverting anything.  Revah Decl. ¶¶ 3–6.  ████████████████████ ████████████ and, indeed, with *defendant* Papaya LTD.  *Id.* ¶ 7.  ████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* ¶¶ 8–

9. In other words, they are used to allow Papaya to generate revenue, not dispose of it.

Skillz's insinuation that there is something novel or nefarious with Papaya continuing to

operate its business in the ordinary course ████████████████████████████████████

███████ is baseless. This factor does not support an award for relief under CPLR § 5229.

*Morozov*, 2020 WL 5665639, at *11; *see also King v. Unique Rigging Corp.*, 2006 WL 3335011,

at *1 (E.D.N.Y. Oct. 27, 2006) (denying § 5229 motion where, inter alia, "no evidence exists

suggesting that defendants have *fraudulently* disposed of or diverted assets" (emphasis added)).

Skillz argues that "Section 5229 does not require a movant to 'submit evidence that the

adverse party is disposing of assets.'" Mot. at 2 (purporting to quote *Gallegos*). That quotation

does not appear in *Gallegos*, which actually states the significantly more modest proposition that

a movant need not submit "*definitive*[]" evidence "that assets are definitely being disposed of or

diverted as a prerequisite to obtaining injunctive relief." 768 N.Y.S.2d at 139 (emphasis added).

Of course, it defies logic for courts repeatedly to rule that relief under § 5229 is permissible "where

there is a danger that [a defendant] will dispose of his assets," *Sequa*, 921 F. Supp. at 1076, and

yet to argue, as Skillz does, that a court could make such a determination without any evidentiary

basis. Instead, as in *Gallegos*, Skillz must present evidence that "danger exists that defendants

may dispose or divert assets to avoid a potential judgment." *Id.* at 136; *see also Morozov*, 2020

WL 5665563, at *3 (affirming relief under § 5229 because "*Plaintiffs adequately demonstrated*

there is a danger that [defendant] will dispose of his assets" (emphasis added)); *King*, 2006 WL

3335011, at *1 (similar). Skillz has identified no such danger here.[1]

---

[1]    Notably, granting Skillz's requested relief would risk creating the very danger that Skillz purportedly seeks to avoid. Enjoining Papaya's ordinary course ████████████████

*Second*, Skillz offers no evidence that Papaya is "in financial distress." *Demirovic*, a case brought by restaurant employees seeking unpaid overtime, minimum wages, and disgorgement of withheld gratuities, is instructive. 296 F. Supp. 3d 477. There, the defendants "repeatedly testified to their dire financial straits" at trial, including as to "the Restaurant's lack of financial success." *Id.* at 483 (finding on this basis that the "defendants may not maintain funds sufficient to satisfy the judgment"). The contrast with the present case is stark: Skillz repeatedly told the jury that Papaya has been profitable for years. *See, e.g.*, Allon Decl. ¶ 5, Ex. A at 776:9-12. And Skillz purported to justify its damages demand based on Papaya's financial strength. *Id.* at 86:20-21. It is thus unsurprising that Skillz's motion says nothing about Papaya being in any financial distress. Accordingly, this factor also weighs against any relief under CPLR § 5229.

*Third*, Skillz has not presented any evidence of risk that Papaya will dissipate assets. Skillz's references to Papaya's financial documents, Mot. at 3, which Skillz has had in its possession for over a year, simply reflect Papaya's ordinary course practices for processing for obligations like ██████████████████████████████████████████. Complying with these obligations is not "dissipation." Papaya processes assets as reflected in these documents specifically to run its business—i.e., to *generate* revenue and profits, which is the opposite of dissipation. This factor too weighs against any relief under CPLR § 5229.

This case does not involve the kinds of facts that have persuaded courts to find risk of asset dissipation. *See, e.g.*, *Morozov*, 2020 WL 5665639, at *11 (finding risk of dissipation because evidence showed "not insubstantial danger that [defendant] will transfer assets to avoid having to pay any judgment in this action" where the defendant was "a Russian citizen who does not reside

---

██████████████████████████████████████████. Revah Decl. ¶ 12. All of these outcomes would reduce the funds available for Skillz to collect should it secure a final judgment.

in New York" and whose whereabouts were unknown, did not participate in the litigation, and the defendant's principal asset was a Russia-domiciled corporation with no United Sates operations that only transacted in Bitcoin, which increased risk that asset transfers would go undetected); *see also Sequa*, 921 F. Supp. at 1076 (granting § 5229 motion because the prevailing party learned after winning summary judgment that the adverse party had been transferred assets to third parties both shortly before summary judgment was granted and after it was granted as well).  In contrast to cases where CPLR § 5229 relief is typically granted, Papaya has participated fully in the litigation, there are no doubts about its whereabouts, it has U.S. operations, and the "transfers" of which Skillz complains ████████████ and done specifically to allow Papaya to run its business and generate revenue.  Revah Decl. ¶ 7.  Where, like here, there is no evidence that a defendant is at risk of dissipating assets, relief under CPLR § 5229 is appropriately denied.  *See, e.g.*, *King*, 2006 WL 3335011, at *1.

The remaining cases Skillz cites similarly demonstrate that relief under CPLR § 5229 is not appropriate.  Skillz claims that *Leser v. U.S. Bank Nat. Ass'n* supports its argument that the "magnitude" of its verdict is sufficient for such relief.  *See* Mot. 2.  But in *Leser*, the requested restraint was of limited duration because judgment was to be entered following the "fairly ministerial task" of calculating interest.  2013 WL 867153, at *2 (E.D.N.Y. Feb. 21, 2013).  By contrast, Skillz's proposed restraints would last for months or years during the pendency of post-trial briefing and appeal, and would risk crippling Papaya in the interim.  Under the Federal Rules, judgment cannot be entered until the Court rules on disgorgement, an issue which will not even be fully briefed until late June, and Skillz makes its damages election.  *See* Dkt. 903.  And Papaya will be filing post-trial motions based on well-established Supreme Court and Second Circuit precedent to set aside the damages award or significantly reduce it.  Unlike *Leser*, these are not

"ministerial tasks," and the "magnitude" of any damages awarded here is not set. 2013 WL 867153, at *2.

Other cases Skillz cites similarly involve inapposite post-trial proceedings where there were no contested legal issues remaining. *See* Mot. at 2-3 (citing *Coley* and *Kolb*). In *Coley*, for example, the court ordered restraint of assets of the defendants "against whom default judgment has been granted." 2016 WL 7217641, at *6. And in *Kolb*, the post-trial issues were limited to the "confirmation of an arbitration award," which "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." 2003 WL 22077454, at *2 (quoting *Ottley v. Schwartzberg,* 819 F.2d 373, 377 (2d Cir. 1987)). In both *Coley* and *Kolb*, the defendants had also failed to participate in proceedings, which informed the court's ruling under § 5229. *See, e.g.*, *Kolb*, 2003 WL 22077454, at *2. By contrast, and as Skillz recognizes, Papaya has fully participated in all proceedings. *See* Mot. at 3. There is also no evidence Papaya will dispose of assets—again, the processing of assets that Skillz complains about is done in the ordinary course to allow Papaya to run its business and generate revenues, not dissipate them. And the post-trial proceedings here include legal arguments—including those preserved at the Rule 50(a) conference—disputing the validity and quantum of the judgment. These are not mere summary or perfunctory post-trial proceedings. *See id.*

Skillz's other cases likewise confirm CPLR § 5229 is inappropriate. Skillz suggests that *S.E.C. v. Aragon Cap. Advisors, LLC*—which is not a CPLR § 5229 case—creates a rule that Papaya's corporate domicile in Israel itself creates risk of asset dissipation. Mot. 3. But there, the Court froze the defendants' assets after they made multiple irregular withdrawals out of their accounts *to third parties*, including a "flurry of transfers from one account to another and to third parties" within days of the S.E.C. subpoenaing a defendant's financial institutions. 2011 WL

11

3278642, at *9-10 (S.D.N.Y. July 26, 2011). ███████████████████████

███████████████████████████████████████████████████████████

██████. Revah Decl. ¶¶ 4–7. There is no evidence of transactions by Papaya to dissipate its assets and Skillz identifies none.

Relief under CPLR § 5229 is also improper for the independent reason that it would undermine Papaya's business. By necessity, ████████████████████████

███████████████████████████████████████████████████████████

███████████████. *See id.* ¶¶ 9–11. New York courts recognize that relief under CPLR § 5229 against corporate defendants should not render them "without means to operate successfully." *Gallegos*, 768 N.Y.S.2d at 139 (observing that the corporate defendant's concerns that CPLR § 5229 restraints would render it unable to "operate successfully" were "unfounded" because "[t]he restraints imposed by CPLR 5229 do not affect property that is not otherwise available to satisfy a money judgment, such as payment of salaries"). But Skillz's requested relief would do just that. Skillz seeks to restrain Papaya's operations, which would ███████████████████████

███████████████████████████████████████████████. Revah Decl. ¶¶ 12–15. Skillz has identified no case imposing such extreme mandatory injunctive relief under CPLR § 5229, much less where such relief would risk ████████████████████████.

### B. The Court's Inherent Equitable Powers Do Not Justify Skillz's Requested Mandatory Injunctions.

While Skillz does not cite FRCP 65, both Skillz and the Court have styled the motion as a request for a "Temporary Restraining Order." *See* Dkt Nos. 905, 911. Similarly, Skillz appears to invoke the "irreparable harm" standard required for such relief. Mot. at 1; *see also WowWee Grp. Ltd. v. Meirly*, 2020 WL 70489, at *1-2 (S.D.N.Y. Jan. 7, 2020) (distinguishing between broader asset freeze pursuant to Court's inherent equitable powers and narrower asset freeze

pursuant to CPLR § 5222).  To the extent Skillz's requested relief is based on Rule 65 or the Court's inherent equitable powers, it should also be denied.

As a threshold matter, the Court's power to "prevent a defendant from transferring assets does not extend to an action for money damages where the plaintiff claims no lien or equitable interest in the assets sought to be enjoined." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 388 (S.D.N.Y. 2003) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)).  Skillz has not argued that there is any "nexus" between the requested TRO and any equitable relief that would confer an equitable interest in the assets sought to be frozen.  *See Coley*, 2016 WL 7217641, at *2 (collecting cases).  Nor can it.  The Court has not yet decided whether to award disgorgement, and Skillz has not elected to recover disgorgement instead of damages.  *See* Allon Decl. ¶ 5, Ex. A at 1226:11-18 ("[T]he Court will ensure that Skillz only recovers once for any injury it has shown it suffered."); Dkt No. 762 at 2 ("Skillz may not recover both its damages and Papaya's profits if that relief would overcompensate Skillz for its injury.").  Where, as here, Skillz seeks to prevent expatriation or freeze assets "more generally," "courts have found that they lack the authority to issue injunctions to effectuate the collection of money in satisfaction of . . . alleged legal liability." *Coley*, 2016 WL 7217641, at *3 (quoting *JSC*, 295 F. Supp. 2d at 389) (cleaned up).

And Skillz cannot—and does not even attempt to—satisfy the requirements to obtain a TRO, much less the even stricter requirements to obtain the mandatory injunctions it has requested. A TRO is an "extraordinary remedy that will not be granted lightly." *Carter*, 2023 WL 7164304, at *1.  The movant must satisfy at least the preliminary injunction factors, *see Roberts v. Atl. Recording Corp.,* 892 F. Supp. 83, 86 (S.D.N.Y.1995), which include "(1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary

13

injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the requested relief," *Coley*, 2016 WL 7217641, at *2. The standard is even stricter when the relief alters the status quo and is mandatory in nature. *See Cacchillo*, 638 F.3d at 406 (affirming denial of mandatory injunction, which "alters the status quo"). In such circumstances, the movant must also show "extreme or very serious damage will result from a denial of preliminary relief." *Id.* Skillz's motion does not even mention most of these factors, and Skillz meets none of them.

Besides a single reference to "irreparable harm" in its preliminary statement, Skillz does not even argue that the denial of its request will cause it irreparable harm. Mot. at 1. Nor could it. Regardless of the country in which Papaya's assets are held, they remain company assets. *See* Revah Decl. ¶ 7. And while Skillz has styled this TRO as an "emergency" motion, Skillz's delay in filing undercuts any suggestion of an emergency or irreparable harm. *See, e.g.*, *Goldstein v. Hochul*, 2022 WL 20305832, at *2 (S.D.N.Y. Oct. 3, 2022) ("Because temporary restraining orders are fundamentally an emergency relief mechanism, 'delay in seeking the remedy suggests that the remedy is not really needed.'" (quoting *Minzer v. Keegan*, 1997 WL 34842191, at *6 (E.D.N.Y. Sept. 22, 1997)); *see also M.V. Music v. V.P. Recs. Retail Outlet*, 653 F. Supp. 3d 31, 39–40 (E.D.N.Y. 2023). There is no basis in fact or law for emergency equitable relief.

The financial documents Skillz misconstrues as "expatriating funds" or "dissipation" of assets were produced over a year ago. Allon Decl. ¶¶ 2-4; *see, e.g.*, Mot. at 3 (citing Dkt No. 907-5 (Papaya's 2024 Financial Statement)). If Skillz believed there was an emergency, it would have moved promptly after the jury's verdict to seek this relief. Instead, Skillz waited weeks to file its four-page conclusory motion threatening Papaya's normal business operations, forcing Papaya to expend time and resources responding on an expedited basis while also preparing its post-trial

14

motions and for the parties' settlement conference. There is no emergency, and there is no risk of irreparable harm.  *See Jay's Custom Stringing, Inc. v. Yu*, 2001 WL 761067, at *1 (S.D.N.Y. July 6, 2001) ("JCS's delay in seeking provisional relief showed a lack of exigent circumstances requiring extraordinary relief.").

The remaining TRO factors also cut against the requested relief.  As to the balance of hardships, the declaration from Mr. Revah confirms that preventing Papaya from ███████████ ████████████████████████████████████████████████████████████.  Revah Decl. ¶¶ 9–13; *see LL&L Innovations, LLC v. Jerry Leigh of California, Inc*., 2010 WL 3956815, at *10 (D. Utah Oct. 8, 2010) (balance of equities tip against movant when injunction "could cause the loss of employment of a substantial number of employees").  And the requested relief would risk

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████.  Revah Decl. ¶¶ 9–13; *see VoiceStream Wireless Corp. v. All U.S. Commc'ns*, 149 F. Supp. 2d 29, 38 (S.D.N.Y. 2001)) (balance of hardships weigh against injunction when it would threaten business's existing operations).  Such a broad asset freeze also risks ████████████████████████████.  Revah Decl. ¶ 15; *see Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *9 (S.D.N.Y. Feb. 12, 2021) (denying injunction where relief sought "would force [defendant] out of business").  In addition to the obvious undue hardship this would cause Papaya, it would also make the market *less* competitive, which does not serve any public interest.  *See Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 432-33 (S.D.N.Y. 2013) (removing a competitor form the market would not serve the public interest because it risks "artificially inflating prices and decreasing consumer choice").[2]

---

[2]    Papaya also disputes Skillz's likelihood of success on the merits, both for Skillz's case in chief and that Papaya will dissipate assets to avoid a judgment. However, the Court need not reach this factor to deny Skillz's request

15

## **CONCLUSION**

For the foregoing reasons, Papaya requests that the Court deny Skillz's motion.


Dated: May 13, 2026                                    Respectfully submitted,

                                                      */s/ Devora W. Allon*
                                                      Devora W. Allon
                                                      Gilad Bendheim
                                                      KIRKLAND & ELLIS LLP
                                                      601 Lexington Avenue
                                                      New York, NY 10022
                                                      (212) 446-5967

                                                      Allison M. Brown
                                                      KIRKLAND & ELLIS LLP
                                                      2005 Market Street, Suite 1000
                                                      Philadelphia, PA 19103
                                                      (212) 268-5100

                                                      George W. Hicks, Jr. (*pro hac vice*)
                                                      KIRKLAND & ELLIS LLP
                                                      1301 Pennsylvania Avenue, NW
                                                      Washington, DC 20004
                                                      (202) 389-5031

                                                      Cole T. Carter (*pro hac vice*)
                                                      KIRKLAND & ELLIS LLP
                                                      333 West Wolf Point Plaza
                                                      Chicago, IL 60654
                                                      (312) 862-1951

                                                      Samuel Carno Leifer
                                                      KIRKLAND & ELLIS LLP
                                                      200 Clarendon Street
                                                      Boston, MA 02116
                                                      (617) 385-7707
                                                      (617) 385-7501

---

for a TRO because Skillz fails to show that the three TRO other requirements are met, and does not even argue two of them.

16

Michael W. De Vries (*pro hac vice*)
Argie Mina (*pro hac vice*)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, California 92626
(213) 680-8590
(714) 982-8844

Sharre Lotfollahi (*pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, California 90067
(213) 680-8673
(310) 552-5900

Adam R. Alper (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1876
(415) 439-1500

*Counsel for Defendants Papaya
Gaming Ltd. and Papaya Gaming, Inc.*

## WORD COUNT COMPLIANCE CERTIFICATION

The undersigned certifies that this brief contains 5,246 words, which complies with the word limit of L.R. 7.1(c) and Rule 4.B of this Court's Individual Practices.


Dated: May 13, 2026                           */s/ Devora W. Allon*
                                               Devora W. Allon


17